**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

_____

|  |  |
|---|---|
| Daniel A. Frishberg, | ) |
| Plaintiff, | ) |
| v. | )     Case Number:_____ |
|  | ) |
| University Of South Florida, Board Of Trustees, | ) |
| HRSE-Capstone Tampa, LLC, | ) |
| Defendants. | ) |

_____ )

# COMPLAINT

Daniel A. Frishberg (a tenant at the University of South Florida's dorms), ("Mr. Frishberg'¹", the "Plaintiff") respectfully files this complaint (the "Complaint") against the University of South Florida Board Of Trustees ("USF"), and HRSE-Capstone Tampa, LLC ("Capstone"), together the "Defendants" due to violations of the Federal Fair Housing Act² (the "FFHA"), Title II of the Americans with Disabilities Act (the "ADA"), Denial of Dwelling, Failure to Accommodate, Discrimination in the Terms and Conditions of Housing, breach of contract, unconscionable contract, retaliation, intimidation, discrimination, fraudulent inducement into disclosing confidential medical³ information, violation of the implied covenant of good faith and fair dealing, and other claims that may exist, but ones that I do not know how to correctly phrase due to my lack of legal training (_See_ **Request For _Pro Se_ Relief**).

---

¹ As well as various first person variations. I am sorry if this is weird for it to be partially in the first person, and partially in the third person, but all of the filings I have read are in the third person (not _pro se_).
² As well as the Florida Fair Housing Act, and related state claims. _See_ 28 U.S.C. § 1367(a).
³ As well as related claims such as FERPA and HIPAA violations.

Plaintiff is requesting equitable remedies to rescind the purported "administrative cancel[ation]" of the Housing Agreement and injunctive relief (potentially under 42 U.S.C § 3613(c)(1), but there may be a better code/section to grant it under) to prevent the Defendants from taking further retaliatory actions against the Plaintiff, as well as monetary damages[4].

In support of his complaint, and requested relief, Mr. Frishberg respectfully states as follows:

## VENUE

Venue is correct and proper pursuant to 42 U.S. Code § 3613, 28 U.S. Code § 1391(a), 28 U.S. Code § 1391(b)(2) and 28 U.S. Code § 1391(c)(2). The actions which the complaint is stemming from occurred within this district (in Tampa, Florida), and the Defendant is physically located in Tampa, Florida. This Court also has jurisdiction over the state claims arising from a dispute over the Federal Fair Housing act due to 28 U.S.C. § 1367(a).

## State Court Case

This case was originally filed[5] in the Hillsborough County Court[6]. It is Case No. 23-CC-125805, and can be viewed at https://hover.hillsclerk.com. The Defendants responded, and filed a motion to dismiss at ECF Docket No. 11, and among other things argued that the wrong entity was sued, so I amended my complaint, at ECF Docket No. 13[7], and filed a time

---

[4] This includes expenses incurred due to the direct actions of the Defendant.
[5] The original complaint is largely irrelevant, and can be ignored, as it is superseded by this one. The only important parts of it are the exhibits, which are the contracts. It was also filed as a small claims court lawsuit, which I did not realize until after the Defendants mentioned it. I intended to file it in the County Court.
[6] The "County Court".
[7] The amended complaint is materially similar to this complaint.

sensitive motion for an injunction at ECF Docket No. 12. The Defendants filed a motion to strike

both my amended complaint, and my time sensitive motion for an injunction, in part because

they alleged that the small claims court was the improper Court to bring the claim, and that the

small claims court could not grant the relief I was seeking. So, out of an abundance of caution I

am filing in this Court, which I believe is the proper Court to bring this claim in. Classes resume

on January 8th, and I need to regain access to my on campus housing by then[8] (or as close to then

as possible), so there is no time to waste.


## **Background**

Mr. Frishberg requested an accommodation from USF to have an Assistance Animal (in

this case, an emotional support animal), his request for an accommodation was approved by USF.

Later, the Defendants discriminated, and retaliated against the Plaintiff in violation of the Federal

Fair Housing Act (and other related laws), largely because of his Emotional Support Animal

("ESA"), which is classified as an Assistance Animal[9]. The retaliation led to his (illegal) eviction

from the university on campus housing, which is a de facto exclusion from participating in any

non-online classes since the Plaintiff has been unable to find alternative housing. The eviction

stemmed from a dispute over policies of USF which the Plaintiff alleges are illegal,

discriminatory, and in conflict with the Federal Fair Housing Act (the "FFHA"), as well as other

(related/equivalent) laws.

---

[8] Otherwise permanent, irreparable harm will occur.
[9] For the avoidance of confusion, the terms "Emotional Support Animal", "ESA" and "Assistance Animal"
are used interchangeably, and all refer to the same animal.

Mr. Frishberg is a tenant of USF, and has a lease for a room extending from August 2023, to May 2024. The Defendants purport[10] to have terminated (*See* **Exhibit B**) Mr. Frishberg's rental agreement due to Mr. Frishberg refusing to waive his right to use the common area alongside his assistance animal[11]. The Defendants have prevented Mr. Frishberg from accessing his room by both disabling his key card that allows him access to the building, and changing the locks on his room. Mr. Frishberg would not be able to (physically) attend school due to the Defendants' actions due to the lack of housing near enough to campus to be able to attend classes. Unless Mr. Frishberg is able to obtain either court relief, or relief via one of the complaints (for disability discrimination/violation of numerous laws, including the Federal Fair Housing Act, and Florida Fair Housing Act) he filed with various agencies such as the Department of Housing and Urban Development, he will be attempting[12] to take remote classes.

The Defendants **have not at any point stated that they believe that Mr. Frishberg does not qualify for/need an assistance animal**. Also, the Defendant's actions are "unlawful" according to the Department of Housing and Urban Development ("HUD"), and run contrary to the guidance[13] issued by HUD in **FHEO-2020-01**.

---

[10] The contract is likely unenforceable in part as it contains numerous unconscionable clauses which would allow the Defendants to terminate it, and kick out any renters for any number of reasons which they could quite literally make up, including vague ones like "[t]he Department may cancel the Agreement or change Student's Space assignment in the interest of order, discipline, health, safety, security, maximum utilization of Department facilities and resources, and/or educational delivery", including violating any rules/policies they have (the contract allows them to create new ones also).

[11] Per HUD, "[t]here are two types of assistance animals: (1) service animals, and (2) other trained or untrained animals that do work, perform tasks, provide assistance, and/or provide therapeutic emotional support for individuals with disabilities (referred to in this guidance as a "support animal")".

[12] It may not be fully possible due to a combination of both threatened disciplinary "sanctions" (*See: Plaintiff's Time Sensitive Motion For An Injunction, Or In The Alternative A Temporary Injunction*) and lack of availability of online classes. As well as the lack of suitable online classes. Thus far, I have been able to only sign up for one of the four classes online that I was going to be taking in person.

[13] https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf
FHEO Notice: **FHEO-2020-01**

The Defendants attempted to coerce/intimidate the Plaintiff into waiving his right to have his Assistance Animal in the common areas of the dwelling. The Plaintiff refused. As retaliation, the Defendants initiated "disciplinary action" against the Plaintiff, and found him "[r]esponsible" for the allegation of having his Assistance Animal outside of his room (*See* **Exhibit E**), **which he is _allowed_ to do according to HUD, the FFHA, and various other state/federal laws**. The Defendants also assigned the Plaintiff a "Civility and Community Standards Workshop" to attend and complete, as well as a $25 fee for said workshop. The Plaintiff refused the workshop, and is seeking injunctive relief barring the Defendants from requiring him to complete the workshop until this case is resolved.

The Defendants also purported to charge the Plaintiff fees (including for changing the locks to his room), and threatened further sanctions against him (after he started exercising his rights, such as filing a complaint in the County Court), including "additional sanctions up to permanent removal and restriction from the University"[14] (expulsion). This further highlights the extreme power disbalance, and need for immediate judicial relief.

The dispute at question arose over the Defendants' purported revocation of Mr. Frishberg Emotional Support Animal Agreement[15] (the "ESA Agreement"), which Mr. Frishberg was _required_ to sign **_to be able to have his Assistance Animal in the dorm_**—that is illegal. Mr. Frishberg's Assistance Animal is a *hypoallergenic*[16] cat. The Defendants allege that Mr.

