**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

_____

)
Daniel A. Frishberg,                                    )
Plaintiff,                                                   )
v.                                                            ) Case Number: 8:24-cv-00022-TPB-NHA
                                                              )
University Of South Florida's Board Of Trustees,   )
HRSE-Capstone Tampa, LLC,                          )
Defendants[1].                                            )
_____ )

## PLAINTIFF'S EMERGENCY MOTION FOR A INJUNCTION[2], OR

## IN THE ALTERNATIVE A TEMPORARY

## INJUNCTION/RESTRAINING ORDER

Daniel A. Frishberg (a tenant at the University of South Florida's dorms), the Plaintiff ("Mr. Frishberg", "I"[3], "Plaintiff") respectfully files this motion (the "Motion") for a preliminary injunction to enjoin the University of South Florida Board of Trustee ("USF"), HRSE-Capstone Tampa, LLC ("Capstone") and all associated parties from taking further retaliatory action against the Plaintiff, including via the USF "disciplinary" process.

_____

[1] All of the Defendants are represented by the same counsel. A summons has not yet been issued since there is a pending *in forma pauperis* motion pending, but the Defendants were served with all filings in this case on the same day that they were docketed. I will serve the Defendants with this Motion immediately after I file it (even before it is docketed) via the *pro se* portal.
[2] Potentially a preliminary injunction. Or restraining order/temporary restraining order. I am unsure of what the proper term for the requested relief should be, but it is to prevent the Defendants from taking any further action (including disciplinary action), such as preventing me from registering for classes, accessing my room, etc, as well as reversing the actions they took.
[3] And other versions of the first person.

## Local Rule 3.01[4](e) Statement

This Motion is being filed as an Emergency Motion due to the Defendants recently[5] instituting an academic hold (preventing Mr. Frishberg from registering for even online classes) on Mr. Frishberg's academic account. Immediate judicial relief is needed to prevent further irreparable harm. Classes commence **today**, January 8th, 2024. The deadline to register for classes is Friday, January 12th[6]. Relief is being requested that would require the Defendants to undo their eviction (which stemmed from discriminatory actions, i.e attempting to coerce the Plaintiff into getting rid of his Assistance Animal, among other things), thereby allowing Mr. Frishberg to attend in person classes while this case is pending, or at a bare minimum allow Mr. Frishberg to register for online[7] classes. Preventing Mr. Frishberg from enrolling in and attending (online) classes constitutes immediate, irreparable harm (assuming there is any availability, which there is not[8]). **No amount of money** can make up for missed educational content and time, and it would leave me at a severe disadvantage compared to my peers. I need an injunction as soon as possible, but no later[9] than Friday the 12th of January, 2024. .

---

[4] I have done my best to comply with all local rules, but I was unable to get the amount of pages below 25 without sacrificing eye appeal (such as reducing the font size). It is approximately half a page over, and that is because of a spacing issue with the exhibits. This Court can interpret this statement as a request to increase the page limit, or simply use its judicial discretion to overlook this small violation.

[5] Today is the first business day that this hold has shown up on my account, so this Emergency Motion is being filed as soon as possible.

[6] Scroll slightly down this page, the deadlines are under "Spring 2024", and specifically "January". https://www.usf.edu/registrar/calendars/#spring2024

[7] As is explained hereinafter, online classes (basically teaching myself, since it is instructional videos for the most part) do not work well for me, and my psychiatrist advised me to take only in person classes.

[8] Mr. Frishberg contacted his academic advisor and explained the situation, and asked if there are any alternatives including online only classes which would not cause delays in his education. Mr. Frishberg's academic advisor replied (in relevant part) with: "Unfortunately, what you can see in OASIS [an online portal where you register for classes, among other things] is what is available right now. Online courses get full immediately! Therefore, I advise you [to] keep an eye our [sic] should someone drop a spot. Currently there are no spots in any of the online courses". Hoping that a spot opens up, **and** it is for a class that Mr. Frishberg needs to take, **and** that Mr. Frishberg is able to sign up for it before someone else does, is not a plan. Hoping is not a viable plan. Even if Mr. Frishberg obtained a spot in an online class, it is both only a temporary fix, significantly disadvantageous to Mr. Frishberg, and puts Mr. Frishberg at an even bigger disadvantage compared to his peers (who are attending in person classes).

[9] A short, temporary injunction/restraining order to allow me to appeal the denial of the longer term injunction/restraining order is also requested if needed.

## State Court Case

I incorporate by reference as if fully set forth herein my previous statements on the State Court Case.

## REQUEST FOR *PRO SE* RELIEF

I incorporate by reference as if fully set forth herein my previously requested *Pro Se* relief.

## Preliminary Statement

The retaliation and discrimination continues, and this Motion for an Injunction seeks to enjoin the Defendants from their discriminatory actions. Mr. Frishberg applied for transfers to other universities, and will be unable to do so with the academic hold in place (since he needs more credits to be able to transfer, and he is unable to obtain the necessary credits without taking the needed classes). This academic hold is retaliatory against the Plaintiff, and prevents him from registering for, and attending classes, even remote ones. Every single day of class that the Plaintiff misses puts him further, and further behind. Mr. Frishberg's case is extremely strong, to a point where the Defendants would have an insurmountable burden to prove that their discriminatory actions, which they put in writing, bolded, underlined, and made bright red (*See* **Exhibit 4**), are *somehow* not discriminatory.

