UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL A. FRISHBERG,

       Plaintiff,

vs.                                        Case No.: 8:24-cv-22-TPB-NHA

UNIVERSITY OF SOUTH
FLORIDA BOARD OF TRUSTEES, et al.

       Defendants.

_____/

**<u>DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR
AN INJUNCTION AND DEFENDANTS' MOTION TO DISSOLVE</u>**[1]

       Defendants hereby respond in opposition to "Plaintiff's Emergency Motion for

[an] Injunction, or in the Alternative, a Temporary Injunction/Restraining Order"

(Dkt. No. 4; Injunction Motion) and move to dissolve the temporary restraining order

(Dkt. No. 9; Order).  Plaintiff's Motion must be denied and the Order dissolved for the

following reasons:   (1) Plaintiff's claims under the FHA are barred by sovereign

immunity and the Eleventh Amendment to the United States Constitution;[2] (2) the

relief sought related to his registration is moot and was moot at the time of the Court's

---

[1] Defendants file this response pursuant to the Court's order dated January 9, 2024.  Plaintiff has not yet served process on either Defendant, and Defendants reserve the right to assert all arguments under Rule 12 once service is effectuated.

[2] Plaintiff's Injunction Motion appears to be based solely on the Fair Housing Act (FHA).  However, as addressed below, all of Plaintiff's claims fail as a matter of law.  All of the state claims are barred by sovereign immunity, and there is no cognizable claim under the ADA, which is the only other federal claim asserted.

Order;[3] (3) Plaintiff cannot establish subject-matter jurisdiction under Article III because he has made no showing imminent, future injury; and (4) Plaintiff cannot meet the burden to establish the elements of an injunction, including substantial likelihood of success, irreparable harm, or that the injunction serves the public's interest. Accordingly, Plaintiff's Injunction Motion must be denied, and the Court's Order entering a limited temporary restraining order must be dissolved. Defendants' arguments are further set forth in the accompanying memorandum of law.

<u>MEMORANDUM OF LAW</u>

## I.    Statement of the Facts

### A.    USF's Policy Regarding Assistance Animals and ESA Agreement

USF maintains a policy regarding animals on campus. (<u>See</u> Declaration of Andrew Johnson ("Johnson Decl."), Ex. 1 at 1). The policy states that "[a]ll animals brought on to any USF campus property must be under physical restraint. The animals must be under the complete control of and physically restrained by the owner/responsible party who is also responsible for ensuring the animal is safe and healthy." (<u>Id.</u> at 1). The policy states that "USF will follow all federal and state laws with regard to accommodations." (<u>Id.</u> at 1). To that end, the policy provides limited exceptions for certain animals, including Assistance Animals:

> Assistance Animals are permitted on campus with approval from the Office of Housing and Residential Education and must be contained within the private residential area (room, suite, and/or apartment) of at all times except when transported outside the private residential area in an animal carrier or

---

[3] Plaintiff previously registered for the Spring term on November 4, 2023, prior to the conduct decision, and the decision had no impact on his registration. (Johnson Decl., ¶ 3).

> controlled by leash or harness. Assistance Animals are not permitted in public spaces, classrooms, or work places unless they also meet the definition of Service Animal as provided by law and as permitted as part of an accommodation as provided in this Policy.

(<u>Id.</u> at 4).  The policy further states that, when an animal is permitted, it must be "under the complete control of and physically restrained by the Responsible Party." (<u>Id.</u>).  The animal is "not permitted to run at-large on any streets, unimproved lots, or premises within the boundaries of USF properties." (<u>Id.</u> at 3).  The policy explains that, "[i]f an animal disrupts the University educational process, administrates processes, or other campus function, the Responsible Party must remove the animal immediately." (<u>Id.</u> at 4).  Furthermore, the policy cautions that, "[s]tudents in violation of this policy may be referred to Student Conduct and Ethical Development [(SCED)] for disciplinary action." (<u>Id.</u> at 7).

On August 18, 2023, Frishberg signed and agreed to the terms of USF's Assistance Animal Housing Protocol & Agreement. (<u>See</u> Johnson Decl., Ex. 2 "ESA Agreement").  Specifically, the Agreement provided that the Assistance Animal must be controlled by him and must be contained within the residential area at all times, "except when transported outside the private residential area in an animal carrier or controlled by leash or harness." (<u>Id.</u> at 1, subsection b).  Further, "Assistance Animals cannot roam freely in common areas." (<u>Id.</u>).  In addition, Frishberg agreed that he "is responsible for assuring that the approved Assistance Animal does not unduly interfere with the routine activities of the residence or cause difficulties for students who reside there," and that "[s]ensitivity to residents with allergies and to those who fear animals

is important to ensure the peace of the residential community." (<u>Id.</u> at 2, subsection l). Frishberg agreed that he must ensure that the Assistance Animal does not disrupt others or their personal belongings, display any repeated behaviors or noises that are disruptive to others, or "[l]eave the owner's room except when accompanied by the owner." (<u>Id.</u> at 2, subsection m).  The Agreement explained that "violation of the above rules or University Policy may result in immediate removal of the Assistance Animal from USF System premises and the owner being prohibited from continuing to keep an Assistance Animal on University property." (<u>Id.</u> at 3, subsection t).

