**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

_____

|   |   |
|---|---|
| Daniel A. Frishberg, | ) |
| Plaintiff, | ) |
| v. | ) Case Number: 8:24-cv-00022-TPB-NHA |
|   | ) |
| University Of South Florida's Board Of Trustees, | ) |
| HRSE-Capstone Tampa, LLC, | ) |
| Defendants. | ) |

_____

## PLAINTIFF'S RESPONSE TO THE DEFENDANTS' MEMORANDUM OF LAW/MOTION TO DISMISS

Daniel A. Frishberg, the Plaintiff ("Mr. Frishberg", the "Plaintiff")

respectfully files this reply[1] (the "Reply") to the Defendants' Motion To Dismiss

filed at ECF Docket No. 16.

## Preliminary Statement

The Defendants raise numerous arguments in their Motion To Dismiss[2] at

ECF Docket No. 16, and include a substantial amount of exhibits in the

declaration of Andrew Johnson at ECF Docket No. 17 (the "Declaration"). Most

of their exhibits, and a large portion of their arguments, are irrelevant[3] to the facts

---

[1] As well as a declaration in support of this reply, which will be filed simultaneously alongside this reply.

[2] ECF Docket No. 16 is titled differently, but pursuant to the order of the Court at ECF Docket No. 20, it is to be treated as a Motion to Dismiss.

[3] The Defendants allege that Plaintiff would be in the common area with his ESA to "keep the cat from whining". That is false. The primary reason why Plaintiff was in the common area with his

of this case as they would be mooted if this Court finds that USF's policy against ESA's in common areas is discriminatory and unlawful. Out of an abundance of caution the Plaintiff will reply to all of their arguments at a later date. The key issue at hand, as the Court noted in the January 16th, 2024 hearing, is the Defendants' arguments regarding the 11th amendment.

The Defendants' actions constitute a violation of the 14th Amendment, as they are denying the Plaintiff equal protection of the law. Federal and State laws are clear that discrimination on the basis of disability is strictly prohibited. The Defendants' policies are in direct violation of numerous state and federal laws mentioned herein, and the violations are ongoing. The Defendants focused on alleged violations of their policies, thereby avoiding one of the key issues that the Plaintiff's complaint raised: whether the Defendants' policies are discriminatory. Even HUD is opening a formal[4] investigation into the Defendants based on the evidence at hand.

---

ESA is to help the Plaintiff with his anxiety, as prescribed by the Plaintiff's doctor. If you were to take the Defendants' actions and policies, and replace the word "ESA" with "crutch" or "wheelchair", nobody would dispute that it would be a textbook definition of discrimination. The Defendants never asked for any documentation about having the Plaintiff's ESA in the common areas, such as the note filed at docket number 15 (attachment 1), and instead they just denied it. The reason this is not mentioned in the various documentation the Defendants provided, is because the Plaintiffdid not want to admit to his peers that he has disabilities so as not to be ostracized by the Plaintiff's peers.

[4] HUD conducted a preliminary investigation and chose to file a complaint to open a formal one, and they would not do that unless they believe that discriminatory acts are likely to have occurred (and that they have jurisdiction).

The discrimination that occurred was not exclusive to failing to accommodate[5] the Plaintiff's ESA. The Defendants do not have immunity from liability for numerous reasons, including:

(1) The Defendants waived 11th Amendment immunity to certain claims by accepting federal funding;

(2)  Congress validly abridged States' 11th Amendment immunity;

(3) The doctrine of *Ex Parte Young* allows for suits in federal court against state officials[6] for ongoing violations of federal law, state law and constitutional rights;

(4) 42 U.S. Code § 3613, which allows an "aggrieved person", such as the Plaintiff to "commence a civil action in an appropriate United States district court *or* State court" (emphasis added) and;

(5) For state claims, Florida Statute 768.28 expressly partially waives immunity.