---

[14] Email from USF General Counsel on November 27th, 2023, at 1:40pm EST.
[15] It is unclear to me if the purported breach of the agreement is even relevant, since I couldn't find anything (relevant) that allowed USF to prevent me from having an Assistance Animal regardless of if I broke some university rule/policy (which is superseded by Federal and state laws/acts).
[16] The definition of hypoallergenic is "relatively unlikely to cause an allergic reaction". The Defendants' stated that one of the reasons Mr. Frishberg's assistance animal could not be in the common area is it causing **_potential_** allergies.

Frishberg breached the ESA Agreement by allowing his Assistance Animal to leave his room. It is unclear to me if they can "revoke" something that is covered as a right[17] under the Federal Fair Housing Act (among other acts/laws). Title II of the ADA applies to USF[18] as it is an extension of the state government. In the event that the ESA Agreement is actually valid, *and* not superseded by federal/state law, *and* USF is able to revoke the ESA Agreement in the event of a breach, they would need to prove a breach of contract occurred, they have not done so.

The Defendants' in-house counsel stated that my property was removed from the room, and that "you will not be permitted back into your previously assigned room. Your belongings have been removed and are available to you and may be retrieved by contacting the University Police". The Defendants gave the Plaintiff until January 8th, 2024 to pick up said belongings.

The Plaintiff seeks injunctive[19] relief to permanently enjoin the Defendants from continuing to take actions to prevent the Plaintiff from accessing his room, being able to fully use all common areas with his Assistance Animal, and permanently enjoining the Defendants from taking any further retaliatory actions against the Plaintiff (including forcing him to traveling a long distance to end up throwing away most of his belongings before taking the rest home—

---

[17] It is like USF attempting to "revoke" the 1st Amendment by banning any speech that is negative against USF.

[18] "Public entities that operate housing facilities must ensure that they apply the reasonable accommodation requirements of the FHAct in determining whether to allow a particular animal needed by a person with a disability into housing and may not use the ADA definition as a justification for reducing their FHAct obligations." https://www.ada.gov/law-and-regs/title-ii-2010-regulations/ (Accessed December 9th, 2023).
"Moreover, as discussed above, the Department's definition of "service animal" in the title II final rule does not affect the rights of individuals with disabilities who use assistance animals in their homes under the FHAct or who use "emotional support animals" that are covered under the ACAA and its implementing regulations. *See* 14 CFR 382.7 *et seq"* https://www.ada.gov/law-and-regs/title-ii-2010-regulations/ (Accessed December 9th, 2023).

[19] Or equitable/whatever the correct legal term is.

this constitutes irreparable harm). The Plaintiff needs to attend in person classes for the best academic results. Remote learning simply does not work for him, as his disabilities (including ADHD) make it hard to both focus on, and understand online/remote classes. The Plaintiff's Dr. also said that not being able to attend in person classes would be detrimental to the Plaintiff. The Plaintiff will submit supplemental exhibits at a later date, including a Dr.'s note.

HUD's guidance states that the issue at hand makes up the majority of the complaints they receive, and the amounts of complaints are increasing: "As of the date of the issuance of this guidance, FHA complaints concerning denial of reasonable accommodations and disability access comprise almost 60% of all FHA complaints and those involving requests for reasonable accommodations for assistance animals are significantly increasing. In fact, such complaints are one of the most common types of fair housing complaints that HUD receives. In addition, most HUD charges of discrimination against a housing provider following a full investigation involve the denial of a reasonable accommodation to a person who has a physical or mental disability that the housing provider cannot readily observe". Not all disabilities are visible. Universities (let alone public universities) are not above the law[20] (*See* footnote 3 and 4 of HUD guidance).

## Preliminary Statement

I have done my best to use the proper legal terms for all of my requested relief, but I may have made mistakes, or mixed some of them up. In plain english, what I am requesting is that the Court prevent any further imminent irreparable harm (*See Time Sensitive Motion For An Injunction*[21]), as well as reverse the discriminatory/retaliatory acts committed by the Defendants

---

[20] *See* Case Number 4:11-cv-03209-JMG-CRZ, ECF Docket No. 80.
https://archive.ada.gov/kearney_order.pdf (one among many examples).
[21] Which will be filed contemporaneously with this complaint.

until this issue can be properly adjudicated. Classes begin on January 8th, 2024, which is less than a week away from today. I need immediate judicial relief to be able to attend school in person (which is critical to me being able to succeed academically) while this case is adjudicated. The academic school year/semester ends in the first week of May, so if this case was adjudicated on a normal timeline, it would still be ongoing by the end of the school year. The Defendants would de facto win simply by dragging this out, and excluding me from the university. That cannot be allowed to happen. Every day that I am not attending in person class (as is hereinafter, there is no other housing other than the on campus housing that the Defendants are excluding me from) constitutes permanent, irreparable harm. My psychiatrist recommended I stay in the on campus housing as it is the best option for me (and at this point in the year, it is the only option due to a lack of availability in off campus housing) to succeed. Whatever the proper term for preventing the Defendants from discriminating against me further, and harming me further, this Court should implement it, whether it be an injunction, restraining order, or other legal term.

## REQUEST FOR *PRO SE* RELIEF

As I am a *pro se* filer, and have not gone to law school, I do not understand the law as well as a lawyer would. I ask that the Court interpret my filings liberally, and to allow me to correct any mistakes in my pleadings, and to give me a clear opportunity to have my exhibits entered into the record. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) ("This policy of liberally construing pro se submissions is driven by the understanding that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of

legal training.").

As the Supreme Court of the United States said in *Haines v. Kerner*, "a pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" 404 U.S. 519, 520-521 (1972), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

This Court has the ability to "liberally" construe my requests. The Supreme Court has instructed the federal courts to apply the standard that a pleading filed pro se is "to be liberally construed." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018) (per curiam) (holding that "[i]n considering the defendants' motion to dismiss, the District Court was required to interpret the pro se complaint liberally"); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). I ask that if anything is in the wrong format, or cites the wrong state statute/code or the wrong subsection or law, or I make citation mistakes, or my filings do not perfectly set forth all facts needed to plead my claims, that you allow me to correct any deficiencies. If I also misunderstand some of the local rules, or have defects by technicality (like not suing the Board of Trustees, and suing the University instead), I request that you allow me to correct it. I will act in good faith to ensure that the Defendants have sufficient notice of all filings.

*See Chambers v. Eppolito*, No. 11-cv-355-PB, 2011 WL 4436285, at *1 (D.N.H. Aug. 24, 2011) (holding that "[i]n conducting a preliminary review, the magistrate judge construes pro se

pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals"). *See also Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997) ("[I]f [the pro se litigants] present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled.").

As the Supreme Court of the United States said in *Haines v. Kerner*, "the district judge should have explain[ed] the correct form to the *pro se* plaintiff so that [he] could have amended his pleadings accordingly. Instead of simply dismissing the complaints for naming federal agencies as the defendants, it would have been appropriate for the district judge to explain the correct form to the *pro se* plaintiff so that [he] could have amended his pleadings accordingly." 404 U.S. 519, 521 (1972), citing *Henry Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991). I apologize if any of my arguments/citations are not up to the standard of an attorney's, I am doing the best that I can. Thank you for your consideration.

## ARGUMENT

While my complaint does not need to prove my entire case, I believe that it may, as the facts of the case are mostly undisputed, and the law is crystal clear on it. '"The plausibility standard is not akin to a `probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. Therefore, an initial complaint is not required to prove the plaintiff's entire case, but should "`possess enough heft' to set forth `a plausible entitlement to relief.'" *Fin. Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1282 (11th Cir. 2007)". The Defendants in this case have flagrantly ignored large parts of the FFHA,

FHA and have retaliated against Mr. Frrishberg because he told them that they're wrong (they also cherry picked quotes[22] out of context in their justification for disciplinary sanctions).

I do not believe that my need for an Assistance Animal is disputed[23] by the Defendants (they have obtained substantial documentation explaining why I need one). The Defendants also approved (*See* **Exhibit A**) my request to have my Assistance Animal in the dorm, so it is an admission of the validity of my request.