In relevant part (unmodified[10]): "In order to review your request, please provide current documentation (**within the past 90 days/ 3 months**) showing **diagnosis, date of diagnosis, and reasonable accommodations requested from your medical care professional**.  This letter needs to be on your **medical care professional's letterhead**.  You will need to provide this documentation to the housing assignments office within **5 business days of receipt of this email**, in order for us to process

---

[10] No emphasis, or color changes were added. Formatting may be slightly different, but no material changes occurred.

your request. Failure to provide this documentation by the stated date will result in a denial of this request. Please make sure that you reference your U# and ticket number on every sheet of documentation.''

The Defendants refused to accommodate Mr. Frishberg's request for an Emotional Support Animal (after they already approved it previously) when they instructed Mr. Frishberg to "get rid off" his ESA. When Mr. Frishberg refused; he was evicted from on-campus housing.

This Motion is not meant to fully argue the merits of the case, nor is it meant to do anything other than stopping the discrimination and retaliation by obtaining a preliminary injunction, or in the alternative a temporary injunction. Mr. Frishberg faces significant academic and emotional[11] harm, retaliation, and potentially expulsion due to his refusal to be coerced into waiving his rights. An injunction should be **<u>GRANTED</u>** ordering the Defendants to stop any further retaliation and irreparable harm[12] to the Plaintiff. The merits of the case will be argued elsewhere, but I have provided some arguments to support my request for an injunction. I believe that they clearly show that the actions the Defendants engaged in are discriminatory, and illegal, and that I have a very high chance of success. This Court should take immediate action to prevent any further harm from befalling the Plaintiff due to retaliatory acts of the Defendants. There is insufficient time to litigate this whole case before further irreparable harm occurs, since classes started on January 8th, 2024. Which is why injunctive relief should be granted to preserve the pre-discrimination status quo.

---

[11] This an extremely stressing and anxiety inducing event for me. Among other things, I have had a hard time sleeping for the past month.
[12] By excluding me from on campus housing, the Defendants are causing me imminent, permanent, irreparable harm. Every day I miss of on-campus education puts me further and further behind my peers. I already have a hard time keeping up with them due to learning disabilities, such as ADHD.

Some undisputed[13] facts:

1. Mr. Frishberg was determined to have a disability (by USF), and, as an accommodation, approved to have a Emotional Support Animal ("ESA") live with him in the dwelling.

2. The issue currently at hand arose from the Defendants instructing Mr. Frishberg to not allow his assistance animal outside of his room.

3. Defendants would not make any accommodation to their policies about assistance animals being in common areas even though Mr. Frishberg requested that they make one multiple times.

4. USF initiated disciplinary proceedings against Mr. Frishberg, and determined that he was "responsible" for violating rules/policies by being in the common area with his ESA.

5. Defendants issued "sanctions" against Mr. Frishberg, including paying a fee and attending a workshop.

6. Defendants stated that "**[f]ailure to complete the sanction(s) by the date(s) indicated will result in an Administrative Hold being placed on your student record**. This hold may affect your **ability to register for courses, request academic transcripts**, and receive a degree and diploma." (emphasis added).

I am a *pro se* individual, so I request that This Court take that into consideration when construing this Motion, and the requests within it. I do not have the knowledge to fully lay out the legal tests, or case law that a lawyer would.

---

[13] For the avoidance of doubt, the Plaintiff does not agree that the "disciplinary proceedings" are valid, or correct in their assessment, nor does he waive any rights, or agree that any of the Defendants' claims are valid. Some of the undisputed facts are that the Defendants made statements, or performed certain actions.

# BACKGROUND[14]

The Plaintiff was discriminated against, and retaliated against. The retaliation led to his (illegal) eviction. The eviction stemmed from a dispute over policies of USF which the Plaintiff alleges are illegal, discriminatory, and in conflict with the Federal Fair Housing Act (the "FFHA"), the Florida State Fair Housing Act (Section 760, the "FHA"), and other (related/equivalent) laws.

The issue currently at hand arose from the Defendants ordering Mr. Frishberg to not allow his assistance animal outside of his room. Mr. Frishberg refused, as the Fair Housing Act, Federal Fair Housing Act, and various other laws/acts (and case law precedent) allow Assistance Animals to be in *all* common areas. Mr. Frishberg is a tenant of USF, and has a lease for a room extending from August 2023, to May 2024. The Defendants then took retaliatory action including "disciplinary sanction", purporting to have terminated (*See* **Exhibit B**[15]) Mr. Frishberg's rental agreement, and have prevented Mr. Frishberg from accessing his room by both disabling his key card that allows him access to the building, and changing the locks on his room (as well as allegedly removing his property from his room). This constitutes irreparable harm, as Mr. Frishberg is unable to attend university classes in person due to lack of any housing near campus, and injunction will fix this, and it will not materially prejudice the Defendants. It is critical for the Plaintiff's academic success to attend in person classes. The Plaintiff's psychiatrist said[16] that living in on campus housing, and attending in person classes is the best way for him to learn.