**B.    Frishberg Repeatedly Violates the ESA Agreement and Policy 6-033**

On Thursday, October 5, 2023, SCED received a report detailing Frishberg's open and repeated violations of the ESA Agreement and USF Policy.  (<u>See</u> Johnson Decl., Ex. 3).  Specifically, the report explained that, despite reminders of the policy, Frishberg had allowed his cat to be unrestrained and unaccompanied in the common lounge area on the 5th floor of the dorm, the floor where Frishberg resided.  (<u>Id.</u> at 1). Prior to this report, a number of students complained to the resident advisor (RA) about the cat entering the common area and climbing on the counters.  (<u>See</u> Johnson Decl., Exs. 4 and 5).  The RA repeatedly warned Frishberg that he was violating the Agreement and USF policy.  (<u>Id.</u>).

Despite the complaints and warnings, Frishberg continued to allow his cat to enter the common area unrestrained and unaccompanied, which resulted in an argument over text message between Frishberg and a number of other residents on the

4

floor on October 5, 2023.[4] (Johnson Decl., Ex. 6; Ex. C).   Therein, in response to residents complaining that his cat is loose in the common area, Frishberg asserts that he has to let the cat out, not so that he can use the common area, but to keep the cat happy.[5] (Id.).   Specifically, he asserted:

- "Taking a cat outside is basically torture for it." (000005)

- "He gets freaked out when one person walks quickly past him." (000005)

- "Imagine how much of a sensory overload it is for him to step outside into a ton of noise." (000005)

- "He's gotta come out sometimes, otherwise it leads to issues.  I don't want to chase him down the hallway every time I open the door."[6] (000007)

- "Bruh if he wants to pop out once every two days so he stops trying to escape he will." (000002)

- "Shadow needs to be let out sometimes, or he isn't happy.  It's that simple." (000012)

- "^ if I don't let him out every once in a while, he tries to escape." (Ex. C at 1).

- "He was screaming by the door today so I let him out."  (Ex. C at 1).

- In response to a student's suggestion that Plaintiff take the cat outside, Plaintiff responded:  "Not really possible.  I've tried that and he freaks

---

[4] The text message chain spanned over 200 messages.  Screenshots of a portion of the messages are attached as Exhibit 6 to the Declaration of Andrew Johnson and Exhibit C.

[5] For example, on September 14, 2023, when a complaint was brought to Frishberg about "shadow being out," Frishberg responded: "I won't be so 'touchy' with him trying to socialize him."  (Johnson Decl., Ex. 4).  Thus, Frishberg admits that the cat was out, not to allow Frishberg to use the common area, but to socialize the cat.  (Id.).  A week later, on September 20, 2023, the RA again reminded Plaintiff of the policy prohibiting him from letting his cat loose to which Plaintiff responded: "My ESA is never outside of my room."  (Johnson Decl., Ex. 5).  The RA warned him that, if he lets his cat loose, it can lead to documentation.  (Id.).

[6] The ESA Agreement also required, "When an Assistance Animal is left in the owner's room without its owner, it must be crated or otherwise appropriately contained."  (Johnson Decl., Ex. 2).  Plaintiff's statement further admits that he was violating this provision of the agreement.

out."  He also stated:  "Yea not happening.  He's gonna run away.  Also, cats hate change. And new places." (Ex. C at 2).

(Id.).  Although the residents also reminded him that he was violating USF's rules, Frishberg maintained that he did not care and would not abide by the policy:

- "Sorry if I'm being too upfront, but I have certain things I'm not compromising.  He will come out some times." (000004)

- "Do you want me to lie and tell you I'll do whatever [RA] says?  If so, I can." (000006)

- In commenting about USF policy, Frishberg stated:  "Yea, I know.  And it's a stupid one.  He's going to come out – it's a matter of when.  If you don't want him out, we can work out times where he will come out. Otherwise I'll switch back to what I used to do, and just let him out late in the evenings." (000007)

- "Yea being honest, I don't care. He's coming out." (000008)

- In response to comments that Plaintiff may be removed from housing for violating policy, Plaintiff responded:  "Ehh not really a risk. They'd need to evict me to do that, and the school year will end before then" (000008)

- "Yea and? The school has a lot of rules. Most of them aren't followed or enforced." (000009)

- "And? They can't do anything without a court order.  Including limiting my access to the room." (000010)

- I "will let him out in the evenings.  It's that simple." (000011)

- In response to a student's statement that Frishberg is violating policy, Frishberg responded: "Yea idc.  He's gonna be out there.  I'm going to be polite and try to not do it while you're there." (000012)

(Id.).  Frishberg refused to abide by the rules, stated that the cat will be let out, and admitted that he had been letting the cat out since last year and normally let the cat our late in the evenings:

- "He was out last year and no one had an issue with it" (000006)

6

- "He's going to come out— it's a matter of when. If you don't want him out, we can work out times where he will come out. Otherwise I'll switch back to what I used to do, and just let him out late in the evenings." (000007)

- "If they don't like it, it's a them problem." (000012)

(Id.).

Frishberg repeatedly asserted to USF and others that he would not follow the rules. (Id.; see also Johnson Decl., Ex. 4, 16). Given Frishberg's complete disregard for USF's policies, the RA informed Frishberg that she would be submitting an incident report. (See Johnson Decl., Ex. 7). Frishberg responded that he "will let [the cat] out no matter what" because the cat needs to be out. (Id.). He also asserted: "I don't back down, no matter what." (Id.). Later that night, a resident complained that the cat was again on the counter. (See Johnson Decl., Ex. 8). The same resident complained multiple times over the next week that Frishberg let his cat loose in the common area. (Id.).