## ARGUMENT

### I.   Purported Immunity To Federal Claims


The Defendants purport that the "Plaintiff's Injunction Motion appears to be based solely on the Fair Housing Act (FHA)." This is not so. In addition to the ___Federal___ Fair Housing Act the Plaintiff's complaint and Injunction Motion are

---

[5] The Defendants allege that the Plaintiff requested "as a reasonable accommodation, to allow the cat to roam the common area unaccompanied or unrestrained". That is false. As laid out hereinafter in **Section II**, the Plaintiff did not allow his ESA to roam unaccompanied, nor did he request to be allowed to do so.
[6] The Plaintiff can add or remove Defendants to name them individually if necessary.

based on any and all laws that address discrimination against people with disabilities. The Defendants also argue that they have absolute immunity from both Federal and State Courts, which is also incorrect. The 11th amendment does not prevent a Plaintiff from seeking injunctive relief under the doctrine of *Ex Parte Young*. Nor does it bar claims brought under Section 504 of the Rehabilitation Act (29 U.S. § 794[7] (the "RA")[8], or Title II of the ADA.

## 1. Waiver Of Immunity/Rehabilitation Act[9]

The Defendants' policies against ESA's in common areas[10] are discriminatory *and* ongoing (and will also prevent the Plaintiff from living on campus both this semester, and *in the future*, such as the next academic year). The Defendants' policies require people with ESA's (and by extension, all other people with disabilities) to sign a **separate** contract, and have a **separate** meeting with a USF staff member, and these actions are discriminatory and unlawful.

---

[7] As well as 42 U.S. Code § 2000d–4a. They are materially similar in their definition of "program" and "activity".

[8] The Plaintiff did not specifically name the RA as a cause of action, but it should fall under "other claims that may exist, but ones that I do not know how to correctly phrase due to my lack of legal training", and "Denial of Dwelling, Failure to Accommodate, Discrimination in the Terms and Conditions of Housing". The RA was also mentioned within Count 7 (a state claim).

[9] The Defendants are attempting to argue that there are no claims that can be brought against them by the Plaintiff. This is false. The RA is mentioned here as it can be brought against them.

[10] The Defendants claim that there were "reports [from] students who found the cat in the lobby or on the counters", are misleading, as initially the Plaintiff's ESA was on counters, but after being asked to not let him onto counters, the Plaintiff did not allow him on counters, and while he was in the lobby, the Plaintiff was there with him (or more accurately, the ESA was there with the Plaintiff).

The Rehabilitation Act ("RA") bans discrimination on the basis of disability from "any program or activity", which, as defined by the RA also includes the Defendant's housing: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, **be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance**" (emphasis added). Pursuant to 29 U.S.C. § 794, USF is a "program or activity"[11] which receives federal funding. Through the years, the Defendant as a whole has received tens of millions of dollars in direct federal funding.

Thus, the non-discrimination provisions in the RA apply to the Defendants, who fall squarely into the definition of a "program" and/or "activity" under 29 U.S. Code § 794(b)(1), 29 U.S. Code § 794(b)(2), as well as likely 29 U.S. Code § 794(b)(3) and 29 U.S. Code § 794(b)(4).

The Defendants have accepted *significant* federal funding for their program (as defined by 29 U.S.C § 794), and as such, their 11th amendment immunity was waived by 42 U.S.C § 12202 for the claims stemming from the ADA/RA/Chapter 126 of USC 42 (and equivalent laws). The Defendants choose

---

[11] Among other things, USF is "*a college, university, or other postsecondary institution*, or a public system of higher education…. ***any*** part of which is extended Federal financial assistance". (Emphasis added).

to accept significant federal funding, knowing that it came with strings attached (i.e having to comply[12] with federal laws). In *Constantine* the 4th Circuit found that "'a State may waive its Eleventh Amendment immunity….by voluntarily participating in federal spending programs when Congress expresses a clear intent to condition participation in the programs. . . on a State's consent to waive its constitutional immunity." *Litman v. George Mason Univ.*, [](4th Cir. 1999)." This is what occurred in this instance, as by accepting federal funding, the Defendant has waived its 11th amendment immunity.