The Defendants have violated the Federal Fair Housing Act (and other similar laws/acta) numerous times, even when their own policies say that they follow it. (*See* **Exhibit G**). In fact, their own policies directly contradict their statement of policy (Policy 6-033, Section II(C)), which says: "USF will follow all federal and state laws in regard to accommodations". **Not so**. Their own policies, and actions contradict the Federal Fair Housing Act, as will be shown hereinafter.

## 1.  FEDERAL FAIR HOUSING ACT (AND FEDERAL EQUIVALENTS)

The Federal Fair Housing Act and the Florida Fair Housing Act are substantively identical, and therefore the same legal analysis applies to each. *See Loren v. Sasser,* 309 F.3d 1296, 1299 n. 9 (11th Cir.2002).

---

[22] Even if the Plaintiff said everything the Defendants alleged, without any of the context that exists, it still does not justify their actions. Disability discrimination is still illegal, and state/federal law and acts override university policies.

[23] In the event that it is disputed, I can submit documentation (which was sufficient for the Defendants to allow me to have my Assistance Animal in the first place) to the court filed under seal.

## COUNT 1: VIOLATIONS OF THE FEDERAL FAIR HOUSING ACT SECTION

## 42 U.S.C. § 3604 & 3604(b)

The actions of the Defendants constitute numerous violations of the Federal Fair Housing Act.

42 U.S.C. § 3604 & 3604(b)[24]:

"As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—[](b) To discriminate against any person in the **terms, conditions, or privileges** of sale or rental of a dwelling, or in the **provision of services or facilities** in connection therewith, because of race, color, religion, sex, familial status, or national origin"[25] (emphasis added).

My right to have my Assistance Animal outside of my room, and have my Assistance Animal in all parts of the dwelling (including in any common areas, such as lounges) is clearly established in federal and state law, as well as Supreme Court precedent.

The Office Of Fair Housing And Equal Opportunity issued notice FHEO-2020-01[26] which *unambiguously* stated that assistance animals (like my ESA) are able to be in housing, "**including public and common use areas**" (emphasis added).

---

[24]
https://www.govinfo.gov/content/pkg/USCODE-2010-title42/pdf/USCODE-2010-title42-chap45-subchapI-sec3604.pdf
[25] Even though "disability" is not explicitly listed in this particular statute, it is my understanding that it also covers disabilities.
[26] https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf

## COUNT 2: VIOLATIONS OF THE FEDERAL FAIR HOUSING ACT SECTION 42 U.S.C.§ 3604(f)(3)(B)

Discrimination covered by the FHA includes **"a refusal to make reasonable accommodations in rules, policies, practices**, or services, when such **accommodations** *may* **be necessary to afford** [a handicapped] person **equal opportunity to use and enjoy a dwelling**." § 3604(f)(3)(B)."). (emphasis added).


Pursuant to U.S.C 42 §3602(b): "[a] "Dwelling" means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." The dormitories are a dwelling.


Pursuant to U.S.C 42 §3602(c)

"[a] "Family" includes a single individual". Mr. Frishberg is a single individual, so he constitutes a "family".


## COUNT 3: VIOLATIONS OF SECTION § 36.302

USF failed to make *extremely* reasonable accommodations despite them being requested numerous times. § 36.302 (Modifications in policies, practices, or procedures) of the ADA states:

"(a) *General*. A public accommodation *shall* make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services,

facilities, privileges, advantages, or accommodations to individuals with disabilities, unless ***the public accommodation can demonstrate*** that making the modifications would **<u>fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations</u>**." (emphasis added). Making minor modifications to the rules/policies (i.e allowing me to have my Assistance Animal in the common area) will not "fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodation" in any material way, shape or form. The burden of the proof (from my understanding of it) would be upon the Defendants to "demonstrate" that making those modifications would "fundamentally alter" the use of the common area. They have done no such thing. My Assistance Animal *may* ever so slightly alter the facility by having a space on the couch potentially occupied by the Assistance Animal, but it is far from fundamentally altering it.

## <u>COUNT 4: VIOLATIONS OF THE FEDERAL FAIR HOUSING ACT SECTION 42 U.S.C.§ 3604(f)(2)(A) / DISCRIMINATION IN THE TERMS AND CONDITIONS OF HOUSING</u>

The Defendants also committed Discrimination in the Terms and Conditions of Housing when they required Mr. Frishberg to sign the ESA Agreement, and have a (remote) meeting with the RLC. People who did not have assistance animals, were not required to sign the ESA Agreement, or attend a separate meeting (remotely). This case has a lot of similarities[27] to *Siler v. ABBOTT HOUSE INC.*, Dist. Court, SD Florida 2017, where the Plaintiff had to conduct a meeting, and sign a liability waiver (the ESA Agreement also contains clauses which act like

---

[27] In Siler, the disabilities were different, and the assistance animal in question was a service animal.

liability waivers). "Section 3604(f)(2)(A) of the FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person." § 3604(f)(2)(A)". *See Siler v. ABBOTT HOUSE INC.*, Dist. Court, SD Florida 2017.

## COUNT 6: FAILURE TO ACCOMMODATE

The FFHA prohibits discriminating against a person on the basis of a "handicap", or a disability, by refusing to make reasonable accommodations when necessary to afford the person equal opportunity to use and enjoy a dwelling. Fair Housing Amendments Act of 1988, Pub.L. No. 100-430, § 6, 102 Stat. 1619 (codified at 42 U.S.C. § 3604(f)(3)(B)). Mr. Frishberg has a disability.

The Defendants should be ordered to change their policies which are contrary/in violation of the FFHA (and other equivalents), as well as implement training so an incident like this does not occur again.

**The Legal Standard:**

A successful failure-to-accommodate claim has four elements. To prevail, one must prove[28] that:

---

[28] I will further prove (if necessary/requested by the Court) this standard at a later date with a supplemental filing, amendment, or whatever the proper procedure that the Court would like me to use.

(1) he is disabled within the meaning of the FHA,

(2) he requested a reasonable accommodation,

(3) the requested accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and

(4) the defendants refused to make the accommodation.

Element one has been proven due to the Defendants' acceptance of Mr. Frishberg's disability, and approval of the request to have an Assistance Animal in on-campus housing. I am also willing to file under seal the documents (or provide them for *in camera* review) which were provided to the Defendants, as I do not want sensitive medical information to be public.

Element two is supported by the Defendants' November 21st, 2023 letter with the results of the purported disciplinary hearing that took place on the same day (*See* **Exhibit E**). It stated in relevant part: "[t]he Resident Assistant verbally warned the student to keep the [Assistant animal/emotional support] cat inside the charged student's room, to which the student disagreed". What it does not mention is me asking the Defendants verbally numerous times if they could let me let my Assistance Animal out into the common area for "15 minutes or so a day". To obtain further proof, I would need to conduct discovery, and thus far the Defendants have refused to provide any discovery.

Element three is met since I have numerous diagnoses including social anxiety which make it very hard for me to socially interact with people (especially my peers), much like the Plaintiff in *Bhogaita v. Altamonte Heights Condominium Ass'n*, 765 F. 3d 1277 - Court of Appeals, 11th Circuit.

Element four is met due to the numerous written refusals of the Defendants, as well as subsequent disciplinary action they initiated. The attached exhibits have (*See* **Exhibit B** and **Exhibit E**) sufficient documentation. The fact that the Defendant's attempted to order Mr. Frishberg to get rid of his Assistance Animal, and then effectively evicted Mr. Frishberg, also weighs *extremely* heavily in favor of proving discrimination.

## COUNT 7: VIOLATIONS OF THE
## FLORIDA FAIR HOUSING ACT SECTION 760.27(2)

This Court has supplemental jurisdiction over state claims since they arise from the same dispute as ones that are covered under the Federal Fair Housing Act, *See* 28 U.S.C. § 1367(a). The Florida Fair Housing Act[29] (in relevant part) states:

"760.27   Prohibited discrimination in housing provided to persons with a disability or disability-related need for an emotional support animal.—

(1)   DEFINITIONS.—As used in this section, the term:

---

[29]

http://www.leg.state.fl.us/statutes/index.cfm?App_mode=Display_Statute&Search_String=&URL=0700-0799/0760/Sections/0760.27.html

(a)   "Emotional support animal" means an animal that does not require training to do work, perform tasks, provide assistance, or provide therapeutic emotional support by virtue of its presence which alleviates one or more identified symptoms or effects of a person's disability.