---

[14] It is my understanding that a background section is customary for all filings to basically restate the case thus far, if it is not, feel free to skip it.

[15] Exhibits including letters (like "A", "B", etc) refer to Exhibits filed in the *Plaintiff's Complaint*.

[16] The Plaintiff will file a supplemental exhibit with a Dr's note once he is able to obtain it. Mr. Frishberg's Dr. is currently still on vacation.

The Defendants have previously stated that "[f]ailure to complete your check-out by November 29, 2023 will result in USF implementing our Abandoned Property protocol which will result in additional charges being to [sic] applied to your OASIS [portal where tuition and other payments are made] account". As of now, it seems that the Defendants have applied numerous charges to the Plaintiff's OASIS account. Plaintiff requests that the Defendants be enjoined from attempting to collect any and all additional/punitive fees (including the ones already added to Plaintiff's account) until this case is resolved.

## ARGUMENT

The facts in this case are quite simple, and I believe merit a summary judgment in my favor, but that is a matter for another motion. The Defendants engaged in what constitutes unlawful, discriminatory conduct under numerous laws/acts.

The Defendants are covered under both the Federal Fair Housing Act (the "FFHA") and the Florida Fair Housing Act (the "FHA"). The Florida Fair Housing Act contains statutory provisions that are substantively identical to the Federal Fair Housing Act, and the facts and circumstances that comprise the federal and state fair housing claims are the same. *See* 28 U.S.C. § 1367(a) (permitting "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").

Courts have consistently ruled that University Housing is covered under the Federal Fair Housing Act (and local equivalents). *See* generally *United States v. University of Nebraska at Kearney* (D. Neb.)[17]. *See also* generally *United States v. Notre Dame de Namur University* (N.D. Cal.)[18].

The 11th Circuit stated that the "FHA protects renters not only from eviction, but also from discriminatory actions that would lead to eviction but for an intervening cause" (*See Hunt v. Aimco Properties*, LP, 814 F. 3d 1213 - Court of Appeals, 11th Circuit 2016). This Motion is not the proper place for me to fully lay out my arguments, which are made in my *Complaint*, and are fully incorporated by reference for all relevant parts herein.

This injunction is not seeking to make the Defendants simply "obey the law", but it is seeking to prevent further discrimination, and harm to the Plaintiff: "there is a difference between trying to enjoin a defendant to "obey the law" and trying to enjoin the defendant to stop discriminating against the plaintiff, which is a permissible form of relief. *See Hous. Opportunities Project for Excellence, Inc. v. Wedgewood Condo. Ass'n, Inc.,* No. 12-60172-CIV, 2012 WL 4193969, at *10 (S.D. Fla. Sept. 19, 2012) (denying motion to dismiss injunctive relief within two FHA claims that sought to "enjoin the Defendants from discriminating against resident Plaintiffs based upon familial status and from retaliating against Plaintiffs for their participation in this suit."); *see also* § 3613(c)(1)." *See S*iler v. ABBOTT HOUSE INC., Dist. Court, SD Florida 2017. Every day of attending in person classes at USF that I miss, constitutes

---

[17]Order approving the Joint Motion to enter a consent order.  https://www.justice.gov/d9/unksettle_0.pdf
[18] DOJ Overview of the case.
https://www.justice.gov/crt/case/united-states-v-notre-dame-de-namur-university-nd-cal-0

irreparable harm to me, not only academically, but socially[19] also. I was evicted from the on campus housing because I refused to waive my rights, while I was engaging in a protected activity. While this injunction will not undo all of the harm done to me, it will prevent them from taking further retaliatory action, and prevent them from inflicting even more irreparable harm. This Court may grant relief under 42 U.S.C. § 3613(c)(1).

### 1. <u>Chances Of Success On The Merits</u>

The chances of a success on the merits of the case are ***extremely*** high. The only way I will not succeed, is if I make a mistake, such as a procedural one. This is a clear cut case of University administrators overstepping. There have been numerous similar cases in the past decade or so, and they all ended with the University losing. *See* generally *United States v. University of Nebraska at Kearney* (D. Neb.)[20]. *See also* generally *United States v. Notre Dame de Namur University* (N.D. Cal.)[21].


A party moving for preliminary injunctive relief need not demonstrate a likelihood of *absolute* success on the merits. Instead, he must only show that his chances to succeed on his claims are "better than negligible." *Cooper v. Salazar,* 196 F.3d 809, 813 (7th Cir. 1999). This is a low threshold, which I have more than overcome. My chances of success on the merits are extremely high.

---

[19] Part of attending college is the social aspect. The social aspect is completely removed when I am forced to take online classes.
[20] Order approving the Joint Motion to enter a consent order.  https://www.justice.gov/d9/unksettle_0.pdf
[21] DOJ Overview of the case.
https://www.justice.gov/crt/case/united-states-v-notre-dame-de-namur-university-nd-cal-0

The moving party must also demonstrate that he has no adequate remedy at law should the preliminary injunction not issue. There is no adequate remedy, both at law, and one that I can implement myself, other than an injunction, or similar court order.