## C.   SCED Formally Charges Frishberg with Conduct Violations

On October 13, 2023, SCED formally charged Frishberg with violations of the USF Student Code of Conduct[7] provisions on Failure to Comply and Residence Hall Policies. (See Johnson Decl., Exs. 9-10). An informational meeting was held on

---

[7] "The Student Code of Conduct describes standards of behaviors that are counteractive to the goals and mission of the University and the process for how the University will hold students and student organizations accountable to these standards of behavior." (Johnson Decl., Ex. 10). The policy identifies the standards of conduct; explains the student conduct process, including the right to appeal; and the range of sanctions that can be imposed with an educational workshop on the low end and including up to expulsion. (Id.). Failure to comply with USF's policies can also result in the cancellation of the housing agreement. (Johnson Decl., Ex. 16, 18).

October 20, 2023.  (Id. at 1; Ex. 11). In this meeting, the charges and allegations were explained, and Frishberg was provided the opportunity to review the available information supporting the charges of violations. (Id. at 3).   Additionally, he was informed of his rights and resolution options.  (Id.).

Under the student conduct process, Frishberg could elect an administrative hearing before a hearing officer or a formal hearing before a UCB conduct board, which was compromised of two trained students and a faculty member.  (Johnson Decl., Ex. 10 at 17-18).  Frishberg elected a UCB hearing on October 20, 2023. (See Johnson Decl., Ex. 11 at 3).  However, he also stated, "I DO NOT CONSENT to any decision by the conduct board, nor do I agree to be bound by it." (Johnson Decl., Ex. 12).

The following day, October 21, 2023, SCED received another report that Frishberg was once again allowing his cat to roam unrestrained in the common area. (See Johnson Decl., Ex. 13).  When an RA instructed Frishberg to comply with USF policy, he said that "he did not care, that [RA] could not do anything, and/or that Resident Frishberg could not get punished." (Id.).  During this interaction, "Frishberg shared that the main reason for letting Shadow out of his room was because Shadow constantly whines whenever Resident Frishberg opens the door or whines in the middle of the night." (Id. at 2).  He said that it was necessary for him to let the cat loose to be able to keep the cat from whining.  (Id.).  He also said that the cat could not be taken outside because the cat does not like it.  (Id.).

On November 2, 2023, SCED informed Frishberg that his formal hearing was

8

scheduled for November 21, 2023.  (See Johnson Decl., Ex. 14).[8]  On November 4, 2023, Frishberg registered for classes with USF for the 2024 spring semester.  (See Johnson Decl., ¶ 3).

**D.    USF Revokes Frishberg's Waiver Because of His Repeated Violations**

On November 9, 2023, Johnson informed Frishberg that his waiver to have an animal on-campus was being rescinded because of his violations of the ESA Agreement, specifically, by allowing his cat to roam freely in the residence hall, including the common areas.  (See Johnson Decl., Ex. 16).  Johnson provided photos showing the cat loose and unaccompanied.  (See Johnson Decl., Ex. 17).  He informed Frishberg that he must remove the cat by 12:00 p.m. on November 13, 2023, which he extended to 8:00 p.m.  (See Johnson Decl., Ex. 16, 18).  Johnson warned that failure to comply with this directive would result in further action, including a referral to SCED and/or the cancellation of his Student Housing Agreement.  (Id.).

On November 9 and 13, 2023, Frishberg exchanged emails with Johnson, claiming that he misunderstood the Agreement and did not violate it.  (See Johnson Decl., Ex. 18).  Johnson explained that the Agreement was reviewed with Frishberg when he signed it, and Frishberg acknowledged that he understood the terms and conditions.  (Id.).  Johnson further explained that the terms clearly state that

---

[8] Frishberg was informed of the procedure for the hearing and his rights, including that the right to review the evidence to be used at the hearing; his right to submit records, exhibits, and written statements for consideration; as well as his ability to present and inquire of the witnesses.  (See Johnson Decl., Ex. 14).  A few days later, SCED provided Frishberg with a link to access the relevant information that would be presented at the formal hearing.  (See Johnson Decl., Ex. 15).

"Assistance Animals cannot roam freely in common areas, which leave no room for misinterpretation." (Id.). Frishberg argued that his cat never roamed freely within the common area, "He mostly was sitting around, and occasionally would peak around a corner/look down the hall with specific intent." (Id.). Johnson warned Frishberg that if the cat was not removed, then he would be forced to issue an administrative dismissal from USF Housing. (Id.). Frishberg asserted that USF's only remedy would be a breach of contract action. (Johnson Decl., Ex. 19). He also stated that "if you go looking for a [legal] fight, you will get a [legal] fight." (Id.).

On November 14, 2023, Frishberg informed Johnson that he unsuccessfully attempted to relocate the cat, and that "[the cat] will be staying here." (See Johnson Decl., Ex. 19). In response, Johnson extended the deadline (a second time) for Frishberg to remove the cat to November 17, 2023, by 2:00 PM. (Id.). Frishberg again failed to remove the cat, contending "he and I will remain here" and he has kept his cat contained even though the cat "has spent 3+ hours a day yelling loudly." (Id.).