Defendant USF's newspaper[13] stated that Defendant USF accepted over $100 million in Federal Funding in a single transaction in May of 2021, as well as an additional more than $90 million in 2020, and early 2021. This academic school year (in September 2023), USF received $17 million dollars in Federal Funding[14]. The RA applies to any program or activity receiving "Federal financial assistance". The Defendants have not disputed the fact that they have received significant Federal funding.

---

12 The Defendants' policies (policy number 6-033) also states that they will comply with "all federal and state laws with regard to accommodations".
13 https://www.usforacle.com/2021/05/19/usf-receives-over-100-million-in-federal-aid/
14https://www.usf.edu/news/2023/usf-receives-17-m-federal-grant-to-help-boost-railroad-workforce.aspx#:~:text=The%20University%20of%20South%20Florida,Infrastructure%20and%20Safety%20Improvement%20program
As well as $3.7 million in February of 2023.
https://stpetecatalyst.com/usf-receives-5-2-million-to-bolster-cybersecurity-workforce/

## 2. <u>Ex Parte Young</u>

While Eleventh Amendment immunity is broad, it is not absolute. "To ensure the enforcement of federal law, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins,* [] (2004) (citing *Ex parte Young[15]*,[]). Federal courts are thus allowed to order prospective relief, including ancillary measures, but cannot order retrospective relief, such as damages, **unless the state waives its immunity or Congress abrogates the state's immunity** in exercising its powers under the Fourteenth Amendment. *Id.; Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* [](1999)." *Mary's House, Inc. v. North Carolina,* Dist. Court, MD North Carolina 2013 (emphasis added). The Defendants have waived[16] their 11th Amendment immunity

A Plaintiff may properly invoke the doctrine of *Ex parte Young[17]* when a "straightforward inquiry" reveals that the plaintiff has alleged an "ongoing

---

[15] *Ex Parte Young* also states "In Smyth v. Ames, 169 U.S. 466 (another rate case), it was again held that a suit against individuals, for the purpose of preventing them, as officers of the State, from enforcing, by the commencement of suits or by indictment, an unconstitutional enactment to the injury of the rights of the plaintiff, was not a suit against a State within the meaning of the Amendment. At page 518, in answer to the objection that the suit was really against the State, it was said: "It is the settled doctrine of this court that a suit against individuals for the purpose of preventing them as officers of a State from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the State within the meaning of that Amendment." The Plaintiff can add or remove Defendants to name them individually.
[16] To the extent that is relevant here. By accepting federal funding, USF has to follow federal law.
[17] In *Ex Parte Young*, (209 US 123) the Supreme Court held that: "The Fourteenth Amendment provides that no State shall…… deny to any person within its jurisdiction the equal protection of the laws." That is what occurred here. Defendant USF, which is "a part of the state government," denied the Plaintiff equal protection of the laws. The laws include both state, and federal laws. The protection of the laws that was denied to the Plaintiff include the Florida Fair Housing Act, Federal Fair Housing Act, as well as other federal and state anti-discrimination laws.

violation" of federal law. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,*[] (2002) (citation omitted). The Plaintiff has alleged numerous ongoing violations of Federal law[18].

The Supreme Court in *Frew v. Hawkins*, (540 US 431, 2004) stated that "to ensure the enforcement of federal law….**the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law**. *Ex parte Young, supra*. This standard **allows courts to order prospective relief**, see *Edelman v. Jordan*, [](1974); *Milliken v. Bradley*, 433 U.S. 267 (1977), as well as measures ancillary to appropriate prospective relief, *Green v. Mansour*, [](1985)." (italics are originally there, bold is added emphasis).

### 3.  **<u>Abridgment of Immunity</u>**

Congress' abridgment of States' 11th amendment immunities, while relevant, is likely redundant in this instance, as USF has waived its immunity by accepting federal funding. Out of an abundance of caution, the Plaintiff will address it anyways.