(b)   "Housing provider" means any person or entity engaging in conduct covered by the federal Fair Housing Act or s. 504 of the Rehabilitation Act of 1973, including the owner or lessor of a dwelling.

(2)   REASONABLE ACCOMMODATION REQUESTS.—To the extent required by federal law, rule, or regulation, it is **unlawful to discriminate in the provision of housing** to a person with a disability or disability-related need for, and **<u>who has or at any time obtains, an emotional support animal</u>**. A person with a disability or a disability-related need must, upon the person's request and **approval by a housing provider, be allowed to keep such animal in his or her <u>dwelling</u> as a reasonable accommodation in housing**, and such person may not be required to pay extra compensation for such animal. Unless otherwise prohibited by federal law, rule, or regulation, a housing provider may:

(a)   Deny a reasonable accommodation request for an emotional support animal <u>***if***</u> <u>such animal poses a direct threat to the safety or health of others or poses a direct threat of physical damage to the property of others, which threat cannot be reduced or eliminated by another reasonable accommodation</u>"  (emphasis added). My Assistance Animal does not pose a direct threat (or indirect threat for that matter) to anyone's health or safety, and there is no threat of physical damage to property. Far from being threatening, my Assistance Animal is extremely well behaved, calm and small. Candidly he is more afraid of people than they are of him, in fact I have yet to meet anybody afraid of my cat, quite the opposite, people tend to want to pet him.

The remainder of the various subsections of the Fair Housing Act (b, c, d, and e) are not relevant, since documentation has been provided to USF, and they approved the Assistance Animal.

I am not aware of any relevant laws that allow the Defendants to act on subsection t[30] of the ESA agreement, or if it is even an enforceable provision due to it seemingly violating the Fair Housing Act and potentially the ADA (as well as being entered into due to fraudulent inducement). My Assistance Animal is not a pet, it is a treatment tool. Removing my Assistance Animal from me would significantly impact me emotionally, mentally, academically and socially. My Assistance Animal has a right to be outside of my (roughly 100 square foot) room, as it is an extremely reasonable accommodation (that I have requested numerous times). Keeping a cat locked in a 100 square foot room is borderline animal cruelty, as well as detrimental to my mental health/sleep due to the feeling of isolation from others. From early November until November 21st, 2023, I did not go into the common area with my Assistance Animal, and my social interactions, as well as overall mental health significantly suffered. Whenever my Assistance Animal is in the common areas of the dwelling with me there is a drastic improvement in my social interactions, and overall mental health. My Assistance Animal also has a right to be outside of my room contractually (assuming the contract is valid and enforceable).

---

[30] Which states: "Any violation of the above rules or University Policy may result in immediate removal of the Assistance Animal from USF System premises and the owner being prohibited from continuing to keep an Assistance Animal on University property. For students, such removal may be reviewed through USF Student Rights and Responsibilities and the student will be afforded all rights of due process and appeal as outlined in that process."

No one has *actually* been harmed due to my Assistance Animal being outside of my room, nor has it been alleged that anyone has been harmed. I (among other things) have social anxiety, and have been significantly harmed by being denied the ability to use the common area with my Assistance Animal. It is extremely difficult for me to engage in protracted social interactions with my peers without my Assistance Animal. It quite literally assists in social interactions in more ways than just reducing my stress and anxiety to manageable levels. My Assistance Animal is a surprisingly good ice breaker. I shouldn't be forced to be a (socially) borderline prisoner in my own room, since having a protracted conversation with my peers (without my assistance animal) induces a large amount of anxiety and stress.

Congress found that "physical or mental disabilities in no way diminish a person's right to **fully participate in all aspects of society**," 42 U.S.C. § 12101 (emphasis added). Evicting me, due to me exercising rights granted to me under various laws, (as they did) is discrimination. The 11th Circuit Court stated that the "FHA protects renters not only from eviction, but also from discriminatory actions that would lead to eviction but for an intervening cause" (*See Hunt v. Aimco Properties*, LP, 814 F. 3d 1213 - Court of Appeals, 11th Circuit 2016). Both occurred here, but there was not yet an intervening cause.

## COUNT 8: VIOLATIONS OF THE FLORIDA FAIR HOUSING ACT SECTION 760.27(3) (AND ALL FEDERAL/OTHER EQUIVALENTS)

This Court has supplemental jurisdiction over state claims since they arise from the same dispute as ones that are covered under the Federal Fair Housing Act, *See* 28 U.S.C. § 1367(a).

The Defendants violated the Fair Housing Act _numerous_ times, including when they purported that "[t]he **required questionnaire** that was attached to the email **must** be completed by the prescribing provider of the ESA." (_See_ **Exhibit H** and **Exhibit I**) (emphasis added in bold[31]). That is in clear violation of Florida Statutes Section 760.27(3) (which is in all caps and titled "REQUEST LIMITATIONS") states:

"Notwithstanding the authority to request information under subsection (2), a housing provider **may not request information that discloses the diagnosis or severity of a person's disability** or any medical records relating to the disability. However, a person may disclose such information or medical records to the housing provider at his or her discretion.

(b)   A housing provider may develop and make available to persons a routine method for receiving and processing reasonable accommodation requests for emotional support animals; however, **a housing provider may not require the use of a specific form** or notarized statement, or deny a request solely because a person did not follow the housing provider's routine method". (emphasis added).

The Defendants' "required questionnaire" (which in-of-itself is illegal) contains several (also illegal) questions which "request information that discloses the… severity of a person's disability" such as question 1a, which says to: "please state the type of impairment and what major life activities are the subject of the disability (i.e., the current impact and functional limitations resulting from the disability)". Question 2b asks to "please describe the relation between the requested accommodation (the [assistance] animal) and the disability (i.e., how the [assistance] animal will alleviate or mitigate a symptom(s) or effect(s) associated with the person's disability or otherwise assist the resident in using and enjoying University housing?".

---

[31] The Defendants' communications and documents/forms include emphasis originally, which is why I will specifically label what emphasis I added (if I add any).

## COUNT 9: VIOLATIONS OF THE

## FLORIDA FAIR HOUSING ACT SECTION 760.27

This Court has supplemental jurisdiction over state claims since they arise from the same dispute as ones that are covered under the Federal Fair Housing Act, *See* 28 U.S.C. § 1367(a).

Section 760.27 of the Fair Housing Act states that: "upon the person's request and approval by a housing provider, [they] be allowed to keep such [assistance] animal in his or her dwelling as a reasonable accommodation in housing".

Section 760.22(4)[32] defines "dwelling" as: "any building or structure, or portion thereof, which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location on the land of any such building or structure, or portion thereof". The term "Dwelling" covers the entirety of the dorm, including the common areas. Section 760.22(6) states: "Family" includes a single individual", which would put the USF dormitories (where I rent a room) squarely within the jurisdiction of the Fair Housing Act (Chapter 760 ss. 760.20-760.37).

Section 760.22(10) states that: "'To rent" includes to lease, to sublease, to let, and otherwise to grant for a consideration the right to occupy premises not owned by the occupant." The common room that the Defendants purport is off limits to my Assistance Animal falls squarely within the literal four corners of the definition of a dwelling since it is "any building or

---

[32] https://www.flsenate.gov/Laws/Statutes/2019/Chapter760/All

structure, or portion thereof" of the dormitory. The Defendants purport to have terminated my rental agreement with them, due to my refusal to get rid of my Assistance Animal, after they unilaterally decided that it suddenly isn't a needed medical tool anymore. Their actions are illegal, and constitute retaliation.

## COUNT 10: VIOLATIONS OF THE

## FLORIDA FAIR HOUSING ACT SECTION 760.23(8)(a) AND SECTION

## 760.23(8)(b)

This Court has supplemental jurisdiction over state claims since they arise from the same dispute as ones that are covered under the Federal Fair Housing Act, *See* 28 U.S.C. § 1367(a).