My right to have my ESA outside of my room, and in "**public and common use areas**" (emphasis added) is clearly established in federal law, state law, and (indirectly) in Supreme Court precedent (*See City of Edmonds v. Oxford House, Inc.*, 514 US 725 - Supreme Court 1995: "**Discrimination covered by the FHA includes "a refusal to make reasonable accommodations in rules, policies**, practices, or services, when such accommodations _**may**_ be necessary to afford [handicapped] person[s] **equal opportunity to use and enjoy a <u>dwelling</u>**." § 3604(f)(3)(B)." (emphasis added, brackets not added/are there originally). The Office Of Fair Housing And Equal Opportunity of the Department of Housing and Urban Development ("<u>HUD</u>") issued notice FHEO-2020-01[22] (the "<u>HUD Notice</u>") which _**unambiguously**_ stated that assistance animals (like Emotional Support Animals) are able to be in housing, "**including public and common use areas**" (emphasis added). The HUD notice also restates what the law makes clear, that "[a]ssistance animals are not pets".

In the 2022-2023 academic year, I stayed in the same dorm, and the exact same dorm room as in the 2023-2024 academic year. Not a single person on the floor had an issue with my ESA being in the common area. In fact, people wanted me to let him into the common area **more**. This case as a whole bears similarities in *some*[23] regards to *Whitaker v. Kenosha Unified*

---

[22] https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf
[23] This is not an instance of transgender discrimination, but similarities can be drawn, such as a academic institution enforcing illegal, discriminatory rules and policies, while causing significant harm to the target of the discrimination.

*School District,* 858 F. 3d 1034 - Court of Appeals, 7th Circuit 2017. In *Whitaker*, none of the people the school district was purporting to protect (the students) had any issues with Whitaker using the boys bathroom. Just as Whitaker used the boys bathroom for over six months before a staff member filed a report, I had my ESA in the common area for almost the entirety of the 2022-2023 academic year, and almost nobody[24] minded. This year, only a small minority of the students in the dorm had issues with the ESA being in the common area.

The Defendants have made numerous claims about the validity of their actions before a lawsuit was brought in the Small Claims Court. They are wrong, since any purported contract/agreement (assuming it is valid), and university policies are overridden by state and federal law, which ban discrimination based on disability. It should be noted that the Defendants have not disputed any of my claims, the facts at hand or addressed any of the allegations on their merits, instead they simply argued it should be dismissed on procedural grounds (as well as stalled for time). While campus rules/policies are important, they are largely irrelevant when state or federal (in this case both) laws supersede them. A public college or public university (or for that matter almost any entity) cannot create rules/policies that allow them to ignore the law.

The FFHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" its provisions. § 3617. The Defendants having numerous staff members show up outside of my dorm room door threatening me with having "the police drag you out",

---

[24] A couple of RA's, whose job it is to enforce the university policies halfheartedly told me to put the ESA back in my room, before leaving to continue their rounds of the dorm. No other student had an issue with my ESA being in the common area.

and saying that "the USF police department will remove you by dragging you out" if I did not move out by November 21st, 2023 (the incident occurred on November 17th, 2023) is s retaliation, intimidation and "threaten[ing]". The Defendants' actions, including ones they intend to take (described hereinafter) constitute retaliation under *Fernandez v. Orlando Housing Authority,* No. 615CV1341ORL40DAB, 2016 WL 2784989 (M.D. Fla. May 13, 2016). While the actions are not a firebombing or cross burning, they seek to punish me, and exclude me from the University of South Florida because I engaged in protected action. I have suffered significant harm already, which will de facto exclude me from being on campus physically since I have nowhere to live (within hundreds of miles of campus) due to the less than ideal housing supply near campus, and the Defendants seek to do even more harm. Locking me out of the dorm, and de facto evicting me, leaves me no choice but to not only "have the effect of causing a protected person to abandon the exercise of his or her housing rights", but my housing[25] as well.

Just like in *Whitaker*, the main problem stemmed from policies which were clearly discriminatory. The "requirements" set by the Defendants to be approved for an ESA are clearly illegal, such as their blatant disregard for Florida Statutes Section 760.23(3), which clearly and unambiguously states that "**a housing provider may not require the use of a specific form** [] or deny a request solely because a person did not follow the housing provider's routine method" (emphasis added), as well as clearly laying out limitations, such as: "Notwithstanding the authority to request information under subsection (2), a housing provider **may not request information that discloses the diagnosis or severity of a person's disability** or any medical records relating to the disability". (emphasis added).

---

[25] For the avoidance of doubt, I have not abandoned the housing by choice, but I was left with no choice since the locks were changed.

The Defendants do not, and cannot dispute that they made several requests/demands, which are illegal, and discriminatory. Nor can they dispute that they required people with ESAs to sign a separate contract, and hold a separate meeting with a USF Housing Department staff member.

**2.** <u>**Balance Of The Harms Test**</u>

To put it mildly, I do not do well with online learning, and my psychiatrist has stated as much in the past (he recommended that I live in the on campus housing, and avoid any online or hybrid classes). Attending in person classes is the only way I can succeed in college.