On November 17, 2023, after confirming that Frishberg failed to comply with the directive to remove the cat, Johnson informed Frishberg that USF would be administratively cancelling Frishberg's Student Housing Agreement effective Monday, November 27, 2023, at 12:00 p.m. and he needed to checkout by that date. (See Johnson Decl., Ex. 20 at 3–4). Johnson explained to Frishberg that his rent charges would cease as of November 27, 2023, and "a credit would be issued for the balance of the fall term." (Id. at 4). Frishberg responded: "I, and my cat will remain in the dorms until the contract expires (so at the end of the spring term)." (Id. at 1).

**E.    USF Finds Frishberg Responsible for Violations of the Student Code**

On November 21, 2023, SCED held Frishberg's formal hearing.  (See Johnson Decl., Ex. 21).  Based on the information provided at the hearing, the UCB determined that Frishberg was responsible for the violations of USF policy.  (Id.).  As a sanction, the UCB required that Frishberg complete a one-hour civility workshop and write a reflection assignment.  (Id.).   He was required to pay $25 for the workshop by December 15, 2023.  (Id.).   Frishberg was informed that failure to complete the sanction will result in an administrative hold, which may impact his future ability to register for courses.  (Id.).   However, the sanctions did not cancel any current registration already completed.   (Johnson Decl., ¶ 3).[9] Frishberg asserted that "regardless of what [the] board decided, I am not 'responsible' until a court says otherwise." (Johnson Decl., Ex. 22).   He also stated, "I will not be attending any of the irrelevant purportedly assigned classes without a court order."  (Id.).

**F.    Frishberg Declines USF's Offer of Emergency Housing**

On November 27, 2023, after USF had administratively canceled Frishberg's housing agreement, Frishberg failed to check out of his room.  (See Johnson Decl., Ex. 23 at 3).  Johnson notified Frishberg that, because he failed to check out, USF removed ID card access to the residential hall, rekeyed his former room at his expense, and credited him for rent from November 27–December 8, 2023.  (Id.).   Johnson

---

[9] Frishberg also was informed that he had five business days to appeal the determination of responsibility and sanctions.  (See Johnson Decl., Ex. 21 at 2–3).  He did not submit an appeal.  (See Johnson Decl., ¶ 4).

informed Frishberg that he must contact USF Police to remove his personal property from the room and complete his check-out by November 29, 2023.  (Id.).

Frishberg responded that he and the cat would be returning to campus on November 28 and that USF could not deny him access without a court order.  (Id. at 2-3).  Johnson explained that Frishberg would need to contact the USF Police to access his room to retrieve his belongings.  (Id. at 1).  Frishberg responded that he would not be removing his property.  (Johnson Decl., Ex. 24 at 2).

On November 28, 2023, USF offered Frishberg emergency housing so he could complete the term. (Id. at 2-3).  Frishberg declined USF's offer for emergency housing. (Id. at 2).  Instead, he stated, "I want access to my legally rented room, and expect to obtain it via the courts."  (Id.).  After declining USF's housing offer, Frishberg filed a complaint and emergency motion for injunction in state court under Chapter 83, Florida's landlord-tenant law.[10]  (See Exhibit B).  On December 4, 2023, USF extended Frishberg's deadline to retrieve his personal belonging to January 8, 2024, to allow him time to secure housing for the Spring term.  (See Johnson Decl., Ex. 25).

### G.   Frishberg Refuses to Complete Workshop Sanction

On December 12, 2023, SCED sent a reminder to Frishberg to complete payment for the one-hour workshop to satisfy the sanctions requirement.  (See Johnson Decl., Ex. 26 at 2).  Frishberg responded, "I will not be doing the workshop,

---

[10] Chapter 83 of the Florida Statutes governs issues related to the Landlord/Tenant relationship. Because Frishberg's residency was incidental to the provision of educational services, Chapter 83 is inapplicable to him.  Fla. Stat. § 83.42(1).

or any other 'sanctions' that I was assigned due to letting my ESA out of my room."
(Id.).  USF reminded Frishberg that failure to complete sanctions would result in a
hold being placed on his account.  (Id. at 1).  On December 13, 2023, after the deadline
to file an appeal, Frishberg sent an email to SCED seeking reconsideration of the
conduct decision.  (See Johnson Decl., Ex. 27 at 2).  SCED explained that the window
to appeal the decision had passed, and again encouraged him to complete the assigned
sanction to prevent the hold from being placed on his account.  (Id. at 1).

Since December 13, 2023, Frishberg has pursued his claims against USF in state
court, and filed this duplicative action in federal court on January 2, 2024.  Because
Frishberg refused to complete the assigned sanctions, the conduct hold was entered on
January 2, 2024, as Frishberg was previously warned.  (See Johnson Decl., ¶ 3).
Plaintiff did not complain of this hold until January 8, 2024, at 11:12 a.m.  (See Exhibit
A).  At that time, Frishberg sent the undersigned a copy of this Injunction Motion
whereby he represented that he was unable to register for classes due to the conduct
hold.  (Id.).  Plaintiff also requested that USF continue to hold his property until
January 31, 2024.  (Id.).  A little more than hour later, at 12:29 p.m., the undersigned
responded to Plaintiff granting him a third request to extend the time to hold his
property and confirming that the conduct hold on his ability to register for classes had
been lifted.  (Id.).  This email was provided *before* the emergency motion was docketed
by the clerk in this Court.  (Id.).  Yet, Plaintiff made no attempt to inform the Court
or correct the representations made in his Injunction Motion.