---

[18] The Defendants admitted to some violations (requiring the signing of a separate contract, a separate meeting for people with ESA's, the disclosure of the disability, and severity of the disability, and the usage of a "required questionnaire", etc). In short, the Defendants treated people with disabilities differently than everyone else (amounting to discrimination against people with disabilities).

Congress has validly[19] abrogated states' immunity for violations of the RA through 42 U.S.C. § 2000d-7[20]. Also, the Court in *Garrett*, while insulating States from damage claims under Title I of the ADA, ***explicitly*** noted that they would remain liable for prospective injunctive relief[21].

The Defendants actions, combined with the lack of availability for alternative housing cause what the Defendants argue would only be discrimination under the FHA, to be discrimination under the ADA as well as various other federal codes, as it excludes the Plaintiff from *any* activity which takes place in person. The Defendants' sovereign immunity does not unilaterally protect them from federal[22] suits brought for violations of federal law (seeking to enforce the law). Also, specifically for violations of Title II[23] of the ADA[24], Congress validly waived 11th Amendment immunity for states under 42[25] U.S.C.

---

[19] The Fourth Circuit has held section 2000d-7 to be "an unambiguous and unequivocal condition requiring waiver of Eleventh Amendment immunity" that "does not violate any other constitutional command." *Constantine v. Rectors & Visitors of George Mason Univ*. (4th Cir.2005).

[20] "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the [RA.]"

[21] 531 U.S. at 374 n.9; *see also U.S. v. Georgia*, 546 U.S. at 160 (Stevens, J. concurring) ("the state defendants have correctly chosen not to challenge the Eleventh Circuit's holding that Title II is constitutional insofar as it authorizes prospective injunctive relief against the State").

[22] The Defendants' immunity partially protects them from state monetary claims, and protects them from some federal monetary claims.

[23] There is a lack of clarity on how to apply the congruence and proportionality tests in specific cases, but the Supreme Court ruled that Title II of the ADA validly abrogated the States' Eleventh Amendment immunity in T*ennessee v. Lane*, 541 U.S. 509 (2004). It is not like the Plaintiff is asking the Defendants to rebuild the building, but simply change a minor policy that was not even enforced last year.

[24] In the ADA, Congress found that people with disabilities have the "right to *fully* participate in *all* aspects of society" (emphasis added).

[25] *See* **42 US. Code Subchapter II Violations** (below).

§ 12202. Nor does the 11th Amendment protect them from claims under 42 U.S. Code Subchapter II as a whole.

The Defendants argue that simply because the Plaintiff's assistance animal is not a service animal, meaning that: "any claim under the ADA fails as a matter of law". The Defendants are incorrect. Even if the Defendants are correct that the Plaintiff cannot bring *any* claims for relief (both monetary and injunctive), in *any* form under the FHA[26], that does not mean that the discrimination did not occur, nor does it make the discrimination magically vanish[27].

The ADA was intended by Congress[28] to be broad, and to cover *any* discrimination (on the basis of their disability) against people with disabilities[29]. The Discrimination that occurred was not exclusive to failing to accommodate the Plaintiff's ESA. While the Plaintiff likely cannot bring a claim <u>under the ADA solely</u> for a failure to accommodate his ESA, that does not mean he cannot bring

---

[26] The Defendants argue that the Plaintiff's accommodation (being in the common area with his ESA) was not necessary. The Plaintiff's Dr. disagrees. The Defendants' allegations of the Plaintiff purportedly requesting to have his ESA roam the halls unattended are baseless, as he has not requested anything remotely similar to that.

[27] By excluding the Plaintiff from university housing (a part of the federally funded program), the Defendants have de facto excluded him from attending school in person, which is illegal under the ADA, and RA. Just as a single criminal act can constitute multiple crimes, an act of discrimination can (and usually does) violate numerous anti discrimination statutes. 42 U.S. Code § 2000a–6 also grants district courts "jurisdiction of proceedings instituted pursuant to this subchapter".

[28] *See* 42 U.S. Code § 12101.