Section 760.23(8)(a) and Section 760.23(8)(b) state that: "It is unlawful to discriminate against any person in the <u>terms, conditions, or privileges of sale or rental of a dwelling</u>, or in the provision of <u>services or facilities in connection with such dwelling</u>, because of a disability of:

(a)  That buyer or renter;

(b)  A person residing in or intending to reside in that dwelling after it is sold, rented, or made available" (emphasis added). By preventing the Plaintiff from using his assistance animal in the common areas, the Defendants de facto took away the Plaintiff's ability to fully use and enjoy the space.

USF advertised[33] "activity lounges" (the common area) as "Hall Amenities" on their website. The advertisement came with the implied promise that the common area would be open

---

[33] https://www.usf.edu/housing/housing-options/suite-style/pinnacle-hall.aspx (Accessed on December 10th, 2023)

to be used, and that I would not be discriminated against.

## HALL AMENITIES

- Ground floor features a full kitchen, gaming area, TV/media lounge, a multipurpose room, and a laundry room
- Activity lounges and quiet lounges on every floor
- Ethernet connection in-room and WiFi throughout the building
- 250Mbps average internet speed (speeds up to 1Gbps)
- 24-hour, on-call emergency maintenance

## COUNT 11: INTIMIDATION

The Defendants attempted to intimidate me into first giving up my Assistance Animal (by threatening disciplinary action/expulsion/housing cancellation), and then later into either being evicted, or "getting rid of the cat". When that didn't work in scaring me into getting rid of my Assistance Animal, USF (unsuccessfully) threatened the me on November 17th, at approximately 2pm EST by saying that "the police will drag you out on Monday [November 21st, 2023] if you don't leave" and "if you're not out of here by 9 am on Monday [November 21st, 2023], the USF Police Department will remove you, and your stuff". After I refused, they eventually left. I emailed the Defendants and asked to confirm that I heard them correctly, and in response I got an email purporting to "administratively cancel" the Housing Agreement (*See* **Exhibit B**). This all happened directly[34] in front of/next to a camera (that is looking down the dorm hall). I specifically instructed the Defendants' in-house counsel to preserve that footage (in addition to the general litigation hold I issued). I requested that footage during Discovery, and

---

[34] Within approximately 6 feet if you do not take into account height/elevation,

have yet to receive it (or for that matter any discovery). The Defendants filed a Motion To Stay

Discovery within the state court lawsuit.

## COUNT 12: ENFORCEMENT UNDER 42 U.S.C. § 3613

I seek to enforce the law with this action. Relief under 42 U.S.C. § 3613(b)(1) and

3613(b)(2) would be helpful, and if this court is so inclined, should grant it. This Court should

also grant relief under 42 U.S.C. § 3613(c)(1).

## COUNT 13: RETALIATION

As was stated elsewhere in this complaint, the Defendants retaliated against the Plaintiff

in numerous ways, including by attempting to have him "get rid of" his Assistance Animal,

initiating disciplinary proceedings against him (which they extremely quickly decided that he

was guilty of), attempting to intimidate him into moving out, and later evicting him (and

attempting to charge him fees for it) when he went on Thanksgiving break. The Defendants are

now threatening to issue an academic hold on my academic record (which would prevent me

from registering for classes, and requesting a transcript to transfer schools), and even expel me.

## 2.  CONTRACT RELATED CLAIMS

### The ESA Agreement is Unenforceable, Unconscionable and Void

This argument is made in the alternative. The Plaintiff does not believe that this is

necessary, but is making it out of an abundance of caution. The ESA Agreement is unenforceable

and void for numerous reasons, including that the plaintiff was fraudulently induced into signing

it.

## COUNT 14: FRAUDULENT INDUCEMENT(S)

This Court has supplemental jurisdiction over any state law claims since they arise from the same dispute as ones that are covered under the Federal Fair Housing Act, *See* 28 U.S.C. § 1367(a).

The Defendants said that Mr. Frishberg would be unable to have his Assistance Animal in the dorm if he did not sign the contract (*See* **Exhibit A**) that is materially false. According to HUD, a "housing provider"[35] ***must*** make a reasonable accommodation of allowing the ESA in common areas. Per HUD, it is illegal "to refuse to make a reasonable accommodation that a person with a disability may need in order to have equal opportunity to enjoy and use a dwelling". Contrary to what USF purported, Mr. Frishberg did not need to sign any agreement to have his Assistance Animal in the dorm, nor does the HUD guidance say anything about "conditionally" approving Assistance Animals. If Mr. Frishberg knew at the time that he did not need to sign an extremely unconscionable and one sided agreement to have his Assistance Animal in the dorm, he would have never signed it. Nothing in the Fair Housing Act says anything about housing providers being allowed to coerce renters into signing agreements restricting/limiting their rights.

---

[35] Per HUD, "[t]he term "housing provider" refers to any person or entity engaging in conduct covered by the FHA. Courts have applied the FHA to individuals, corporations, partnerships, associations, property owners, housing managers, homeowners and condominium associations, cooperatives, lenders, insurers, real estate agents, brokerage services, state and local governments, colleges and universities, as well as others involved in the provision of housing, residential lending, and other real estate-related services." Page 3, footnote 3 https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf

The Defendants also fraudulently induced Mr. Frishberg into disclosing confidential information, such as his diagnosis which is covered under HIPAA (via requiring his psychiatrist to fill out a premade form, which is also illegal). That is in violation of Florida Statutes Section 760.27(3) (which is all capitalized and titled "REQUEST LIMITATIONS") which states: "Notwithstanding the authority to request information under subsection (2), a housing provider **may not request information that discloses the diagnosis or severity of a person's disability** or any medical records relating to the disability. However, a person may disclose such information or medical records to the housing provider at his or her discretion.

(b)   A housing provider may develop and make available to persons a routine method for receiving and processing reasonable accommodation requests for emotional support animals; however, **a housing provider may not require the use of a specific form** or notarized statement, or deny a request solely because a person did not follow the housing provider's routine method" (emphasis added). Mr. Frishberg would have never disclosed information surrounding his diagnosis unless the Defendants fraudulently induced him into doing so. According to HUD, "[h]ousing providers are not entitled to know an individual's diagnosis". The Defendants likely are also not properly safeguarding the confidential medical information they obtained via fraudulent means, since they instructed me to send it to housing@usf.edu, which is able to be accessed by a (likely) very large number of people. Those people more than likely never had proper training on how to protect confidential information, since if any of them actually read the HUD guidance, they would know that what they are doing is illegal.


The Defendants also committed Discrimination in the Terms and Conditions of Housing when they required Mr. Frishberg to sign the ESA Agreement, and have a (remote) meeting with

the RLC. People who did not have assistance animals, were not required to sign the ESA Agreement, or attend a separate meeting (remotely). This case has a lot of similarities[36] to *Siler v. ABBOTT HOUSE INC.*, Dist. Court, SD Florida 2017, where the Plaintiff had to conduct a meeting, and sign a liability waiver (the ESA Agreement also contains clauses which act like liability waivers). "Section 3604(f)(2)(A) of the FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person." § 3604(f)(2)(A). The Florida FHA provides the same relief. § 760.23(8)." *See Siler v. ABBOTT HOUSE INC.*, Dist. Court, SD Florida 2017.

Due to numerous reasons, including the large amount of misrepresentation that went into the signing of the contract, it is unenforceable, and null and void.

## COUNT 15: BREACH OF IMPLIED TERMS OF CONTRACT INCLUDING COVENANT OF GOOD FAITH

The Defendants breached numerous implied terms, including the implied terms of good faith (in both the ESA and Housing Agreements). Section 17 of the Housing Agreement (as well as the contract as a whole) implies that the Defendant will not discriminate, or retaliate against protected persons requesting accommodations. The Defendants breached the implied covenant of good faith with their discriminatory practices.

## COUNT 16: UNCONSCIONABILITY

---

[36] In Siler, the disabilities were different, and the assistance animal in question was a service animal.