The Balance Of The Harms test weighs overwhelmingly in Mr. Frishberg's favor. Mr. Frishberg will suffer ***immediate, irreparable*** harm absent an injunction. USF would suffer <u>**no harm**</u> if the injunction is granted, it would simply prevent them from further discriminating against Mr. Frishberg. An injunction would simply preserve the pre-discrimination *status quo*, which is me being able to register for classes, drop classes, attend classes (both online and in person), live in the dorm with my Assistance Animal, and transfer out of USF (if I choose to, and if I am accepted). USF will suffer no harm by being required to allow me to stay in my room in on campus housing, as I will be paying rent, etc. USF also will not suffer any harm by allowing me to register for classes, including (in the alternative) online ones.

Harm is considered irreparable if it "cannot be prevented or fully rectified by the final judgment after trial." *Girl Scouts of Manitou Council, Inc.,* 549 F.3d at 1089 (quoting *Roland*

*Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 386 (7th Cir. 1984)) (internal quotation marks omitted). At a bare minimum, this Court should grant a temporary injunction/temporary restraining order to allow Mr. Frishberg to obtain a longer/more permanent injunction before he suffers *even* more harm. Preventing Mr. Frishberg from enrolling in and attending (online) classes constitutes immediate, irreparable harm (assuming there is any availability, which there is not[26]). **No amount of money** can make up for missed educational content and time, and it would leave me at a severe disadvantage compared to my peers.

Any "[a]dministrative [h]old being placed on [the Plaintiffs] student record" constitutes immediate and irreparable harm, and the "hold may affect [Plaintiffs] **ability to register for courses, request academic transcripts**, and receive a degree and diploma." (emphasis added). Mr. Frishberg has applied for transfers to numerous other universities (largely to get away from the retaliation and discrimination), and will be unable to transfer without transcripts.

It seems that the Defendants, at a minimum, attempted to institute an academic hold on Mr. Frishberg's academic account (*See* **Exhibit 3**), since his OASIS (portal where you register for classes, and pay charges, etc) account shows an academic hold, but also says that he is able to register for classes, and does not have any hold.

---

[26] Mr. Frishberg contacted his academic advisor and explained the situation, and asked if there are any alternatives including online only classes which would not cause delays in his education. Mr. Frishberg's academic advisor replied (in relevant part) with: "Unfortunately, what you can see in OASIS [an online portal where you register for classes, among other things] is what is available right now. Online courses get full immediately! Therefore, I advise you [to] keep an eye our [sic] should someone drop a spot. Currently there are no spots in any of the online courses". Hoping that a spot opens up, *and* it is for a class that Mr. Frishberg needs to take, *and* that Mr. Frishberg is able to sign up for it before someone else does, is not a plan. Hoping is not a viable plan. Even if Mr. Frishberg obtained a spot in an online class, it is both only a temporary fix, significantly disadvantageous to Mr. Frishberg, and puts Mr. Frishberg at an even bigger disadvantage compared to his peers (who are attending in person classes).

At this point in the school year, it is effectively impossible to find housing even remotely similar to the one that Defendants purported to kick Mr. Frishberg out of. The Defendants cannot be allowed to use their overwhelming advantage in power (by attempting to charge Mr. Frishberg additional fees, and threatening academic consequences such as expulsion, as well as continuing to prevent Mr. Frishberg from living on campus in his room, etc) to attempt to dissuade Mr. Frishberg from seeking relief from their illegal, and discriminatory actions.

The Plaintiff understands that the fees charged[27] (as retaliation) to the Plaintiffs OASIS account may seem *de minimis* to The Court, but this is not a small amount of money to Mr. Frishberg, and he should not[28] be forced to pay them while the case is pending, as it is an undue burden when combined with the expenses Mr. Frishberg has already had to endure due to the actions of the Defendant.

### 3. **Public Interest**

It is in the public interest to issue this injunction, as it will uphold the law, prevent discrimination, and act as a check on the executive[29] branch of the state government.

---

[27] It is also unclear why the Plaintiffs charged me for 5 keys, when I only took one. If they need spares, they should pay for them themselves. The Defendants also purported to charge me $245 for "abandoned property".

[28] For the avoidance of doubt, I am only requesting that the Court enjoin the Defendants from collecting on any fees they purported to charge in relation to the dispute over the ESA. For example, the door lock changing fee. I will pay the tuition/other related fees, and am only seeking relief over the fees stemming from the discrimination.

[29] The Governor of Florida appointed 5 of the members of the board of Trustees.

42 U.S.C. § 12101[30] also supports the issuance of the injunction, as the "Nation's proper goals" include full inclusion, and preventing discrimination:"The Congress finds that-...(7) the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals".

## **Requested Relief**

1. An injunction enjoining the Defendants[31], and/or anyone else proceeding with academic sanctions, issuing or enforcing holds on Mr. Frishberg's academic records, or preventing Mr. Frishberg from enrolling in classes (including remote ones), dropping classes (including remote ones) and transferring out of USF in any way, shape or form.

2. An injunction enjoining the Defendants, and/or anyone else associated with them from harassing, intimidating, or retaliating (including monetarily via "fees") against Mr. Frishberg in any and all ways, including (but not limited to) through the so-called "Disciplinary Process", or academically.