Moreover, upon review of Plaintiff's records with the USF Registrar, it was

discovered that Plaintiff actually registered for classes for the Spring 2024 term on *November 4, 2023*.  (Johnson Decl., ¶ 3).  Upon receipt of this information, the undersigned counsel brought this to Frishberg's attention and requested that he correct the representations made to the Court, which he refused to do.

## II.    Legal Argument

### A.    Defendants Are Entitled to Sovereign Immunity

The Eleventh Amendment prohibits federal courts from exercising subject matter jurisdiction in suits brought against a state by a citizen of that state.  Pan–Am Tobacco Corp. v. Dep't of Corr., 471 So.2d 4, 5 (Fla.1984).  The Eleventh Amendment extends to state agencies and other arms of the state.  Univ. of S. Fla. Bd. of Trustees v. CoMentis, Inc., 861 F.3d 1234, 1235 (11th Cir. 2017).  State agencies are immune from suit under the Eleventh Amendment unless their immunity is either waived by the state or abrogated by Congress.  Gamble v. Fla. Dept. of Health and Rehabilitative Services, 779 F.2d 1509, 1511 (11th Cir.1986).  The States or their agencies "retain their immunity against *all* suits in federal court."  Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).  Actions for injunctive relief against a state or its instrumentality are also barred by the Eleventh Amendment.  Alabama v. Pugh, 438 U.S. 781 (1978).

Florida defines USF to be a part of the state government.  See Fla. Stat. § 1000.21(6)(j).  Specifically, the state of Florida has declared that the "boards of trustees [of state universities] are a part of the executive branch of state government."  Id. § 1001.71(3).  The state therefore clearly defines the USF Board to be a part of its

14

government.  See CoMentis, Inc., 861 F.3d at 1235.  As it is part of the state, USF is entitled to Eleventh Amendment immunity.[11]

Here, Plaintiff seeks injunctive relief pursuant to the federal Fair Housing Act ("FHA").  (See Injunction Motion at 7–12).  Congress has not abrogated Eleventh Amendment immunity for claims brought under the FHA.  See McCardell v. United States HUD, 794 F.3d 510, 522 (5th Cir. 2015) ("We hold that Congress did not make clear an intent to abrogate States' Eleventh Amendment sovereign immunity from suits brought under the Fair Housing Act . . . .");  Rattner v. 1809 Brickell, LP, No. 1:21-cv-23426-KMM, 2022 U.S. Dist. LEXIS 240669, at *21 (S.D. Fla. Apr. 18, 2022) ("Nor does the Fair Housing Act, 42 U.S.C. §§ 3601-3631, contain a waiver of sovereign immunity.");  Hunt v. Ga. Dep't of Cmty. Affairs, No. 1:09-CV-3137-RWS, 2010 U.S. Dist. LEXIS 136444, at *5-8 (N.D. Ga. Dec. 23, 2010).[12]  Because Florida has not waived its Eleventh Amendment immunity for Plaintiff's FHA claims, this Court lacks jurisdiction to issue an injunction.

**B.     The Temporary Restraining Order Must Be Dissolved Because Plaintiff Registered for Spring Term Classes on November 4, 2023**

---

[11] Defendant HRSE also is entitled to Eleventh Amendment immunity as its sole role with respect to this matter is that it is the owner of the building.  Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 208 F.3d 1308, 1311 (11th Cir. 2000) ("It is well established that Eleventh Amendment immunity encompasses not only cases in which the State itself is named as a defendant, but also certain actions against state agents and state instrumentalities.").  Plaintiff also has not alleged or provided any evidence that HRSE had any role in or made any of the decisions at issue.  Thus, there is no basis for a claim against Defendant HRSE.

[12] Although Plaintiff does not pursue injunctive relief pursuant to his state law "contract" claims against Defendants, those are also barred by sovereign immunity.  See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1287–88 (11th Cir. 2003).  The only other claim arguably made in the Complaint is a claim under Title II of the ADA.  However, as set forth below, there is no cognizable claim under the ADA for refusal to accommodate an emotional support animal.  And thus, all of Plaintiff's claims fail as a matter of law.

In accordance with Rule 65(b)(4) and the Court's Order (Dkt. No. 9), Defendants seek to dissolve the limited temporary restraining order entered in this case.  For the same reasons that Plaintiff's claim for injunctive relief fails, the Court should dissolve the temporary restraining order, including the Court's lack of subject-matter jurisdiction over this action.

Moreover, as set forth above, Plaintiff failed to accurately represent the facts in this case.  Notably, Plaintiff represented that he was unable to register for classes (see Order at 3-5), but he was, in fact, already registered for classes (Johnson Decl., ¶ 3).  Prior to the docketing of his motion, and approximately 90 minutes after he first raised the issue, the undersigned counsel also informed Frishberg that the conduct hold had been lifted.  (See Exhibit A).  While Frishberg failed to inform the Court, it nonetheless establishes that the relief requested was moot and Plaintiff could not establish "the irreparable nature of the threatened injury"; "clearly show that immediate and irreparable injury, loss, or damage will result to the movant"; or establish the "harm that might result absent a restraining order," which are mandatory prerequisites for the order.  Local Rule 6.01(b); Rule 65(b)(1).  Therefore, the temporary restraining order must be dissolved.