[29] Including in housing. Congress' findings that "discrimination against individuals with disabilities persists in such critical areas as… housing, public accommodations, education[], recreation, []and access to public services;" are just as accurate then, as they are now (at least at USF).

that claim under *other* laws, nor does it mean that he cannot bring claims[30] under the ADA for other things, such as the de facto exclusion from any in person classes. The Plaintiff's ESA is a treatment method/tool to help him with the symptoms of his disability[31].


### 4. <u>Future Harm</u>

There is also a direct threat of **future** harm, as the Plaintiff has been, *and will continue to be* denied the ability to live in on campus housing, because he allegedly broke policies which are discriminatory, and unlawful. This is harmful for numerous reasons, as *according to the Defendants' own website, there are academic (as well as social) benefits to living on campus*. USF, on it's website[32],

---

[30] The Supreme Court in *United States v Georgia* (2006) addresses claims made by the Defendants about how they purportedly are immune from all non-ADA Title II claims. They held that: "no one doubts that § 5 grants Congress the power to "enforce . . . the provisions" of the [Fourteenth] Amendment by creating private remedies against the States for *actual* violations of those provisions. "Section 5 authorizes Congress to create a cause of action through which the citizen may vindicate his Fourteenth Amendment rights." []) (citing the Ku Klux Klan Act of April 20, 1871, 17 Stat. 13); see also *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) ("In [§ 5] Congress is expressly granted authority to enforce . . . the *substantive provisions* of the Fourteenth Amendment" by providing actions for money damages against the States (emphasis added)); *Ex parte Virginia*, 100 U.S. 339, 346 (1880) ("The prohibitions of the Fourteenth Amendment are directed to the States . . . . It is these which Congress is empowered to enforce . . .")" (emphasis in original). Congress validly abridged States' 11th Amendment immunity to allow for "aggrieved persons" (as 42 U.S. Code § 3613 puts it) to bring lawsuits against states which violated U.S.C. 42 Chapter 126. Congress' intent was to prevent discrimination against people with disabilities totally and completely.

[31] The argument the Defendants are trying to make is similar to someone arguing that they were not discriminating against a person with a wheelchair because of their disability, but discriminating against the wheelchair itself. In short, it is an argument that is not based in logic, law, or precedent.

[32] https://www.usf.edu/housing/resources/faq.aspx (Accessed January 21st, 2024). [Under "Campus Life"].

advertises multiple *unique* benefits[33] to living on campus, including academic benefits for the student. USF clearly takes the position that living off campus does not "get [you] the full college experience", and that off campus housing is not comparable.

USF's website[34] also states that "[l]iving on campus will **contribute to your learning and academic success**, provide many **opportunities for involvement**, create lifelong friendships, and offer conveniences **only experienced when living on campus**!" (emphasis added).

The Defendants have previously stated[35] that they would never allow the Plaintiff to reside in on campus housing[36]. The Defendants are attempting to argue that the harm done to the Plaintiff is all in the past, which is incorrect. The Plaintiff will be excluded from the ability to participate in a program (defined as *any* of the operations of a college or university, which includes housing), due to his disability (which requires an assistance animal to help him). The Defendants

---

[33] A tab labeled "What are the benefits of living on campus?" states: "Everything is included when you live on campus, and everything is right outside your door. **National research shows that students who live on campus for at least a year graduate at higher rates, and sooner, than those who don't**. That's what it's all about! The campus experience connects you **in a way no other living option can**. When you live on campus, you get the full college experience. **When you live off campus, you don't.**" (emphasis added).

[34] https://www.usf.edu/housing/resources/policies.aspx (Accessed on January 21st, 2024).

[35] Email sent at 2pm on December 7th, 2023.

[36] "The University has issued a final university decision that permanently ended your current **and *any* future assignment in university housing**". (emphasis added). In the same email the Defendants also stated that "the university will not reconsider this final university decision".

are also incorrect in their assertion that the Plaintiff's requested accommodation was to allow his ESA to roam the halls unaccompanied[37].