The Housing Agreement is unconscionable and unenforceable due to the extremely one sided terms in it. The terms allow USF to effectively do whatever they want, including unilaterally canceling the lease agreement, restricting what areas (including lounges/common areas) can be used, changing room assignments, and even denying a student canceling the agreement *even when the agreement allows the student to cancel it*. And there are extremely hefty fees for cancellation if they do choose to "allow" you to cancel the agreement. The same provision of an effective veto of cancellation unsurprisingly is not granted to students. Students are required to comply with university policies, and federal/state law (in that order). They're also not responsible for any damage to property except for Florida Statutes Section 768.28, and USF can unilaterally make up new rules/regulations.

The Housing Agreement is the single most one sided, unconscionable contract I have ever read. No reasonable person would sign it if they had the option to live in on campus housing without it (since the area directly adjacent to campus is fairly rough). Fletcher Street (near campus) is nicknamed 'Sketchy[37] Fletchy' by the student body. There have been numerous shootings/homicides near campus, including one that left two dead, and one wounded in March of 2023[38]. A man was found dead near campus in August of 2022[39], and there was yet another shooting in September of 2019 near campus which left 1 dead and 1 wounded[40], and those are

---

[37] "Sketchy" is defined by Dictionary.com as:  "unreliable or unsafe" and  "disreputable or shady".
https://www.dictionary.com/browse/sketchy (under "See More").
[38]
https://www.wfla.com/news/hillsborough-county/2-killed-1-wounded-in-shooting-at-tampa-apartment-complex/
[39]
https://www.wtsp.com/article/news/local/hillsboroughcounty/1-person-dead-tampa-shooting-usf/67-00773577-5d9a-4382-bff9-c1aa02986e42
[40]
https://www.tampabay.com/news/crime/2019/09/11/one-person-killed-another-hospitalized-after-shooting-in-temple-terrace/

just some examples that took literally two minutes to find. The other so-called alternative off campus options are not really actual options that are comparable to on campus housing. Even if you ignore the housing complexes that have been condemned, or have bug infestations, simply finding housing anywhere near campus (that does not have black mold) is extremely difficult. In short, there was no real option other than to sign the Housing Agreement.

## COUNT 17: BREACH OF CONTRACT[41]

The Defendants' claim that Mr. Frishberg violated the ESA Agreement is false, it was the Defendants who breached the contract's implied terms of good faith. The relevant section (subsection b) of the agreement states: "The approved Assistance Animal must be controlled by its owner and must be contained within the residential area (room, suite, apartment, **building**, enclosed balcony or yard spaces) at all times, except when transported outside the private residential area in an animal carrier or controlled by leash or harness." (Emphasis added).

Another potentially relevant part (subsection i) of the ESA Agreement states: "The owner is responsible for assuring that the approved Assistance Animal does not unduly interfere with the routine activities of the residence or cause difficulties for students who reside there. Assistance Animals must not make excessive noise or display behavior that will disrupt other community members. Individuals with disabilities who are accompanied by Assistance Animals must comply with the same rules regarding noise, safety, disruption, and cleanliness as people without disabilities. Sensitivity to residents with allergies and to those who fear animals is

---

[41] This argument is made in the alternative, and in the event that the ESA agreement is found to be a valid, enforceable contract.

important to ensure the peace of the residential community". My Assistance Animal did not "unduly interfere with the routine activities of the residence or cause difficulties for students who reside there". One resident complained about my Assistance Animal walking on counters/tables, and I promptly resolved that issue by ensuring that he never was on counters or tables.

USF has alleged that at least one resident had an issue with my Assistance Animal, but has failed to both specify who it was, and what their issues were. They allege that several students have allergies to cats, but (and this is the key part) *no one is allergic*[42] to my Assistance Animal since he is hypoallergenic. If any allergies existed, reasonable accommodations could have been made to ensure that it was not an issue.  I also attempted to compromise with the student(s) who had issues with my Assistance Animal by attempting to work out a schedule as to when my Assistance Animal would leave my room. The students refused.

Subsection m of the ESA agreement states: "The owner must ensure that the Assistance Animal does not: Attack, harass, sniff, jump on/at or disrupt others or their personal belongings[.] Display any repeated behaviors or noises that are disruptive to others. Block evacuation routes or egress in case of an emergency. Leave the owner's room except when accompanied by the owner." (slight format change, including removing bullet points). The Defendants did not allege that my Assistance Animal "unduly interfere[d]" with anyone, or harassed anyone. To the contrary, he usually liked to hide from new people as he is (sometimes literally) scared of his own shadow, and for lack of a better term, is a coward. A large number of

---

[42] I know this both because I asked the people who said they had allergies, and because during the disciplinary hearing they held about this matter, the witness testified that no one had allergies to my ESA.

people enjoyed him being out, and liked petting him. The Defendants also have not alleged that my Assistance Animal left "the owner's room except when accompanied by the owner".

## **CONCLUSION**

While my complaint may not be as well organized as one drafted by a lawyer, it is should more than meet the minimum requirement for a *pro se* complaint. This Court should **GRANT** the relief requested (after a hearing/further motion practice), and any other relief that it sees fit.

The Defendants' actions are clear cut examples of discrimination and retaliation. Without relief from the Court, the Plaintiff will suffer permanent irreparable harm. ***Immediate*** judicial relief is both needed, and requested. I will be filing a motion for an injunction shortly after this case is docketed.

## **RESERVATION OF RIGHTS**

I reserve any and all rights, and request that This Court "liberally interpret" this Reservation of Rights as including the most stringent, strong, broad, and effective/appropriate reservations of rights. Nothing contained herein shall be considered as an admission of the validity of any claim, counterclaim, or claims against the Plaintiff, nor shall it be construed as a waiver of any right. I also reserve the right to include more exhibits in later filings.

I hereby swear under threat of perjury that all of the information contained herein is true and correct to the best of my knowledge, information and belief.

Respectfully Signed,

Daniel A. Frishberg. *Pro Se*.

/s/*Daniel A. Frishberg*

Santa Clara, California

January 2nd, 2024,


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of January, 2024, I electronically filed the foregoing with the Clerk of the Court by using the online *pro se* portal. A copy of the foregoing was also served via electronic email upon the Defendants

EXHIBIT[43] A[44]:

---

[43] **Exhibit A** and **Exhibit B** that were filed with the original complaint filed in the state court (Case No. 23-CC-125805) are incorporated by reference as Exhibit 1 and 2.
[44] Email received from USF housing at 12:32pm EST on August 10th, 2023, approving my request for my Assistance Animal. For the avoidance of doubt, the "conditions" that USF stated must be met before my Assistance Animal was to be brought on campus were met before I brought my Assistance Animal. (For the avoidance of doubt, "ESA" was not highlighted in the email, but is highlighted due to me running a keyword search).

Dear Daniel,

Thank you submitting all of your documentation to support your Emotional Support Animal (ESA). At this time, we have approved your request under the following conditions. **You will not be eligible to bring your animal on campus until the following conditions are met:**

- Schedule a Meeting with your Residence Life Coordinator (RLC) to go over and agree to the Animals On-Campus Agreement (attached). It is your responsibility to reach out to your RLC to schedule a meeting.
- Talk to your roommates (if applicable) to make them aware of the animal entering their community

**RLC Information:** Your RLC is copied on this email. Their information can also be found here.

Please print and fill out the attached form and have your emergency contacts sign and agree to the terms. You can e-mail a scanned copy to housing@usf.edu.

If you have any questions, you can contact us via email at housing@usf.edu or by phone at 813-974-0001 during normal business hours, Monday through Friday from 9:00am until 4:00pm. We are located in the Argos Building, 2nd Floor (Above Argos Exchange).

*Sincerely,*

*Housing & Residential Education*
**University of South Florida**
4202 E. Fowler Ave, RAR 229
Tampa, FL 33620
Office: 813-974-0001    Fax: 813-974-5152

EXHIBIT B[45]:

---

[45] Email received from Mr. Andrew Johnson (an employee of USF working in the housing department) at 4:31pm EST on November 17th, 2023.

 Andrew Johnson
To: Daniel Frishberg


Fri 11/17/2023 4:31 PM

Cc: Ana Hernandez; David Kloiber; Amy Chilcutt; Megan Bucalos; Xiomara Talavera Mercedes; Jimmy Surin; Jan Serpan; Sherrelle Findley; +3 others

Dear Mr. Frishberg,

Following my correspondence dated November 14, 2023, Residential Education staff members contacted you on or around 2:00 PM to confirm that you complied with USF's directive to remove your animal from the residence hall.  I was informed by the USF Housing and Residential Education staff that you stated that the animal was still present in your residential room.  Given that you have not complied with USF Housing and Residential Education department's directives, USF is administratively cancelling your 2023-24 Student Housing Agreement effective Monday, November 27, 2023 at 12:00 PM under section IV.1.d as stated in the excerpt below.