3. An injunction enjoining the Defendants from doing anything with the Plaintiff's property which they purportedly removed from his room, other than returning it to the room/preserving the property, or requiring him to pick up said property until the issue is resolved[32]. The Plaintiff would suffer irreparable harm if forced to both travel[33] to the university, and pick up his stuff, as he will be forced to throw away/otherwise dispose of

---

[30] https://casetext.com/statute/united-states-code/title-42-the-public-health-and-welfare/chapter-126-equal-opportunity-for-individuals-with-disabilities/section-12101-findings-and-purpose

[31] This includes the University of South Florida as a whole.

[32] The Defendants should also provide a reasonable amount of time (at least 3 days notice) for the Plaintiff to pick up his property when the injunction is lifted, or the case is otherwise resolved.

[33] The irreparable harm from traveling would be missing at a minimum the first few days of class, the majority of the irreparable harm will come from being forced to dispose of most of his property.

a large portion of it. The Defendants gave the Plaintiff until noon on January 8th, 2024[34]

to pick up his belongings. The Plaintiff is unable to pick it up, since flights out of Tampa

are extremely expensive for the 8th (over $800[35]).

4. An injunction enjoining the Defendants from preventing the Plaintiff from living in the

   exact same on campus housing (including the specific room[36]) that he was in before this

   discrimination started, preventing the Plaintiff from having an Assistance Animal, and

   being able to use the common areas (including with his Assistance Animal).

## Conclusion

The Defendants' main advantage is the overwhelming amount of power that they hold

over the Plaintiff, and time, as a portion of the non-monetary relief will be moot *if* Mr. Frishberg

transfers to another university for the 2024-2025 academic year. Mr. Frishberg believes that this

case is a clear cut one, and supports his requests strongly. ***Any*** delay will significantly harm the

Plaintiff, due to the forgoing reasons. An injunction will nullify some of the power aspect (such

as preventing further discrimination and retaliation), while preventing significant, imminent

irreparable harm to the Plaintiff. For the aforementioned reasons, this Court should **<u>GRANT</u>** the

Motion, and issue the injunction.

---

[34] I am in contact with the Defendants about storage of the property. They said that they could give me an estimate for the costs of storing it, but I have not heard back as of close of business on Friday 01/05/2024
[35] I am, for lack of a better word, broke, and my family as a whole is in an extremely tight financial situation. My mother is on disability after an extremely serious car accident (and unable to work), and my father has no income due to the war in Ukraine (he lives and works in Kyiv, Ukraine). $800 is a lot of money, and that does not include high fees for checked bags.
[36] Mr. Frishberg had a single room, for a variety of reasons including (but not limited to) previous bad experiences with roommates which included one of said previous roommates physically attacking Mr. Frishberg. Some of the reasons also include his disability, and Mr. Frishberg requested, and was approved for a single room as an accommodation.

Respectfully Signed,

Daniel A. Frishberg. *Pro Se*.

/s/*Daniel A. Frishberg*

Santa Clara County, California

January, 8th 2024

*[Rest of the page is intentionally left blank.]*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court by using the online *pro se* portal. A copy of the foregoing was also immediately served via electronic email upon the Defendants.


Respectfully Signed,

Daniel A. Frishberg. *Pro Se*.

/s/*Daniel A. Frishberg*

Santa Clara County, California




*[Rest of the page is intentionally left blank.]*

**INJUNCTION EXHIBITS:**

**EXHIBIT 1**[37]:

"Dear Daniel,

This letter is to notify you of the outcome of the SCED-University Conduct Board Formal Hearing held on November 21, 2023.

### Allegations

Student Conduct and Ethical Development received a report regarding an alleged incident that occurred on Thursday, October 5, 2023 in Pinnacle Hall at 6:30 PM. Specifically, Resident Daniel Frishberg has openly and repeatedly violated the ESA agreement within Pinnacle Hall.

### Findings

Using the preponderance of the evidence standard and the information presented during the formal hearing, the findings for the violation(s) of the USF Student Code of Conduct in this case are as follows:

- Residence Hall Policies -- Responsible
  Failure to abide by any policy or regulation governing University Housing (e.g. rental agreement, Resident Handbook).

- Failure to Comply -- Responsible
  Failure to comply with an official request or directive of a University Official acting within the scope of their assigned duties. Failure to identify oneself or produce USF identification upon request by a University Official.

**Rationale**

Based on the available information, it is more likely than not that the violation of the Student Code of Conduct occurred. The Housing and Residence Education policy says animals should not leave the area. While this can be interpreted differently, there were several instances where it was explained that the cat must remain inside the charged student's room. According to the relevant information and the charged student's narrative, it was confirmed that the cat was found on several occasions outside the charged student's living space, which caused unease among fellow community residents. The Resident Assistant verbally warned the student to keep the cat inside the charged student's room, to which the student disagreed. Based on the conversation with the Resident Assistant, the student was then invited to meet with the Residence Life Coordinator for an Informational Meeting due to not complying with the Resident Assistant's words. For the above reasons, the University Conduct Board finds the student responsible for the listed charges.