### C.     This Court Lacks Subject Matter Jurisdiction to Enter Injunction

The irreducible constitutional minimum of Article III standing consists of three elements, as the plaintiff must have: (1) an "injury in fact" that is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) that

the injury "will be redressed by a favorable decision." <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561 (1992). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 338 (2016), <u>as revised</u> (May 24, 2016).

Thus, to establish standing, Frishberg must show: "(1) he is likely to suffer a future injury; (2) he is likely to suffer the injury at the hands of the defendant; and (3) the relief he seeks will likely prevent the injury from occurring." <u>Navellier v. Fla.</u>, 672 F. App'x 925, 928 (11th Cir. 2016). Indeed, "because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate – as opposed to a merely conjectural or hypothetical – threat of *future* injury." <u>Shotz v. Cates</u>, 256 F.3d 1077, 1081 (11th Cir. 2001) (recognizing that, in an ADA case, to seek injunctive relief, the plaintiff must show he will suffer future discrimination) (emphasis added); <u>see also</u> <u>United States v. Oregon State Med. Soc.</u>, 343 U.S. 326, 333 (1952); <u>Koziara</u>, 392 F.3d at 1305. "Injury in the past, however, does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment." <u>Shotz</u>, 256 F.3d at 1082; <u>see also</u> <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102-03, 105, 108, 111 (1982); <u>Alabama v. U.S. Army Corps of Eng'rs.</u>, 424 F.3d 1117, 1133 (11th Cir. 2005); <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1337 (11th Cir. 1994). Further, even when past injuries are irremediable, injunctive relief is not available. <u>Alabama</u>, 424 F.3d at 1133. Plaintiff also cannot seek an injunction that simply compels Defendants to obey the law. <u>See</u> <u>Elend v. Basham</u>, 471 F.3d 1199, 1209 (11th Cir. 2006).

Here, Plaintiff only complains about the actions taken by USF in the past. Even if Plaintiff could show that these past actions resulted in an irremediable injury, which he has not done, that is not a basis for an injunction. See Alabama, 424 F.3d at 1133. Plaintiff has not marshalled any evidence to show or even sufficiently alleged that Defendant will violate the law in the future—or that such action is imminent or real. Instead, he is merely seeking injunctive relief to purportedly remedy *past* acts. (Injunction Motion at 16–17), which the Eleventh Circuit clearly has held does not provide jurisdiction for this Court to act. Alabama, 424 F.3d at 1133.

### D.   Plaintiff Cannot State a Claim for a Preliminary Injunction

To obtain a preliminary injunction, the movant must show that: (1) he has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000). A preliminary injunction is an extraordinary remedy not to be granted unless the movant clearly carries his burden as to the four prerequisites. United States v. Jefferson Cty., 720 F.2d 1511, 1519 (11th Cir. 1983).

### 1.   Plaintiff Failed to Show a Substantial Likelihood of Irreparable Injury

Plaintiff has failed to demonstrate that he will be irreparably harmed absent an injunction. Because a showing of irreparable injury is "the sine qua non of injunctive relief," Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990), the absence of a substantial likelihood of

18

irreparable injury, standing alone, makes preliminary injunctive relief improper, <u>Siegel v. LePore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000).  To qualify as irreparable, the injury or harm must be actual and imminent, not remote or speculative.  <u>City of Jacksonville</u>, 896 F.2d at 1285.  Further, an injury is "irreparable" only if it cannot be undone through monetary remedies.  <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1974).  Moreover, it is well settled that avoidable harm is not irreparable harm.  <u>See</u> <u>Scroos LLC v. AG</u>, No. 6:20-cv-689-Orl-78LRH, 2020 U.S. Dist. LEXIS 171747, at *7 (M.D. Fla. Aug. 27, 2020) ("Self-inflicted wounds do not constitute irreparable harm.").  If Plaintiff can mitigate the threatened "irreparable harm," he cannot refuse to do so and yet still claim that he would be irreparably injured absent an injunction.  <u>See, e.g.</u> <u>Salt Lake Trib. Publ'g Co. v. AT & T Corp.</u>, 320 F.3d 1081, 1106 (10th Cir. 2003); <u>Air Transp. Int'l LLC v. Aerolease Fin. Group, Inc.</u>, 993 F. Supp. 118, 123 (D. Conn. 1998) ("Even if [the plaintiff] could demonstrate that it would be irreparably harmed, it must also show that it could not prevent such harm."); <u>see also</u> <u>Am. Brands, Inc. v. Playgirl, Inc.</u>, 498 F.2d 947, 950 (2d Cir. 1974) (affirming district court's denial of preliminary injunction to plaintiff seeking to compel defendant to publish plaintiff's ad in its magazine because plaintiff failed to show other, similar advertising space was unavailable).