By denying the Plaintiff  reasonable accommodation (under the FHA), the Defendants are both discriminating against the Plaintiff by preventing him from benefiting from a public program (while accepting federal funding), and are de facto excluding him from attending school in person[38].

The Plaintiff has been unable to find any housing near campus <u>for this</u> semester[39]. *Even if* the Plaintiff was to find housing off campus for next semester, it would not be comparable, as according to the Defendants "[t]he campus experience connects you **<u>in a way no other living option can</u>**" (emphasis added). According to the Defendants "[w]hen you live on campus, you get the full college experience. When you live off campus, **<u>you don't.</u>**" (emphasis added).

---

[37] The Plaintiff requested to be allowed in the common area with his ESA, **not** to let his ESA do whatever it wanted in the common area. The Plaintiff also disputes their assertions that he allowed his ESA to be outside of his room unattended.

[38] The Defendants make it appear that the Plaintiff is choosing to not attend classes in person, which is categorically false. There is no availability in off campus housing which is comparable to the on campus housing. The ADA does not have special protections for ESA's, but it does have protections against discrimination against people with disabilities, including in education, and public programs. The Defendants' eviction of the Plaintiff de facto excludes him from any in person activity, including classes.

[39] The Defendants state that a quick google search will show housing near campus, which while technically true, is *extremely* misleading, since once you actually go the the websites of the places purporting to having the availability, you will see that the *only* availability is for the 2024-2025 academic year, and most of it has already been reserved. The harm the Plaintiff will suffer is not the monetary difference between on campus, and off campus housing. It is non-monetary harm, since there is no availability in housing, which means that the Plaintiff will be unable to attend classes.

The Defendants also argue that any discrimination is in the past. **Not so**.
As stated throughout, the semester is ongoing, and the Plaintiff will also be
*forever* denied the opportunity to live on campus.

### 5.  42 U.S. Code Subchapter II Violations

The Defendants have committed numerous violations of 42 U.S.C.
Subchapter II[40]. The Defendants' actions may also constitute a violation of 42 U.S.
Code § 2000a[41], as <u>according to the Defendants</u>[42], USF housing is transient in
nature[43]. The Plaintiff was denied the benefits[44] of the services (living on campus,

---

[40] 42 U.S. Code § 12132 states that: "subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity".

[41] 42 U.S. Code § 2000a applies to "other establishment[s] which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence".

[42] The Defendants in *United States of American v UNIVERSITY OF NEBRASKA AT KEARNEY, et al.*, case number 4:11-CV-3209 also attempted to argue that university housing was transient in nature, the District court disagreed and stated that: "That result is simply unsupported by the statutory language, not to mention Congressional intent. See id. UNK's students obviously do not intend to live in university housing for the rest of their lives. But they do intend to live in university housing for extended periods of time that are roughly comparable to many other residential living situations. And that is all the FHA requires."

[43] While the Plaintiff disagrees with the characterization of USF housing as for transient guests, if their characterization is to be taken at face value, their actions would be a violation of 42 U.S. Code § 2000a.

[44] The Defendants may have also violated 42 U.S. Code § 2000a–2, which addresses retaliation/interfering with people exercising "any right or privilege secured by section 2000a or 2000a–1 of this title". In short, there are many, many potential claims that the Plaintiff can bring which are not affected by the Defendants' 11th Amendment immunity.

and being able to attend classes) of a public entity (USF) because of his disability[45].

### 6. State Claims

The Defendants claim that: "all of Plaintiff's claims fail as a matter of law. All of the state claims are barred by sovereign immunity, and there is no cognizable claim under the ADA, which is the only other federal claim asserted". That is incorrect. The State Claims are not barred by sovereign immunity, and at a minimum may be brought in state court (with some limitations such as no punitive damages)[46].

### 7. Defendant HRSE

The Defendants argue that claims[47] against HRSE Capstone should be dismissed because there is no basis for claims against them. That has yet to be seen as discovery has not yet occurred.