*IV. CANCELLATION: Notwithstanding anything contained herein, and even when Student's Cancellation is permitted under the terms of the Agreement, the Agreement may not be canceled without the prior written approval of the Department. The Department may, within its sole discretion, deny any Cancellation requests. Where Cancellation of the Agreement is subject to the Cancellation fees set forth in the Agreement, any fees will be added to the Student's financial account and will be due and owing immediately. Non-payment of the fees may result in a Student registration hold or restriction on graduation and ability to obtain a transcript. Late payments may also include collection fees. Students should refer to Section III of this Agreement for more information regarding the Payment Schedule.*

1. *Cancellation by Department: The Department may, in accordance with applicable rules of the University, initiate reassignment or cancel the Agreement if deemed necessary by the Department in the best interest of order, health, conduct, safety, security, disaster, failure to comply with any and all University regulations, policies, or directives.*

   *d. Cancellation Due to Administrative Dismissal: Students who are removed from the Residence Halls and/or dismissed from the University for administrative reasons will be responsible for a daily-prorated Hall Rate.*

Please schedule your check-out with RLC Cordero and return your keys to the HUB Service Desk by 12:00 PM on Monday, November 27, 2023.  Failure to complete these steps by the deadline may result in additional fees or referrals to the Office of Student Conduct and Ethical Development.  ID card access to any residential space will also end at that time.  Your rent charges will cease on Monday, November 27, 2023 and a credit will be issued for the balance of the fall term.  The credit will be issued to your OASIS account.

You are expected to comply with the rules, policies, regulations of the University of South Florida and all applicable laws until your check-out from housing.  Failure to comply with the previous statement will result in your immediately removal from housing and a referral to the Office of Student Conduct and Ethical Development.

Sincerely,

Dr. Johnson

# EXHIBIT C[46]:

Dear Daniel,

Thank you for contacting the University of South Florida Housing Services Team!

In order to review your request, please provide current documentation (**within the past 90 days/ 3 months**) showing **diagnosis, date of diagnosis, and reasonable accommodations requested from your medical care professional**.  This letter needs to be on your **medical care professional's letterhead**.  You will need to provide this documentation to the housing assignments office within <u>5 business days of receipt of this email</u>, in order for us to process your request. Failure to provide this documentation by the stated date will result in a denial of this request.  Please make sure that you reference your U# and ticket number on every sheet of documentation.  Please note that the deadline for all ADA/Medical Accommodation are as follows:

Fall-Spring Agreement deadline- June 1st
Spring Only Agreement deadline- November 1st
Summer A, AB, C Agreement deadline- April 15th
Summer B, SSS, ACE Agreement deadline- June 1st

If you are applying after the deadlines listed above for the upcoming term, we will still process your request and attempt to honor it.  We cannot guarantee placement after the deadline.

If you have any questions, you can contact us via email at housing@usf.edu or by phone at 813-974-0001 during normal business hours, Monday through Friday from 9:00am until 4:00pm. We are located in the Argos Building, 2nd Floor (Above Argos Exchange).

*Sincerely,*

*Housing & Residential Education*
**University of South Florida**
4202 E. Fowler Ave, RAR 229
Tampa, FL 33620

---

[46] Email received from USF Housing at 4:06pm EST on February 13th, 2023. This email is unmodified, and the emphasis was added by USF.

EXHIBIT D[47]:

Dear Daniel,

Thank you submitting all of your documentation to support your Emotional Support Animal (ESA). At this time, we have approved your request under the following conditions. You will not be eligible to bring your animal on campus until the following conditions are met:

- Schedule a Meeting with your Residence Life Coordinator (RLC) to go over and agree to the Animals On-Campus Agreement (attached). It is your responsibility to reach out to your RLC to schedule a meeting.
- Talk to your roommates (if applicable) to make them aware of the animal entering their community

**RLC Information:** Your RLC is copied on this email. Their information can also be found here.

Please print and fill out the attached form and have your emergency contacts sign and agree to the terms. You can e-mail a scanned copy to housing@usf.edu.

If you have any questions, you can contact us via email at housing@usf.edu or by phone at 813-974-0001 during normal business hours, Monday through Friday from 9:00am until 4:00pm. We are located in the Argos Building, 2nd Floor (Above Argos Exchange).

*Sincerely,*

*Housing & Residential Education*
**University of South Florida**
4202 E. Fowler Ave, RAR 229
Tampa, FL 33620
Office: 813-974-0001   Fax: 813-974-5152

## EXHIBIT E[48]:

"Dear Daniel,

This letter is to notify you of the outcome of the SCED-University Conduct Board Formal Hearing held on November 21, 2023.

### Allegations

Student Conduct and Ethical Development received a report regarding an alleged incident that occurred on Thursday, October 5, 2023 in Pinnacle Hall at 6:30 PM. Specifically, Resident Daniel Frishberg has openly and repeatedly violated the ESA agreement within Pinnacle Hall.

### Findings

Using the preponderance of the evidence standard and the information presented during the formal hearing, the findings for the violation(s) of the USF Student Code of Conduct in this case are as follows:

- Residence Hall Policies -- Responsible
  Failure to abide by any policy or regulation governing University Housing (e.g. rental agreement, Resident Handbook).

- Failure to Comply -- Responsible

---

[47] Email sent by USF Housing at 1pm EST on 06/09/2023. (For the avoidance of doubt, "ESA" was not highlighted in the email, but is highlighted due to me running a keyword search).
[48] The letter was sent via a link only accessible by being logged into my student email account, so I copied and pasted it (in relevant part) as **Exhibit E**. The formatting of the letter may be a bit off, but I have done my best to restructure it as it was. The contents of it were not changed. All of the bolded lettering was not modified or added.

Failure to comply with an official request or directive of a University Official acting within the scope of their assigned duties. Failure to identify oneself or produce USF identification upon request by a University Official.

**Rationale**
Based on the available information, it is more likely than not that the violation of the Student Code of Conduct occurred. The Housing and Residence Education policy says animals should not leave the area. While this can be interpreted differently, there were several instances where it was explained that the cat must remain inside the charged student's room. According to the relevant information and the charged student's narrative, it was confirmed that the cat was found on several occasions outside the charged student's living space, which caused unease among fellow community residents. The Resident Assistant verbally warned the student to keep the cat inside the charged student's room, to which the student disagreed. Based on the conversation with the Resident Assistant, the student was then invited to meet with the Residence Life Coordinator for an Informational Meeting due to not complying with the Resident Assistant's words. For the above reasons, the University Conduct Board finds the student responsible for the listed charges.

**Learning Outcomes**
The learning outcomes determined for this incident include:
1. The student will be able to acknowledge the housing policies while respecting the wishes of fellow housing community members.
2. The student will be able to improve conflict resolution skills.

**Sanctions**
The sanction(s) assigned to meet the determined learning outcomes include:

**Civility and Community Standards Workshop Part 1**
You must submit your $25 payment (cashier's check or money order) along with the completed section of the attached form to: University of South Florida, P.O. Box 864571, Orlando, FL 32886 or in one of the designated Cashier's Office Drop Boxes (see attached form). A money order can be obtained at Publix. If the form is not submitted, Student Conduct and Ethical Development will not receive credit for the payment and will not be able to consider the payment complete. After proof of payment is received, you will be contacted by Student Conduct and Ethical Development with information regarding available workshop dates and times. The payment must be submitted by December 15, 2023.

**Civility and Community Standards Workshop Part 2**
You must attend and complete the Civility and Community Standards Workshop facilitated by Student Conduct and Ethical Development by February 15, 2024. Once you have completed the Civility and Community Standards Workshop Part 1, you will be contacted by a Student Conduct and Ethical Development staff member to register for the first available workshop. You must attend the workshop on your assigned date, actively participate, and complete all workshop requirements successfully before this sanction will be considered complete.