---

[37] The letter was sent via a link only accessible by being logged into my student email account, so I copied and pasted it (in relevant part) as **Injunction Exhibit 1**. The Exhibits in the *Plaintiff's Complaint* (ECF Docket No. 1) are incorporated by reference in the exhibits section. The formatting of the letter may be a bit off, but I have done my best to restructure it as it was. The contents of it were not changed. All of the bolded lettering was not modified or added. (the "Sanctions Letter", sent November 21st, 2023, approximately two hours after the disciplinary hearing ended).

**Learning Outcomes**
The learning outcomes determined for this incident include:
1. The student will be able to acknowledge the housing policies while respecting the wishes of fellow housing community members.
2. The student will be able to improve conflict resolution skills.

**Sanctions**
The sanction(s) assigned to meet the determined learning outcomes include:

**Civility and Community Standards Workshop Part 1**
You must submit your $25 payment (cashier's check or money order) along with the completed section of the attached form to: University of South Florida, P.O. Box 864571, Orlando, FL 32886 or in one of the designated Cashier's Office Drop Boxes (see attached form). A money order can be obtained at Publix. If the form is not submitted, Student Conduct and Ethical Development will not receive credit for the payment and will not be able to consider the payment complete. After proof of payment is received, you will be contacted by Student Conduct and Ethical Development with information regarding available workshop dates and times. The payment must be submitted by December 15, 2023.

**Civility and Community Standards Workshop Part 2**
You must attend and complete the Civility and Community Standards Workshop facilitated by Student Conduct and Ethical Development by February 15, 2024. Once you have completed the Civility and Community Standards Workshop Part 1, you will be contacted by a Student Conduct and Ethical Development staff member to register for the first available workshop. You must attend the workshop on your assigned date, actively participate, and complete all workshop requirements successfully before this sanction will be considered complete.

**Civility and Community Standards Workshop Part 3**
You must submit one (1) of the reflection assignment options provided at the Civility and Community Standards Workshop seven (7) days after your assigned workshop date to Student Conduct and Ethical Development - studentconduct@usf.edu.

Failure to complete the sanction(s) by the date(s) indicated will result in an Administrative Hold being placed on your student record. This hold may affect your ability to register for courses, request academic transcripts, and receive a degree and diploma."

# EXHIBIT 2[38]:

University of South Florida
Department of Housing & Residential Education
Desk Operations Service Form

**For Resident:** Fill out completely

Name: Daniel Frishberg        Date: 11/27/23    Time: 1:00 AM/PM

ID #: ▮▮▮▮▮▮▮▮▮▮▮        Hall and Room: RPN ▮▮▮▮▮▮

Email Address: _____        Cell Phone: _____

Please Mark All That Apply:

_____ I am requesting to check-out a TEMPORARY ACCESS CARD to my building. I understand that if the access card is not returned within 72 hours following the date/time listed above, the access on the card will expire and replacements will be reordered. The replacement access card and key tag charge(s) as indicated below will be posted to my student account.

_____ I am requesting to check-out a TEMPORARY KEY to my room. I understand that if the key is not returned by 9 a.m. on the morning following the date/time listed above, a lock change will be submitted to the Department of Housing & Residential Education. The lock change and key tag charge(s) as indicated below will be posted to my student account.

✓ I am requesting an IMMEDIATE LOCK CHANGE. I understand that the charges as indicated below will be posted to my student account.

Please indicate reason:
___ Lost Key
✓ Other  Failure to return Key

Please indicate which door:
_____ Bedroom Door
_____ Front Door (*only applicable to Magnolia, Cypress, Kosove, and Holly Apartments, and Cypress Suites)

_____ I am requesting a DUPLICATE KEY REQUEST due to a DAMAGED KEY (bent, broken, etc.). I understand that the charges as indicated below will be posted to my student account.

*Damaged Key must be packaged and attached to form as evidence for the appropriate charges. Without the damaged key, the room will be lock changed and charged accordingly.

I understand the terms of this agreement and agree to pay the appropriate charges if applicable as indicated.

Student Signature _____

| Housing Services Fee Schedule | | |
|---|---|---|
| **Item** | **Charge** | **Explanation** |
| Replacement lock core | $50.00 per front & bedroom door | For each core that needs to be replaced |
| Replacement key | $15.00 per resident & backup key | For each key that needs to be replaced |
| | Please Note: Village lock changes include charges for five (5) keys | |
| Temporary access card | $25.00 per card | For each access card not returned by the due date |
| Damaged key | $6.00 per key | For each damaged key (bent, broken etc.) |
| Key Tag | $10.00 per tag | For each tag that needs to be replaced |
| Temporary Card Cover | $10.00 per cover | For each access card cover not returned by the due date |

**EMPLOYEE SECTION:**
Key Code/Serial#: (Front Door)_____ (Bedroom)_____ Card #: _____

Housing Services Employee Name (please print): _____

___ Returned Temporary Key or Card   Date: _____Time_____   Student Signature: _____

---

[38] University ID number, and number of the room redacted. Document otherwise unchanged.