Here, Plaintiff argues that USF has excluded him from on-campus housing, which he claims is causing him irreparable harm because he is unable to attend university classes in-person due to lack of any housing near campus.  (Injunction Motion at 4, 6).  He also argues that he will suffer irreparable harm in the form of "missed educational content and time" if USF is allowed to prevent him from enrolling

in and attending classes. (Injunction Motion at 14). As an initial matter, USF did not exclude Plaintiff from obtaining housing in the area and did not prevent him from registering for classes. USF even offered Plaintiff emergency housing to complete the fall term and give him additional time to obtain alternative housing, but he declined the offer. (See Johnson Decl., Ex. 24 at 4). Additionally, Plaintiff registered for classes with USF for the 2024 spring semester on November 4, 2023, and remained registered for those classes on January 8, 2024. (See Johnson Decl., ¶ 3). The University did not take any action to cancel this registration. (Id.). The conduct hold, which was entered on January 2, 2024, and lifted on January 8, 2024, did not impact Plaintiff's registration for these classes. (Id.). Further, the conduct hold was entered only because Plaintiff refused to complete a one-hour workshop. (See Johnson Decl., Ex. 21). Plaintiff could have appealed the determination of responsibility and sanctions (see Johnson Decl., Ex. 21 at 2–3), but he failed to do so. (See Johnson Decl., ¶ 4). Plaintiff has not provided any evidence that housing is unavailable, or that he even searched for alternative housing. A simple Google search reveals several available housing vacancies near the USF campus. All of Plaintiff's alleged harms could have been avoided by him.

Additionally, Plaintiff cannot show that monetary damages are inadequate to remedy any alleged harm. As Plaintiff was registered for classes with USF at the time he filed his Injunction Motion, at bottom, the only injury identified is a financial one— the difference in cost between his USF housing and alternative housing in Tampa. Plaintiff's voluntary decision not to search for alternative housing on his own, does

not establish irreparable harm.  See, e.g., Bellin v. La Pensee Condo. Ass'n, No. 05-80071-CIV-MARRA/SELTZER, 2005 U.S. Dist. LEXIS 59287, at *23-24 (S.D. Fla. Oct. 12, 2005) (rejecting plaintiff's assertion "that she will be irreparably harmed if [the association] is permitted to foreclose on her condominium [because] Plaintiff can take a simple step to avoid such an outcome: she can pay the assessments levied by [the association]").  Plaintiff also claims he will suffer irreparable harm if forced to travel to USF "and pick up his stuff," as flights are expensive.  (Injunction Motion at 16). Obviously, the fact that Plaintiff attaches a dollar amount to the harm (Injunction Motion at 17) proves that it is not irreparable as a matter of law, even if he cannot afford it.  Sampson, 415 U.S. at 90.   Plaintiff has not and cannot identify any future injury that could not be remedied by monetary relief, which is fatal to his claim.

### 2. An Injunction Does Not Serve the Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).  Here, Plaintiff's disregard and disdain for USF, its rules, and the effect his behavior had on his peers shows that the public interest would be disserved by an injunction.

Plaintiff repeatedly asserted that he would not follow the rules of the University, even though he expressly agreed to do so when seeking University housing.  He taunted other students when they asked him to comply.  And he repeatedly asserted that he could not be required to follow the University's rules without a court order. This behavior is directly contrary to fundamental requirements of community living at

any university, including USF.  Given Plaintiff's behavior, it certainly would not serve the public's interest to re-house him when he expressly refuses to recognize the authority of USF or to abide by the rules that all other members of the community must honor.  Thus, an injunction, based on these circumstances, does not serve the interests of the public, even if Plaintiff could establish a lawful basis for his claims or irreparable harm.  This evidence also establishes that the balance of harm favors USF.

### 3.  Plaintiff Failed to Show a Substantial Likelihood of Success on the Merits

Although the Court need not consider the merits of Plaintiff's FHA claims because his claim for a preliminary injunction fails for all of the above reasons, even if considered, Plaintiff failed to show a substantial likelihood of success on the merits of his FHA claims.[13]  His FHA claims appear to be attempting to state a claim for failure to accommodate.  To prevail on a reasonable accommodation claim, a plaintiff must

---

[13] To the extent that Plaintiff's Complaint could be interpreted to include a claim under Title II of the ADA, it also fails to state a claim as a matter of law.  The regulations interpreting Title II of the ADA specifically provide protections for the use of service animals and "exclude emotional support animals from coverage under the ADA."  Maubach v. City of Fairfax, No. 1:17-cv-921, 2018 U.S. Dist. LEXIS 73815, at *17 n.6 (E.D. Va. Apr. 30, 2018); see also 28 C.F.R. § 36.104.  The regulations expressly exclude emotional support animals.  Id.  Further, in discussing the modification in policies, practices, or procedures that must be made by public entities under Title II of the ADA, the regulation excludes emotional support animals.  28 C.F.R. § 36.302.  Thus, several courts have recognized that there is no protection or claim under Title II of the ADA related to the denial of an emotional support animal.  See Sykes v. Cook Cty. Circuit Court Prob. Div., 837 F.3d 736, 740 (7th Cir. 2016) ("'Emotional support animals' are not considered service animals which fall under Title II's mandate."); Toma v. 38th Dist. Court, No. 18-CV-11066, 2019 U.S. Dist. LEXIS 72148, at *4 (E.D. Mich. Apr. 29, 2019) (holding that "plaintiff's claim that defendant failed to reasonably accommodate his disability by prohibiting him from bringing his emotional support dog into court shall be dismissed"); Cohen v. Howard, Civil Action No. 23-cv-02104-SBP, 2023 U.S. Dist. LEXIS 204750, at *4-5 (D. Colo. Nov. 9, 2023); Baird v. 1600 Church Rd. Condo. Ass'n, No. 17-4792, 2017 U.S. Dist. LEXIS 191533, at *7 (E.D. Pa. Nov. 17, 2017) (finding that "the ADA does not provide protection for emotional therapy dogs as accommodations for disabilities").  Here, it is undisputed that Plaintiff's cat is not a service animal.  See 28 C.F.R. § 35.104; (Complaint at 3).  As a result, any claim under the ADA fails as a matter of law and cannot support Plaintiff's Motion.

establish that: (1) he is disabled or handicapped within the meaning of the FHA; (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling; and (4) the defendants refused to make the requested accommodation. Schwarz v. City of Treasure Island, 544 F.3d 1201, 1218-19 (11th Cir. 2008).