---

[45] To help treat the Plaintiff's disability, his doctor prescribed/assigned him an ESA (See ECF Docket No. 15, attachment 1). Much in the same way that people are prescribed medications to treat symptoms of various issues, the Plaintiff's ESA helps treat the symptoms of his disabilities.
[46] Some of the claims stem from the Housing Agreement, which is a contract. Florida Statutes Section 768.28 partially waives sovereign immunity on behalf of the state "and for its agencies or subdivisions", but only  "to the extent specified" within Section 768.28 (within State court).
[47] HRSE was likely involved in deciding the policies of what went on inside of the buildings which they own. HRSE certainly was complicit with the discriminatory policies, since presumably they would have to approve the enforcement of rules inside buildings which they owned.

## II. Response to Defendants Claims and Title II of the ADA Claims

The Plaintiff may have improperly plead numerous claims[48], including Title II of the ADA, but this Court should not dismiss his claims/case simply because he did not plead it well[49]. The Plaintiff believes that he has stated enough facts, information, and statutory support to adequately plead it. This Court will hopefully "liberally" construe his claims, as the law provides[50].

The Defendants have not met the burden required to establish that this Court does not have jurisdiction because of the 11th Amendment. Even if the Plaintiff is unable to bring a claim for any monetary damages, Federal Courts are able to grant injunctive relief when Federal law is being violated. The Defendants also have not met the high standard required to dismiss a case at the pretrial phase.

---

[48] Including not specifically naming several claims in the Plaintiff's original complaint. This Court may interpret this as a request to amend the complaint under FRCP Rule 15, but the Plaintiff is unsure if that is necessary.

[49] As the Supreme Court said in *Haines v. Kerner*, "a pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" 404 U.S. 519, 520-521 (1972), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[50] The Supreme Court has instructed the federal courts to apply the standard that a pleading filed pro se is "to be liberally construed." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Sause v. Bauer,* 138 S. Ct. 2561, 2563 (2018) (per curiam) (holding that "[i]n considering the defendants' motion to dismiss, the District Court was required to interpret the pro se complaint liberally"); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).

## 1. Defendants' Allegations Are Largely Misleading[51], Wrong, or Irrelevant

The Defendants heavily focused on alleged violations of their policies[52], and completely avoided one of the main issues that the Plaintiff's complaint raised, which is the question of whether the policies are discriminatory. Some of their allegations were completely wrong and misleading, while others were irrelevant. At no time did the Plaintiff let his ESA go outside of his room to simply roam as the ESA pleased[53]. The only time that the Plaintiff allowed the ESA out of his room was when he would take the ESA with him. Exhibit 17 of the Johnson Declaration is intentionally misleading[54], as it deliberately omits the third screenshot that was sent to the Plaintiff, but not shown to the court, which shows the Plaintiff accompanying his ESA in the corridor[55] (*See* **Exhibit A**). The Defendants incorrectly rely on the Plaintiff's signing of the ESA Agreement to support their arguments and policies[56].

---

[51] The Defendants argue that "[Plaintiff] repeatedly asserted that he could not be required to follow the University's rules without a court order", which is false. The Plaintiff simply believes that the Defendant's policy of banning ESA's in common areas is illegal, and therefore would not comply with this narrow policy. The Plaintiff never said that he would not follow non-ESA related policies/rules. To the contrary, he followed the rules much better than a lot of his peers (he did not play loud music at all hours of the day and night, etc).

[52] The Defendants have not alleged a single rule/policy violation that is not related to the ESA (i.e not following instructions to remove ESA from common area).

[53] The Defendants claim that the Plaintiff admitted to allowing his ESA to roam alone, which is **false**. The Plaintiff's email to the Defendants specifically says that "[m]y ESA did slip out a few times **when I did not notice**" (emphasis added).

[54] The Plaintiff was told that he cannot have his ESA outside of his room unless it was being transported in a carrier numerous times, including by USF's RA (an employee of USF, who lived on the same floor as the Plaintiff).

[55] The view of the common area is blocked by the wall with the bulletin board on it.