**Civility and Community Standards Workshop Part 3**

You must submit one (1) of the reflection assignment options provided at the Civility and Community Standards Workshop seven (7) days after your assigned workshop date to Student Conduct and Ethical Development - studentconduct@usf.edu.

Failure to complete the sanction(s) by the date(s) indicated will result in an Administrative Hold being placed on your student record. This hold may affect your ability to register for courses, request academic transcripts, and receive a degree and diploma."

**EXHIBIT F[49]**:

"In the event you have not complied with the University directive and related

contractual obligations, the University will initiate the steps in the highlighted

section below [there was no highlighted section below] and appropriate referrals

with related sanctions may be imposed."

(Email from USF General Counsel at 12:13pm EST on November 27th, 2023, font

increased).

**EXHIBIT G:** (excerpts of relevant sections of USF Policy 6-033[50]):

---

[49] Size of the text increased. This is an excerpt from the email.
[50] I am not stating that their policy is legal or enforceable, but just that this is the policy. II(C) of the policy is contradicted by numerous policies that require Assistance animals to stay within the individual's room. Section 760 and HUD guidance is crystal clear about how Assistance animals are allowed within the common area of a building, and are allowed in the entire dwelling.



**POLICY**

| | |
|---|---|
| **Number:** | **6-033** |
| **Title:** | **Animals on Campus** |
| **Responsible Office:** | **Administrative Services** |

**Date of Origin:** 3-20-13        **Date Last Amended:** 11-30-18 (technical)        **Date Last Reviewed:** 12-12-19

---

I.    **PURPOSE & INTENT**

This policy is designed to protect the health, safety, and welfare of the University of South Florida (USF) students, faculty, staff and the general public.

II.   **STATEMENT OF POLICY**

A.   All animals brought on to any USF campus property must be under physical restraint. The animals must be under the complete control of and physically restrained by the owner/responsible party who is also responsible for ensuring the animal is safe and healthy.

B.   Pet animals are to remain only on public places  and are not permitted in University patio areas adjacent to swim facilities, in or on the spectator areas or recreational fields or facilities, such as racquetball and tennis courts, in dining or residence halls, inside USF buildings, or at special events, except as provided in Section V, Exceptions.

C.   USF will follow all federal and state laws with regard to accommodations.

III.  **DEFINTION OF TERMS**

A.   **Approved Animal:** The Office of Students with Disabilities Services (SDS) (to be known as Student Accessibility Services (SAS) effective July 1, 2020) or Human Resources has determined the person with a disability has established their eligibility for reasonable accommodation and the animal's qualifications as a "Service or Assistance" Animal. The animal is an *Approved Accommodation* for the Eligible Person under the applicable laws.

**B. Assistance Animals:** As defined by The Fair Housing Act, *Assistance Animals* are animals that work, provide assistance, or perform tasks for the benefit of a person with a disability, or animals that provide emotional support that alleviates one or more identified symptoms or effects of a person's disability.  Assistance Animals perform many disability-related functions, including but not limited to guiding individuals who are blind or have low vision, alerting individuals who are deaf or hard of hearing to sounds, providing minimal protection or rescue assistance, pulling a wheelchair, fetching items, alerting persons to impending seizures, or providing emotional support to persons with disabilities who have a disability-related need for such support.  Some, but not all, animals that assist persons with disabilities are professionally trained.  Other assistance animals are trained by the owners themselves and, in some cases, no special training is required.  The question is whether or not the animal performs the assistance or provides the benefit needed as a reasonable accommodation by the person with the disability.  Assistance Animals are not considered Service Animals and are not permitted in public spaces, classroom or work places.

**C. Eligible Person:** A person with a disability who because of a functional limitation of his/her disabling condition requires a Service Animal to perform a task or function.

**D. Emotional Support Animal:** An animal whose sole function is to provide *emotional support. Emotional support animals* do not qualify as service animals under ADAAA and are not permitted on campus except to the extent the animals are considered Assistance Animals under the FHA as provided in Section (B) above.

V.    **EXCEPTIONS**

Types of Animals with Exceptions: The following animals and specific instances are an exception to [II. B.] above as they are permitted on USF properties so long as they are under the complete control of and physically restrained by the Responsible Party and/or maintained as provided below:

A.  **Assistance Animals** are permitted on campus with approval from the Office of Housing and Residential Education and must be contained within the private residential area (room, suite, and/or apartment) of at all times except when transported outside the private residential area in an animal carrier or controlled by leash or harness. Assistance Animals are not permitted in public spaces, classrooms, or work places unless they also meet the definition of Service Animal as provided by law and as permitted as part of an accommodation as provided in this Policy.

**EXHIBIT H**[51]:

---

[51] Email from USF Housing Department at 3:08pm EST on 02/14/2023.

Dear Daniel,

Thank you for submitting an ADA/Medical Accommodation Request for an Emotional Support Animal (ESA).

**In order to be approved for an ESA you must meet the following criteria:**

- Have an ongoing relationship with a medical professional- for at least 90-days-  who is able to prescribe ESAs

- Have the same medical professional complete the attached questionnaire and attach their professional business card to page #2

- Turn in required veterinary records (current vaccinations)

- Submit your Emergency Contact Information

**If your ESA is approved there is a 14-day grace period where you must complete the following steps before your animal is allowed on-campus:**

- Meet with your RLC and Assignments Coordinator to go over and agree to the Animals On-Campus Policy

- Talk to your roommates (if applicable) to make them aware of the animal entering their community

Please have the questionnaire, emergency contact information form, and veterinary records submitted **within 2 weeks of the receipt of this email.**

If you do not yet have an ESA, please let us know. You will need to resubmit a request once you have the ESA.

**EXHIBIT I**: (the "required questionnaire" in its entirety. For the avoidance of doubt, it has not been modified in any way, and no emphasis was added):

**EMOTIONAL SUPPORT ANIMAL**
**FAIR HOUSING ACT INTERACTIVE PROCESS QUESTIONNAIRE**

From: _____
　　　Student Name and University ID #

To:　 _____
　　　Healthcare Provider Name

---

**The remainder of this form is to be filled out in its entirety by the health care professional responsible for the above patient.  The patient is not to fill out the below section.**

---

Please answer and return the following questionnaire to your patient. The questionnaire format is a guide and we would appreciate a response to every question. We need your complete medical opinion, so please feel free to include a more detailed narrative response to any and all questions if needed to answer more fully.  Thank you for your anticipated cooperation.

Name of Patient for whom you are completing this questionnaire: _____

Date Patient Started under your care: _____

1. Does this resident have a disability – i.e, a physical or mental impairment that substantially limits one or more major life activities?

                    Yes           No

    a. If yes, please state the type of impairment and what major life activities are the subject of the disability (i.e., the current impact and functional limitations resulting from the disability).

    _____
    _____
    _____

2. Has an Emotional Support Animal been prescribed by you to this resident for treatment purposes?

                    Yes           No

    a. If yes, does the person have a *disability-related need* for this animal? (In other words, does the animal provide some type of disability-related assistance or emotional support that alleviates or mitigates one of more symptoms or effects associated with the person's existing disability, to help the person use and enjoy University housing?)

                    Yes           No

Updated: February 11, 2020

    b. If yes to 2(a), please describe the relation between the requested accommodation (the animal) and the disability (i.e., how the animal will alleviate or mitigate a symptom(s) or effect(s) associated with the person's disability or otherwise assist the resident in using and enjoying University housing?

    _____
    _____
    _____

_____

_____

_____

By signing below, you as the Healthcare Provider are confirming that in prescribing this animal for the resident you have (1) considered the impact on the resident if the animal's behavior or reaction to university housing results in the removal or loss of the animal to the resident;  (2) discussed the risk to the animal and/or resident in cases of emergency or adverse reaction to the setting  and (3) determined with the resident understands, accepts and can manage those risks  Please note that the University Policy (link to Policy) outlines that in the event of emergency the animal is not the responsibility of the university and the animal will be considered abandoned if the resident is not present or able to care for the animal.

Please attach a professional business card or the medical professional completing this questionnaire

_____
Signature

_____
Title

_____
 Date

Printed Name and Address:

_____
_____
_____