Office Use Only:

____Adhoc email sent _____/____/____ date due back____/____/____ @_____ AM or PM

    Notes:

If Housing & Residential Education personnel is requesting charges, please indicate reason:

    ✔ Failure To Return Key

    _____ Failure To Return Temp Card

    _____ Repeated Temporary Key Requests

    _____ Other _____

✔ Lock change submitted __11_/_27_/_23_ to be posted to student account: U# ████████

____ Damaged key _____/____/____ to be posted to student account: U#_____

____ Replacement access card_____/____/____ to be posted to student account: U#_____

| Item | Charge | Quantity | Total | Notes |
|---|---|---|---|---|
| Replacement front core | $50.00 | 1 | 50 | |
| Replacement bedroom core | $50.00 | | | |
| Replacement front keys | $15.00 | 5 | 75 | |
| Replacement bedroom keys | $15.00 | | | |
| Temporary access card | $25.00 | | | |
| Damaged key | $6.00 | | | |
| Key tag | $10.00 | | | |
| Card Cover | $10.00 | | | |
| Total Billed: | | | 125 | Pinnacle |

Posted to Banner/Mercury _11_/_27_/_23_ by _Sheena_____ Term _Fall 2023_

Staff Signature Verifying Charge: _____

**EXHIBIT 3[39]:**

 These are the holds on your record. Registration holds prevent you from adding, dropping and withdrawing from classes. Transcript ho
resolve it.

### *Administrative Holds*

| Hold Type | From Date | To Date | Amount | Reason | Originator | Processes Affected |
|---|---|---|---|---|---|---|
| Balance Due | Dec 04, 2023 | Dec 31, 2099 | | View balance in OASIS | | Transcripts |
| SCED studentconduct@usf.edu | Jan 02, 2024 | Dec 31, 2099 | | Case # 2023087401 | | Registration |

### *You may register during the following times*

| From | Begin Time | To | End Time |
|---|---|---|---|
| Oct 30, 2023 | 01:00 pm | Mar 29, 2024 | 11:59 pm |

✅ Your Academic Standing is Good Academic Standing which permits registration.

✅ Your Student Status permits registration.

Your Class for registration purposes is Sophomore.

**EXHIBIT 4[40]:**



**EXHIBIT 4b[41].**

"Dear Daniel,

Thank you for submitting an ADA/Medical Accommodation request form.  Please provide documentation showing diagnosis, date of diagnosis, and reasonable accommodations requested from your medical care professional. This letter needs to be on your medical care professional's letterhead. You will need to provide this documentation to the housing assignments office no later than **5 business days** of the date the request was submitted in order for us to process your request. Failure to provide this documentation by the stated date will result in a denial of this request. You can scan/email all documentation to **housing@usf.edu.**"

**COMPLAINT EXHIBIT I**: (the "required questionnaire" in its entirety. For the avoidance of doubt, it has not been modified in any way:

---

[41] Email sent by USF Housing Department at 12:01am on Monday, May 29th, 2023. It was not modified in any way.

**EMOTIONAL SUPPORT ANIMAL**
**FAIR HOUSING ACT INTERACTIVE PROCESS QUESTIONNAIRE**

From: _____
        Student Name and University ID #

To: _____
        Healthcare Provider Name

<div style="border:1px solid red">

**The remainder of this form is to be filled out in its entirety by the health care professional responsible for the above patient.  The patient is not to fill out the below section.**

</div>

Please answer and return the following questionnaire to your patient. The questionnaire format is a guide and we would appreciate a response to every question. We need your complete medical opinion, so please feel free to include a more detailed narrative response to any and all questions if needed to answer more fully.  Thank you for your anticipated cooperation.

Name of Patient for whom you are completing this questionnaire: _____

Date Patient Started under your care: _____

1. Does this resident have a disability – i.e, a physical or mental impairment that substantially limits one or more major life activities?

                Yes         No

   a. If yes, please state the type of impairment and what major life activities are the subject of the disability (i.e., the current impact and functional limitations resulting from the disability).

      _____
      _____
      _____

2. Has an Emotional Support Animal been prescribed by you to this resident for treatment purposes?

                Yes         No

   a. If yes, does the person have a *disability-related need* for this animal? (In other words, does the animal provide some type of disability-related assistance or emotional support that alleviates or mitigates one of more symptoms or effects associated with the person's existing disability, to help the person use and enjoy University housing?)

                Yes         No

Updated: February 11, 2020

   b. If yes to 2(a), please describe the relation between the requested accommodation (the animal) and the disability (i.e., how the animal will alleviate or mitigate a symptom(s) or effect(s) associated with the person's disability or otherwise assist the resident in using and enjoying University housing?

      _____
      _____
      _____

3. Any additional information of Statement that may assist the University to understand the basis for your professional opinion regarding this accommodation request.

_____
_____
_____

By signing below, you as the Healthcare Provider are confirming that in prescribing this animal for the resident you have (1) considered the impact on the resident if the animal's behavior or reaction to university housing results in the removal or loss of the animal to the resident;  (2) discussed the risk to the animal and/or resident in cases of emergency or adverse reaction to the setting  and (3) determined with the resident understands, accepts and can manage those risks  Please note that the University Policy (link to Policy) outlines that in the event of emergency the animal is not the responsibility of the university and the animal will be considered abandoned if the resident is not present or able to care for the animal.

Please attach a professional business card or the medical professional completing this questionnaire

_____
Signature

_____
Title

_____
 Date

Printed Name and Address:

_____

_____

_____