"To succeed on a failure-to-accommodate claim, a plaintiff must demonstrate that its requested accommodation is 'necessary.'" Rood v. Town of Ft. Myers Beach, Fla., No. 2:20-CV-981-SPC-KCD, 2022 WL 3544398, at *9 (M.D. Fla. Aug. 18, 2022) (citations omitted). "[A] 'necessary' accommodation is one that alleviates the effects of a disability." Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F.3d 1277, 1288 (11th Cir. 2014). However, "[i]f accommodations go beyond addressing [the needs created by the disability] and start addressing problems not caused by a person's handicap, then the handicapped person would receive not an 'equal,' but rather a better opportunity to use and enjoy a dwelling." Schwarz, 544 F.3d at 1226. The law "cannot support" such preferential treatment. Id.; see also Schaw v. Habitat for Human. of Citrus Cnty., Inc., 938 F.3d 1259, 1272 (11th Cir. 2019); Philippeaux v. Apartment Inv. & Mgmt., 598 F. App'x 640, 644 (11th Cir. 2015); Terrell v. USAir, 132 F.3d 621, 627 (11th Cir. 1998). "The inquiry is whether the requested accommodation would provide a disabled person an opportunity . . . that would otherwise—due to his disability—elude him." Schaw, 938 F.3d at 1273. The accommodation must (1) actually alleviate the effects of the plaintiff's disability and (2) address the needs created by the plaintiff's disability. Sailboat Bend Sober Living

LLC v. City of Ft. Lauderdale, 46 F.4th 1268, 1280 (11th Cir. 2022).

Here, Plaintiff cannot show that Defendants failed to accommodate him or that his requested accommodation (allowing the cat to roam or be unrestrained) was necessary.  USF provided Plaintiff a waiver of its policy regarding animal on campus, and allowed Plaintiff's Assistance Animal according to the rules provided in the Agreement.  "[N]othing in the FHA precludes the imposition of appropriate rules and regulations designed to lessen the impact of housing a pet in a no pet building." Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua, 304 F. Supp. 2d 1245, 1259 n.29 (D. Haw. 2003); see also Stevens v. Hollywood Towers & Condo. Ass'n, 836 F. Supp. 2d 800, 809 (N.D. Ill. 2011).  Thus, Plaintiff would need to show not only that he has a handicap that requires him to have his cat, but that his handicap makes it necessary, as a reasonable accommodation, to allow the cat to roam the common area unaccompanied or unrestrained.  Id.  Plaintiff has provided no evidence that this was necessary for him due to an alleged disability.

Plaintiff repeatedly asserted to his fellow students and others that he needed to let the cat out of the room for the comfort of *the cat*, not so he could access a common area.  (See Johnson Decl., Ex. 6, 7, 13; Ex. C).  Indeed, he was not even present as he has admitted.  (Id.).  He did not assert that it was necessary for *his use* of the common areas, but to stop his cat from escaping or whining and because his cat refused to go outside for exercise.  (Id.; see also Johnson Decl., Ex. 13 at 2).  Indeed, the evidence shows that he repeatedly did not accompany the cat, as depicted in pictures, as well as the reports of students who found the cat in the lobby or on the counters.  (Id.).  There

is no right under the FHA for Plaintiff to allow his cat to roam the hallway, counters, or other common areas.  Indeed, to allow Plaintiff to do so, and overtly flout the University's reasonable restrictions, would provide Plaintiff will preferential, not equal, treatment, which is not required under the FHA.  Plaintiff was not precluded from having his cat in his private room, nor was he precluded from accessing all of the common areas of the building with a restrained animal.  He simply did not want to follow the rules in USF's policy or his Agreement.  As such, he has not shown and cannot show a substantial likelihood of success on the merits of his FHA claim.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned hereby certifies that counsel for Defendant has attempted to confer with Plaintiff, but Plaintiff has not responded.  Thus, counsel for Defendant has been unable to determine Plaintiff's position regarding this motion.  In accordance with the undersigned's obligation pursuant to Local Rule 3.01(g), counsel for Defendant will continue to attempt to confer with Plaintiff and will supplement this certificate when appropriate.

Dated this 15th day of January, 2024.

Respectfully submitted,

s/ Sacha Dyson
SACHA DYSON
Florida Bar No.: 509191
sdyson@bgrplaw.com

BUSH GRAZIANO RICE & HEARING, P.A.
100 S. Ashley Drive, Suite 1400
Tampa, Florida 33602
TEL:  (813) 228-7000
FAX: (813) 273-0091
Attorneys for Defendants