[56] The ESA Agreement is unenforceable, void and illegal (for numerous reasons, such as the ones laid out in the Complaint, which the Plaintiff incorporates by reference herein). To the

The Plaintiff incorporates by reference all previously made arguments, including about how discriminatory conduct banned under the FHA lead to the Plaintiff being excluded from numerous programs, activities, and the benefits of them.

The Defendants' arguments and exhibits are attempting to obscure the facts that their policies and actions are discriminatory under the Fair Housing Act[57], and numerous other statutes. The **actual** issue at hand is not if the Plaintiff violated the Defendants' policies, but whether those policies are discriminatory and therefore illegal.

## 2. "Misrepresentations" to the Court

The Defendants purport that the Plaintiff misrepresented facts to the court, which is categorically false. The Plaintiff told the court that the academic hold prevented him from registering for classes, and that he needed to register for online classes, all of which is (and was) true.

## 3. Appealing Disciplinary Board Decision

---

contrary, treating people with assistance animals differently than people without them is illegal and discriminatory.

[57] The Defendants falsely claim that the Plaintiff cannot provide any evidence that his requested accommodation was necessary. Contrary to what the Defendants argue, the Plaintiff did not request to be allowed to let his cat roam the halls, he requested to be able to be in the common area with his ESA. The option to have the ESA in the common area if it was on a leash was not offered to the Plaintiff.

The Johnson Declaration states that the Plaintiff did not appeal the decision of the disciplinary board, which while correct, is irrelevant. Any appeal of that decision would have led to the same outcome anyways, since the Defendants already made up their mind. Not appealing the board decision does not impact the Plaintiff's ability to bring claims in this (or any other) court[58].

The Defendants' claims that the Plaintiff cannot show any imminent future injury is also incorrect. (*See* Section I. **Future Harm** generally)

### 4.  Purported Rule Violations/Allegations by Defendants

The Defendants argue that an injunction (which would enjoin them from enforcing discriminatory policies, and harming the Plaintiff) is not in the public interest. To the contrary, it is in the public interest to prevent discriminatory action.

The Defendants further allege that the Plaintiff "expressly refuses to recognize the authority of USF", which is completely false. The Plaintiff recognizes that the Defendant has rules, which rules must be followed. However, the Plaintiff challenges the Defendant's purported authority to implement policies which are in direct violation of both state, and federal law (as well as HUD guidance). Rules and policies which are illegal are void and unenforceable.

---

[58] Pursuant to 42 U.S. Code § 2000a–6 "The district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this subchapter and **shall exercise the same without regard** to whether the aggrieved party shall have exhausted any administrative or other remedies that may be provided by law." (emphasis added).

### 5. Title II of the ADA and Similar Claims

The Defendants argue that "in discussing the modification in policies, practices, or procedures that must be made by public entities under Title II of the ADA, the regulation excludes emotional support animals."[59] While this is true, it is not the issue at hand. Discrimination against the Plaintiff's ESA (under the FHA) led to a situation where it is discrimination under other acts as well. All of the laws are applicable, and the Plaintiff has the right to bring claims under them separately. The spirit of the ADA is to prevent discrimination. By discriminating against the Plaintiff (under the FHA), it leads to a situation where it is discrimination under the ADA as well, since the Plaintiff is de facto excluded from in person classes this semester, and is *forever* barred from on campus housing.

/s/*Daniel A. Frishberg*

Daniel Frishberg, *Pro Se*

February 6, 2024,

Santa Clara County, California

---

[59] The Defendants also cite 28 C.F.R. § 36.104. 28 CFR § 36.103 (especially subsection b) should be considered, as the section "does not affect the obligations of a recipient of Federal financial assistance to comply with the requirements of section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) and regulations issued by Federal agencies implementing section 504." *See also* § 36.103(a) and § 36.103(c).

Response **Exhibit A**[60]:



---

[60] This is the image that was provided to the Plaintiff by the Defendants, which they specifically omitted from Exhibit 17 of the Johnson Declaration.