# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

Sam M. Gibbons U.S. Courthouse
Office of the Clerk
801 North Florida Avenue
Tampa, FL 33602
(813) 301-5400
www.flmd.uscourts.gov

Elizabeth M. Warren                                                Kristin Esposito
Clerk of Court                                          Tampa Division Manager

**DATE:** April 16, 2024

**TO:**   Clerk, U.S. Court of Appeals for the Eleventh Circuit

DANIEL A. FRISHBERG,

      Plaintiff,

v.                                              Case No: 8:24-cv-22-TPB-NHA

UNIVERSITY OF SOUTH FLORIDA BOARD OF
TRUSTEES and HRSE-CAPSTONE TAMPA, LLC,

      Defendants.

_____

**U.S.C.A. Case No.:**   **TBA**

Enclosed are documents and information relating to an appeal in the above-referenced action.  Please acknowledge receipt on the enclosed copy of this letter.

- Honorable Thomas P. Barber, United States District Judge appealed from.

- Appeal filing fee was not paid. Upon filing a notice of appeal, the appellant must pay the district clerk all required fees. The district clerk receives the appellate docket fee on behalf of the court of appeals.  If you are filing informa pauperis, a request for leave to appeal in forma pauperis needs to be filed with the district court.

- Certified copy of Notice of Appeal, docket entries, judgment and/or Order appealed from.  Opinion was not entered orally.

- No hearing from which a transcript could be made.

ELIZABETH M. WARREN, CLERK

By:      s/A. Azcona Johnson, Deputy Clerk

APPEAL, CLOSED

# U.S. District Court
# Middle District of Florida (Tampa)
# CIVIL DOCKET FOR CASE #: 8:24−cv−00022−TPB−NHA

| | |
|---|---|
| Frishberg v. University of South Florida Board of Trustees et al | Date Filed: 01/03/2024 |
| Assigned to: Judge Thomas P. Barber | Date Terminated: 04/11/2024 |
| Referred to: Magistrate Judge Natalie Hirt Adams | Jury Demand: None |
| Cause: Americans with Disabilities Act | Nature of Suit: 446 Civil Rights: |
| | Americans with Disabilities − Other |
| | Jurisdiction: Diversity |

**Plaintiff**

**Daniel A. Frishberg**                    represented by   **Daniel A. Frishberg**
                                                            284 Monroe Drive
                                                            Mountain View, CA 94040
                                                            754−237−8472
                                                            PRO SE

V.

**Defendant**

**University of South Florida Board of**      represented by   **Sacha Dyson**
**Trustees**                                                  Bush, Graziano, Rice & Platter, P.A.
                                                              100 S. Ashley Drive
                                                              Suite 1400
                                                              Tampa, FL 33602
                                                              813−228−7000
                                                              Fax: 813−273−5145
                                                              Email: sdyson@bgrhlaw.com
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**HRSE−Capstone Tampa, LLC**            represented by   **Sacha Dyson**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/03/2024 | 1 | COMPLAINT against HRSE−Capstone Tampa, LLC, University of South Florida Board of Trustees filed by Daniel A. Frishberg.(AA) (e−portal) (Entered: 01/03/2024) |
| 01/03/2024 | 2 | MOTION to Proceed In Forma Pauperis / Affidavit of Indigency by Daniel A. Frishberg. (AA) Motions referred to Magistrate Judge Natalie Hirt Adams. (e−portal) (Main Document 2 replaced on 1/10/2024 to flatten pdf image.) (AG) (Entered: 01/03/2024) |

| 01/03/2024 | 3 | MOTION to allow Electronic Service and other related relief by Daniel A. Frishberg. (AA) (e−portal) (Entered: 01/04/2024) |
|---|---|---|
| 01/08/2024 | 4 | MOTION for Preliminary Injunction, MOTION for Temporary Restraining Order by Daniel A. Frishberg. (AA) (e−portal) (Entered: 01/08/2024) |
| 01/08/2024 | 5 | **ORDER granting 2 Motion to Proceed In Forma Pauperis, and directing Plaintiff to to complete and return the "Summons in a Civil Action" AO 440 form and the "Process Receipt and Return" USM−285 form to the Clerk. Signed by US Magistrate Judge Natalie Hirt Adams on 1/8/2024. (Adams, Natalie)** (Entered: 01/08/2024) |
| 01/08/2024 | 6 | PROPOSED summons to be issued as to University of South Florida by Daniel A. Frishberg. (Attachments: # 1 USM−285)(AA) (e−portal) Modified on 1/10/2024 − summons not issued as missing information on forms.) (AG) (Entered: 01/09/2024) |
| 01/09/2024 | 7 | NOTICE to Counsel of Local Rule 3.02(a)(2), which requires the parties in every civil proceeding, except those described in subsection (d), to file a case management report (CMR) using the uniform form at www.flmd.uscourts.gov. The CMR must be filed (1) within forty days after any defendant appears in an action originating in this court, (2) within forty days after the docketing of an action removed or transferred to this court, or (3) within seventy days after service on the United States attorney in an action against the United States, its agencies or employees. Judges may have a special CMR form for certain types of cases. These forms can be found at www.flmd.uscourts.gov under the Forms tab for each judge. (Signed by Deputy Clerk). (SRC) (Entered: 01/09/2024) |
| 01/09/2024 | 8 | NOTICE informing the parties that they may consent to the jurisdiction of a United States magistrate judge by filing Form AO 85 Notice, Consent, and Reference of a Civil Action to a Magistrate Judge using the event **Consent to Jurisdiction of US Magistrate Judge**. (Signed by Deputy Clerk). (SRC) (Entered: 01/09/2024) |
| 01/09/2024 | 9 | **ORDER. "Plaintiff's Emergency Motion for [an] Injunction, or in the Alternative, a Temporary Injunction/Restraining Order." (Doc. 4) is granted in part and denied in part. This matter will be scheduled for a preliminary injunction hearing by separate notice on Tuesday January 16, 2024, at 2:00 p.m. Plaintiff is directed− before noon on January 10, 2024 − to serve on Defendants through email to their counsel, at the email address listed on counsel's filings in the parallel state court case, the following: 1) a copy of the complaint and its exhibits; (2) a copy of the motion and its exhibits; and (3) a copy of this Order. Plaintiff is further directed to file with the Court on or before January 11, 2020, a statement that service on Defendants has been provided as directed. Defendants are directed to file a response to Plaintiff's motion on or before noon on January 15, 2024. Defendants' response should include any affidavits, declarations, or documentary evidence Defendants wish the Court to consider. See Order for details. Signed by Judge Thomas P. Barber on 1/9/2024. (EKB)** (Entered: 01/09/2024) |
| 01/09/2024 | 10 | CERTIFICATE of service by Daniel A. Frishberg re 9 Order on Motion for Preliminary Injunction, Order on Motion for Temporary Restraining Order. (e−portal) (AG) Modified text on 1/10/2024 (AG). (Entered: 01/10/2024) |
| 01/10/2024 | 11 | PROPOSED summons to be issued by Daniel A. Frishberg. (Attachments: # 1 Proposed Summons HRSE−Capstone Tampa, LLC, # 2 USM − 285) (e−portal)(AG) Modified text on 1/10/2024 (AG). (Entered: 01/10/2024) |

| | | |
|---|---|---|
| 01/10/2024 | 12 | SUMMONS issued as to HRSE−Capstone Tampa, LLC, University of South Florida Board of Trustees. (AG) (Entered: 01/10/2024) |
| 01/10/2024 | 13 | **ENDORSED ORDER: The second sentence in paragraph 7 on page 7 of the Court's January 9, 2024, "Order Granting in Part and Denying in Part Plaintiff's Motion for Temporary Restraining Order" (Doc. 9) is hereby amended, *nunc pro tunc*, to read as follows: "Plaintiff is further DIRECTED to file with the Court on or before January 11, 2024, a statement that service on Defendants has been provided as directed." Signed by Judge Thomas P. Barber on 1/10/2024. (EKB)** (Entered: 01/10/2024) |
| 01/11/2024 | 15 | STATUS report by Daniel A. Frishberg. (Attachments: # 1 Exhibit)(AA) (e−portal) (Entered: 01/12/2024) |
| 01/12/2024 | 14 | NOTICE of hearing: Preliminary Injunction Hearing set for JANUARY 16, 2024, at 02:00 PM in Tampa Courtroom 14 A before Judge Thomas P. Barber. (SRC) (Entered: 01/12/2024) |
| 01/15/2024 | 16 | RESPONSE to Plaintiff's Emergency Motion for an Injunction and Defendant's MOTION to Dissolve by HRSE−Capstone Tampa, LLC, University of South Florida Board of Trustees. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Dyson, Sacha) (Modified on 1/16/2024 to edit docket text) (JDR). (Entered: 01/15/2024) |
| 01/15/2024 | 17 | DECLARATION of Andrew Johnson re 16 MOTION for Miscellaneous Relief, specifically to Dissolve *and Defendants' Response to Plaintiff's Emergency Motion for an Injunction* by HRSE−Capstone Tampa, LLC, University of South Florida Board of Trustees. (Attachments: # 1 Appendix 1−5, # 2 Exhibit 6−10, # 3 Exhibit 11−15, # 4 Exhibit 16−20, # 5 Exhibit 21−27)(Dyson, Sacha) (Entered: 01/15/2024) |
| 01/16/2024 | 18 | Minute Entry. Virtual Proceedings held before Judge Thomas P. Barber: MOTION HEARING held on 1/16/2024 re 4 MOTION for Preliminary Injunction MOTION for Temporary Restraining Order filed by Daniel A. Frishberg. Court Reporter: Rebekah Lockwood (SRC) (Entered: 01/16/2024) |
| 01/16/2024 | 19 | NOTICE by HRSE−Capstone Tampa, LLC, University of South Florida Board of Trustees re 1 Complaint *of Acceptance of Service of Summons and Plaintiff's Complaint* (Dyson, Sacha) (Entered: 01/16/2024) |
| 01/17/2024 | 20 | **ENDORSED ORDER: For the reasons discussed at the January 16, 2024, hearing in this matter, Defendants' motion to dissolve the temporary restraining order (Doc. 16) is granted. The temporary restraining order (Doc. 9) is hereby dissolved. To the extent "Plaintiff's Emergency Motion for [an] Injunction, or, in the Alternative, a Temporary Injunction/Restraining Order" (Doc. 4) seeks a preliminary injunction, ruling is deferred pending resolution of the Eleventh Amendment sovereign immunity and related issues raised by Defendants in their response to Plaintiff's motion (Doc. 16). The Court will treat Defendants' response as a motion to dismiss based on: (1) Eleventh Amendment sovereign immunity as to the Fair Housing Act and state law claims, and (2) failure to state a claim under the Americans with Disabilities Act. *See* (Doc. 16 at 14−15 & nn. 11−12; *id.* at 22 n.13). On or before January 31, 2024, Plaintiff may file a response to Defendants' motion, limited to these issues and complying in all respects with the Local Rules, including Local Rule 3.01(b). Based on the agreement of Defendants' counsel, service of process is deemed to have been made on Defendants as of January 16, 2024. Defendants' time to respond to the complaint is stayed pending resolution of the threshold issues described above. In the event** |

3

| | | |
|---|---|---|
| | | the Court does not dismiss the case on these grounds, the Court will set a deadline for Defendants to respond to the complaint. Defendants may at that point assert by way of answer or motion to dismiss any arguments available to them under Rule 12. Signed by Judge Thomas P. Barber on 1/17/2024. (EKB) (Entered: 01/17/2024) |
| 01/18/2024 | 21 | RETURN of service executed on 1/17/2024 by Daniel A. Frishberg as to University of South Florida Board of Trustees. (LNR) (Entered: 01/22/2024) |
| 01/28/2024 | 22 | MOTION to Increase Page Limit for Plaintiff's Response to the Defendant's Memorandum of Law/Motion to Dismiss. by Daniel A. Frishberg. (AA) (e−portal) (Entered: 01/29/2024) |
| 01/30/2024 | 23 | **ENDORSED ORDER: "Plaintiff's Motion to Increase Page Limits for Plaintiff's Response to the Defendants' Memorandum of Law/Motion to Dismiss" (Doc. 22) is granted in part and denied in part. To the extent Plaintiff requests an extension of the 20−page limit for his responsive memorandum, the motion is denied. Plaintiff's response will be limited to "twenty pages inclusive of all parts."** *See* **Local Rule 3.01(b). The Court notes, however, that any exhibits attached to the responsive memorandum will not be considered part of the memorandum for purposes of the 20−page limit. Construing Plaintiff's motion to additionally or alternatively seek an extension of time to file his response, the motion is granted. Plaintiff may file his response on or before February 6, 2024. The Court notes that for most types of motions, Local Rule 3.01(g) requires that the moving party confer with the opposing party regarding the relief sought and include in the motion a certificate describing the outcome of the conference. Plaintiff's motion fails to include the required certificate of conference. Although the Court has granted the motion in part, any future motions that require but fail to include a certificate of conference will be denied or stricken. As the Court previously reminded Plaintiff (Doc. 9),** *pro se* **litigants are required to comply with the rules of procedure and Local Rules. Signed by Judge Thomas P. Barber on 1/30/2024. (EKB) (Entered: 01/30/2024)** |
| 02/06/2024 | 24 | REPLY to Response to Motion re 16 MOTION to dismiss filed by Daniel A. Frishberg. (AA) (e−portal) Modified text on 2/14/2024 (AG). (Entered: 02/07/2024) |
| 02/06/2024 | 25 | DECLARATION of Daniel Frishberg re 24 Reply to Response to Motion by Daniel A. Frishberg. (AA)(e−portal) (Entered: 02/07/2024) |
| 03/04/2024 | 26 | **ENDORSED ORDER: Plaintiff's motion to allow electronic service (Doc. 3) is denied. "It is the District's preferred policy to disallow** *pro se* **litigants access to electronic filing unless extenuating circumstances exist to justify waiving CM/ECF procedures."** *Fisher v. District School Bd. of Collier County***, No. 2:10−cv−512−FtM−29SPC, 2010 WL 3522215, at *1 (M.D. Fla. Sept. 7, 2010). Plaintiff has not shown good cause. In addition, the Court declines to seal the information requested, except to the extent that personal identifying information − as defined in Federal Rule of Civil Procedure 5.2 − may be redacted. Signed by Judge Thomas P. Barber on 3/4/2024. (ANL) (Entered: 03/04/2024)** |
| 04/11/2024 | 27 | **ORDER: Defendants' motion to dismiss (Doc. 16) is hereby granted. Counts 1, 2, 4, 6, 7, 8, 9, 10, 11 (in part), 13, 14, 15, 16, and 17 are dismissed without prejudice, without leave to amend, for lack of jurisdiction on the basis of Eleventh Amendment immunity. If Plaintiff wishes to pursue these claims, he may choose to do so in state court to the extent possible, but they may not be re−filed in this** |

| | | |
|---|---|---|
| | | **Court. Count 3 is dismissed with prejudice for failure to state a claim. Count 5, 11 (in part), and 12 are dismissed as independent causes of action, without leave to amend. The Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case. See Order for details. Signed by Judge Thomas P. Barber on 4/11/2024. (ANL)** (Entered: 04/11/2024) |
| 04/12/2024 | 28 | NOTICE of Local Rule 1.11(e), which provides that, unless an order states another time, a seal under Rule 1.11 expires ninety days after a case is closed and all appeals are exhausted. To prevent the content of a sealed item from appearing on the docket after the seal expires, a party or interested non−party must move for relief before the seal expires. (Signed by Deputy Clerk). (ELM) (Entered: 04/12/2024) |
| 04/15/2024 | 29 | NOTICE OF APPEAL as to 27 Order on Motion for Miscellaneous Relief, by Daniel A. Frishberg. Filing fee not paid. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(AA) (e−portal) (Additional attachment(s) added on 4/16/2024: # 3 Exhibit C) (AA). (Entered: 04/16/2024) |
| 04/16/2024 | 30 | TRANSMITTAL of initial appeal package to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 29 Notice of Appeal. (AA) (Entered: 04/16/2024) |

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DANIEL A. FRISHBERG,

     Plaintiff,

v.                                    Case No.  8:24-cv-22-TPB-NHA

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES, et al.,

     Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendants University of South Florida Board of Trustees' and HRSE-Capstone Tampa, LLC's motion to dismiss, filed on January 15, 2024.  (Doc. 16).  The Court elected to treat Defendants' response to Plaintiff Daniel A. Frishberg's motion for a temporary restraining order as a motion to dismiss and directed Plaintiff to respond to the motion.  (Docs. 18; 20).  Plaintiff filed his response in opposition on February 6, 2024.  (Docs. 24; 25).  After reviewing the motion, response, court file, and the record, the Court finds as follows:

**Background**[1]

Plaintiff Daniel A Frishberg, a student at the University of South Florida ("USF"), owns a cat which he alleges he uses as an emotional support animal.  USF

---

[1] The Court accepts as true the facts alleged in Plaintiff's amended complaint for purposes of ruling on the pending motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").  The Court is not required to accept as true any legal conclusions couched as factual allegations.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

initially recognized the cat as an emotional support animal and allowed Plaintiff to have the cat in his dorm building.  USF's policies, however, precluded Plaintiff from taking the cat out of his room.  While Plaintiff's filings do not set forth a clear timeline of events, it appears that after Plaintiff allowed the cat outside of his room and into common areas of the dorm, USF imposed a requirement that Plaintiff pay a fee and take educational courses on civility as a sanction for his violation of the rules.  When Plaintiff failed to comply and failed to comply with a directive to remove the animal, Defendants terminated Plaintiff's lease for the room, changed the lock system so that Plaintiff no longer had access to the room, and removed his personal belongings. Plaintiff alleges that there is no comparable, adequate housing available for him.

Plaintiff contends that Defendants' refusal to accommodate his request to have his emotional support animal outside of his room and other actions – including their imposition of sanctions, termination of his rental agreement, and locking him out of his room – constitute discrimination and retaliation in violation of the federal Fair Housing Act ("FHA"), as well as breaches of Defendants' duties under other statutes and common law principles.

On November 28, 2023, Plaintiff filed suit in small claims court in Hillsborough County making essentially the same allegations presented in this case.  On December 19, 2023, Plaintiff filed an amended complaint in that case and a motion seeking essentially the same injunctive relief sought in the instant motion.  The defendants in that case moved to strike the complaint and motion, arguing that the amended complaint was improperly filed without leave of court and that Plaintiff's claims could not properly be brought in small claims court.

That state court suit remains pending, but on January 3, 2024, Plaintiff brought this suit.[2]  In his complaint, he alleges several claims for relief under the FHA, the Florida Fair Housing Act ("FFHA"), the Americans with Disabilities Act ("ADA"), and breach of contract related to the housing agreement.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a).  While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995).  Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

---

[2] Plaintiff filed a motion to proceed *in forma pauperis*, which the Court granted.  (Doc. 5).

As Plaintiff in this case proceeds *pro se*, the Court more liberally construes the pleadings. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2018). However, a *pro se* plaintiff must still conform to procedural rules, and the Court does not have "license to act as *de facto* counsel" on behalf of a *pro se* plaintiff. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

<u>Analysis</u>

***Counts 1, 2, 4, 6, 7, 8, 9, 10, and 13***

In Counts 1, 2, 4, and 6, Plaintiff asserts various violations of the FHA by Defendants. In Counts 7, 8, 9, and 10, he asserts various violations of the FFHA. In Count 13, Plaintiff asserts a "retaliation" claim under either the FHA, the FFHA, or both. However, it appears that Eleventh Amendment immunity bars each of these claims.

The Eleventh Amendment provides a state with immunity from suits by private individuals in federal court unless the state has consented to be sued, the state has waived its immunity, or Congress has abrogated the state's immunity. *Doe v. Florida Gulf Coast Univ. Bd. of Trustees*, No. 2:23-cv-245-SPEC-KCD, 2023 WL 5834865, at *2 (M.D. Fla. Sept. 8, 2023). The USF Board, as the governing body of a state university, is an "arm" of Florida and may be entitled to Eleventh Amendment immunity. *See University of South Fla. Bd. of Trustees v. CoMentis, Inc.*, 861 F.3d 1234, 1237 (11th Cir. 2017) (citing *Williams v. District Bd. of Trustees of Edison Cmty. Coll., Fla.*, 421 F.3d 1190, 1195 (11th Cir. 2005)); *Souto v. Fla. Int'l Univ. Found., Inc.*, 446 F. Supp. 3d 983, 990 (S.D. Fla. 2020) (collecting cases). Defendant HRSE may be entitled to Eleventh Amendment immunity because its only role with respect to this matter is

that it owns the dorm building.  *See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1311 (11th Cir. 2000) (private corporation that is neither controlled nor funded by state may be protected by immunity when clearly acting as agent of state).

Florida has not consented to suit brought in federal court under the FHA or FFHA.  Neither the FHA nor the FFHA contain an explicit waiver of sovereign immunity.  *See* 42 § U.S.C. 3613, *et seq*.; § 760.20, *et seq., F.S.*; *Rattner v. 1809 Brickell, LP*, No. 1:21-cv-23426-KMM, 2022 WL 19331241, at *7 (S.D. Fla. Apr. 18, 2022) ("Nor does the Fair Housing Act, 42 U.S.C. §§ 3601-3631, contain a waiver of sovereign immunity.").  Moreover, as to the FHA, "the language of the Fair Housing Act does not make 'unmistakably clear' that Congress intended to abrogate. It contains no provision evidencing such intent."  *McCardell v. United States HUD*, 794 F.3d 510, 522 (5th Cir. 2015) ("We hold that Congress did not make clear an intent to abrogate States' Eleventh Amendment sovereign immunity from suits brought under the Fair Housing Act. . . .").

Plaintiff argues that Defendants' receipt of federal funds constitutes a waiver of sovereign immunity under the Rehabilitation Act.  But Plaintiff's housing discrimination or retaliation claims in these counts are not brought under the Rehabilitation Act.  And just because the state may waive immunity for one type of claim (such as the Rehabilitation Act) does not mean that it waives immunity for all possible claims (such as those under the FHA or FFHA).

To try to save his suit, Plaintiff argues that *Ex parte Young* establishes an exception to a state's Eleventh Amendment immunity.  However, Plaintiff asserts no §

1983 claims against state officers related to prospective equitable relief and continuing violations of federal law. *See McClendon v. Georgia Dept' of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001). Even if he did, *Ex parte Young* "does not permit suit against state agencies or the state itself, even when the relief is prospective." *Eubank v. Leslie*, 210 F. App'x 837, 844 (11th Cir. 2006).

Therefore, Defendants enjoy Eleventh Amendment immunity as to all of Plaintiff's housing discrimination and retaliation claims. Defendants' motion is granted, and Counts 1, 2, 4, 6, 7, 8, 9, 10, and 13 are dismissed for lack of jurisdiction.

### Count 3 – ADA Sec. 36.302 Violation

In Count 3, Plaintiff appears to assert a claim under Americans with Disabilities Act. Specifically, he cites to 28 C.F.R. § 36.402 and claims that Defendants failed to make "extremely reasonable accommodations" despite numerous requests that would have allowed Plaintiff to have his emotional support animal in the common area. To the extent that Plaintiff's complaint can be interpreted to include a claim under Title II of the ADA, it fails to state a claim as a matter of law.

"Title II of the Americans with Disabilities Act prohibits public entities (which includes instrumentalities of state and local governments . . .) from discriminating against qualified individuals with disabilities." *Sykes v. Cook Cty. Circuit Court Prob. Div.*, 837 F.3d 736, 740 (7th Cir. 2016). The regulations interpreting Title II make a distinction between service animals (for example, "seeing eye" dogs for blind people) and emotional support animals. The regulations specifically provide protections for the use of service animals, but emotional support animals are excluded from coverage. *Maubach v. City of Fairfax*, No. 1:17-cv-921, 2018 WL 2018552, at *6 n.6 (E.D. Va.

Apr. 30, 2018); *see also* <u>28 C.F.R. §§ 36.104</u>; <u>36.302</u>. Consequently, there is no claim under Title II of the ADA related to the denial of an emotional support animal. *See id.*; *Sykes*, <u>837 F.3d at 740</u> ("'Emotional support animals' are not considered service animals which fall under Title II's mandate.") (quotation omitted); *Toma v. 38th Dist. Court*, No. 18-cv-11066, <u>2019 WL 1897157</u>, at *2 (E.D. Mich. Apr. 29, 2019) (dismissing plaintiff's claim that the defendant failed to reasonably accommodate his disability by prohibiting his emotional support dog from entering courthouse); *Baird v. 1600 Church Rd. Condo Ass'n*, No. 17-4792, <u>2017 WL 5570333</u>, at *4 (E.D. Pa. Nov. 17, 2017) ("[T]he ADA does not provide protection for emotional therapy dogs as accommodations for disabilities.").

It is undisputed that Plaintiff's cat is not a service animal. Consequently, any ADA claim fails as a matter of law. Defendants' motion to dismiss is granted as to this ground. Because amendment would be futile, Count 3 is dismissed with prejudice.

### Count 5

The complaint contains a scrivener's error in that it does not include a Count 5, skipping from Count 4 to Count 6. The Court notes this mistake for the purpose of clarity and completeness.

### Count 11

In Count 11, Plaintiff asserts an "intimidation" claim. This is not a recognized cause of action that can be the basis of a lawsuit. To the extent that Plaintiff's allegations pertaining to "intimidation" may support some sort of tortious conduct claim, because Florida has not waived immunity for this type of tort claim, the Eleventh Amendment applies. *See* § 768.28(1), *F.S.* (waiving immunity for actions to

recover damages in tort for "injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee . . . while acting within the scope of the employee's office or employment . . ."); *Terrell v. United States*, <u>783 F.2d 1562, 1565</u> (11th Cir. 1986); *Wells*, <u>2021 WL 883333</u>, at *4 (citing *Schopler v. Bliss*, <u>903 F.2d 1373, 1379</u> (11th Cir. 1990)).  Consequently, Count 11 is dismissed as an independent cause of action and for lack of subject matter jurisdiction to the extent it alleges any tort claim.

### Count 12

In Count 12, Plaintiff seeks "to enforce the law" and requests relief under <u>42 U.S.C. §§ 3613(b)(1)</u>, <u>(b)(2)</u>, and <u>(c)(1)</u>.  Enforcement is not an independent cause of action, and this statutory section merely explains how and when to commence civil actions for discriminatory housing practices, along with the type of relief that may sought.  Count 12 is therefore dismissed to the extent it asserts an independent cause of action.

### Counts 14, 15, 16, and 17

In Counts 14, 15, 16, and 17, Plaintiff asserts breach of contract and related claims.[3]  However, Eleventh Amendment immunity bars Plaintiff's breach of contract claims in federal courts.  *See Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, <u>342 F.3d 1281, 1288</u> (11th Cir. 2003) (holding

---

[3] The Court categorizes Count 14 (fraudulent inducement), Count 15 (breach of implied terms of contract including covenant of good faith), and Count 16 (unconscionability) as contractual claims, although they do not fit perfectly into that category, because Plaintiff essentially asks the Court to find the housing agreement unenforceable against him.  But even if these are not strictly "breach of contract" claims, the Court notes that the state of Florida continues "to enjoy sovereign immunity from quasi-contractual claims such as unjust enrichment" in its own courts.  *Id.* (quoting *Veolia Water N. Am. - S, LLC v. City of Everglades City*, No. 2:18-cv-785-FTM-99UAM, <u>2019 WL 1921900</u>, at *4 (M.D. Fla. Apr. 30, 2019)).

breach of contract claim in federal court was barred on Eleventh Amendment immunity grounds); *Doe*, 2023 WL 5834865, at *2. Consequently, Counts 14, 15, 16, and 17 are dismissed for lack of subject matter jurisdiction.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. Defendants' motion to dismiss (Doc. 16) is hereby **GRANTED**.

2. Counts 1, 2, 4, 6, 7, 8, 9, 10, 11 (in part), 13, 14, 15, 16, and 17 are **DISMISSED WITHOUT PREJUDICE**, without leave to amend, for lack of jurisdiction on the basis of Eleventh Amendment immunity. If Plaintiff wishes to pursue these claims, he may choose to do so in state court to the extent possible, but they may not be re-filed in this Court.

3. Count 3 is **DISMISSED WITH PREJUDICE** for failure to state a claim.

4. Count 5, 11 (in part), and 12 are **DISMISSED** as independent causes of action, without leave to amend.

5. The Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 11th day of April, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

Daniel A. Frishberg
*Pro Se*

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

---

| | |
|---|---|
| | ) |
| Daniel A. Frishberg, | ) |
| *Plaintiff,* | ) |
| v. | ) Case Number: 8:24-cv-00022-TPB-NHA |
| | ) |
| University Of South Florida's Board Of Trustees, | ) |
| HRSE-Capstone Tampa, LLC, | ) |
| *Defendants.* | ) |
| | ) |

---

## NOTICE OF APPEAL

**PLEASE TAKE NOTICE** that Daniel A. Frishberg, hereby appeals to the United States
Court of Appeals for the Eleventh Circuit, from the United States District Court for the Middle
District of Florida. The United States District Court for the Middle District of Florida's April 11,
2024 *Order Granting Defendants' Motion To Dismiss* [Dkt. No. 27]. A copy of the Order
appealed is attached hereto as **Exhibit A,** the Motion that led to the order is attached as **Exhibit
B,** and the *Plaintiff's Reply to The Defendants' Memorandum of Law/Motion To Dismiss* is
attached as **Exhibit C**.

The names of all the parties to the Order and the names, addresses, and telephone
numbers of their counsel are as follows:

Appellant:

> **PRO SE APPELLANT**
> Daniel A. Frishberg
> *Pro Se*
> DanielFrishbergDiscovery@gmail.com

Appellees:

> **Bush Graziano Rice & Hearing, P.A.**
> Sacha Dyson
> 100 S. Ashley Drive, Suite 1400
> Tampa, FL 33602
> (813) 228-7000 (Office Main)
> sdyson@bgrhlaw.com
>
> *Counsel to the University of South Florida, HRSE-Capstone Tampa, LLC,*

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents related to this appeal. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will not receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of this case so that I do not miss a filing; and

6. I understand that this consent applies only to this case and that if there are additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.


Respectfully submitted,
*/s/ Daniel A. Frishberg*
Daniel A. Frishberg
*Pro Se*
April 15, 2024

# CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2024, a true and correct copy of Daniel A. Frishberg's *Notice Of Appeal* of the April 11, 2024 *Order Granting Defendants' Motion To Dismiss* was filed with the Clerk of the United States District Court for the Middle District of Florida and served upon Chambers, and the Defendants in the case.

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg
*Pro Se*
April 15, 2024

# EXHIBIT A:

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DANIEL A. FRISHBERG,

     Plaintiff,

v.                                     Case No.  8:24-cv-22-TPB-NHA

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES, et al.,

     Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on Defendants University of South Florida Board of Trustees' and HRSE-Capstone Tampa, LLC's motion to dismiss, filed on January 15, 2024.  (Doc.  16).  The Court elected to treat Defendants' response to Plaintiff Daniel A. Frishberg's motion for a temporary restraining order as a motion to dismiss and directed Plaintiff to respond to the motion.  (Docs. 18; 20).  Plaintiff filed his response in opposition on February 6, 2024.  (Docs. 24; 25).  After reviewing the motion, response, court file, and the record, the Court finds as follows:

## Background[1]

Plaintiff Daniel A Frishberg, a student at the University of South Florida ("USF"), owns a cat which he alleges he uses as an emotional support animal.  USF

---

[1] The Court accepts as true the facts alleged in Plaintiff's amended complaint for purposes of ruling on the pending motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").  The Court is not required to accept as true any legal conclusions couched as factual allegations.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

initially recognized the cat as an emotional support animal and allowed Plaintiff to have the cat in his dorm building. USF's policies, however, precluded Plaintiff from taking the cat out of his room. While Plaintiff's filings do not set forth a clear timeline of events, it appears that after Plaintiff allowed the cat outside of his room and into common areas of the dorm, USF imposed a requirement that Plaintiff pay a fee and take educational courses on civility as a sanction for his violation of the rules. When Plaintiff failed to comply and failed to comply with a directive to remove the animal, Defendants terminated Plaintiff's lease for the room, changed the lock system so that Plaintiff no longer had access to the room, and removed his personal belongings. Plaintiff alleges that there is no comparable, adequate housing available for him.

Plaintiff contends that Defendants' refusal to accommodate his request to have his emotional support animal outside of his room and other actions – including their imposition of sanctions, termination of his rental agreement, and locking him out of his room – constitute discrimination and retaliation in violation of the federal Fair Housing Act ("FHA"), as well as breaches of Defendants' duties under other statutes and common law principles.

On November 28, 2023, Plaintiff filed suit in small claims court in Hillsborough County making essentially the same allegations presented in this case. On December 19, 2023, Plaintiff filed an amended complaint in that case and a motion seeking essentially the same injunctive relief sought in the instant motion. The defendants in that case moved to strike the complaint and motion, arguing that the amended complaint was improperly filed without leave of court and that Plaintiff's claims could not properly be brought in small claims court.

That state court suit remains pending, but on January 3, 2024, Plaintiff brought this suit.[2]  In his complaint, he alleges several claims for relief under the FHA, the Florida Fair Housing Act ("FFHA"), the Americans with Disabilities Act ("ADA"), and breach of contract related to the housing agreement.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face."  *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint.  *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995).  Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff."  *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case."  *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

---

[2] Plaintiff filed a motion to proceed *in forma pauperis*, which the Court granted.  (Doc. 5).

As Plaintiff in this case proceeds *pro se*, the Court more liberally construes the pleadings. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2018). However, a *pro se* plaintiff must still conform to procedural rules, and the Court does not have "license to act as *de facto* counsel" on behalf of a *pro se* plaintiff. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

<u>Analysis</u>

*Counts 1, 2, 4, 6, 7, 8, 9, 10, and 13*

In Counts 1, 2, 4, and 6, Plaintiff asserts various violations of the FHA by Defendants. In Counts 7, 8, 9, and 10, he asserts various violations of the FFHA. In Count 13, Plaintiff asserts a "retaliation" claim under either the FHA, the FFHA, or both. However, it appears that Eleventh Amendment immunity bars each of these claims.

The Eleventh Amendment provides a state with immunity from suits by private individuals in federal court unless the state has consented to be sued, the state has waived its immunity, or Congress has abrogated the state's immunity. *Doe v. Florida Gulf Coast Univ. Bd. of Trustees*, No. 2:23-cv-245-SPEC-KCD, 2023 WL 5834865, at *2 (M.D. Fla. Sept. 8, 2023). The USF Board, as the governing body of a state university, is an "arm" of Florida and may be entitled to Eleventh Amendment immunity. *See University of South Fla. Bd. of Trustees v. CoMentis, Inc.*, 861 F.3d 1234, 1237 (11th Cir. 2017) (citing *Williams v. District Bd. of Trustees of Edison Cmty. Coll., Fla.*, 421 F.3d 1190, 1195 (11th Cir. 2005)); *Souto v. Fla. Int'l Univ. Found., Inc.*, 446 F. Supp. 3d 983, 990 (S.D. Fla. 2020) (collecting cases). Defendant HRSE may be entitled to Eleventh Amendment immunity because its only role with respect to this matter is

Page 4 of 9

that it owns the dorm building. *See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1311 (11th Cir. 2000) (private corporation that is neither controlled nor funded by state may be protected by immunity when clearly acting as agent of state).

Florida has not consented to suit brought in federal court under the FHA or FFHA. Neither the FHA nor the FFHA contain an explicit waiver of sovereign immunity. *See* 42 § U.S.C. 3613, *et seq.*; § 760.20, *et seq., F.S.*; *Rattner v. 1809 Brickell, LP*, No. 1:21-cv-23426-KMM, 2022 WL 19331241, at *7 (S.D. Fla. Apr. 18, 2022) ("Nor does the Fair Housing Act, 42 U.S.C. §§ 3601-3631, contain a waiver of sovereign immunity."). Moreover, as to the FHA, "the language of the Fair Housing Act does not make 'unmistakably clear' that Congress intended to abrogate. It contains no provision evidencing such intent." *McCardell v. United States HUD*, 794 F.3d 510, 522 (5th Cir. 2015) ("We hold that Congress did not make clear an intent to abrogate States' Eleventh Amendment sovereign immunity from suits brought under the Fair Housing Act. . . .").

Plaintiff argues that Defendants' receipt of federal funds constitutes a waiver of sovereign immunity under the Rehabilitation Act. But Plaintiff's housing discrimination or retaliation claims in these counts are not brought under the Rehabilitation Act. And just because the state may waive immunity for one type of claim (such as the Rehabilitation Act) does not mean that it waives immunity for all possible claims (such as those under the FHA or FFHA).

To try to save his suit, Plaintiff argues that *Ex parte Young* establishes an exception to a state's Eleventh Amendment immunity. However, Plaintiff asserts no §

1983 claims against state officers related to prospective equitable relief and continuing violations of federal law. *See McClendon v. Georgia Dept' of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001). Even if he did, *Ex parte Young* "does not permit suit against state agencies or the state itself, even when the relief is prospective." *Eubank v. Leslie*, 210 F. App'x 837, 844 (11th Cir. 2006).

Therefore, Defendants enjoy Eleventh Amendment immunity as to all of Plaintiff's housing discrimination and retaliation claims. Defendants' motion is granted, and Counts 1, 2, 4, 6, 7, 8, 9, 10, and 13 are dismissed for lack of jurisdiction.

### Count 3 – ADA Sec. 36.302 Violation

In Count 3, Plaintiff appears to assert a claim under Americans with Disabilities Act. Specifically, he cites to 28 C.F.R. § 36.402 and claims that Defendants failed to make "extremely reasonable accommodations" despite numerous requests that would have allowed Plaintiff to have his emotional support animal in the common area. To the extent that Plaintiff's complaint can be interpreted to include a claim under Title II of the ADA, it fails to state a claim as a matter of law.

"Title II of the Americans with Disabilities Act prohibits public entities (which includes instrumentalities of state and local governments . . .) from discriminating against qualified individuals with disabilities." *Sykes v. Cook Cty. Circuit Court Prob. Div.*, 837 F.3d 736, 740 (7th Cir. 2016). The regulations interpreting Title II make a distinction between service animals (for example, "seeing eye" dogs for blind people) and emotional support animals. The regulations specifically provide protections for the use of service animals, but emotional support animals are excluded from coverage. *Maubach v. City of Fairfax*, No. 1:17-cv-921, 2018 WL 2018552, at *6 n.6 (E.D. Va.

Apr. 30, 2018); *see also* 28 C.F.R. §§ 36.104; 36.302.  Consequently, there is no claim under Title II of the ADA related to the denial of an emotional support animal.  *See id.*; *Sykes*, 837 F.3d at 740 ("'Emotional support animals' are not considered service animals which fall under Title II's mandate.") (quotation omitted); *Toma v. 38th Dist. Court*, No. 18-cv-11066, 2019 WL 1897157, at \*2 (E.D. Mich. Apr. 29, 2019) (dismissing plaintiff's claim that the defendant failed to reasonably accommodate his disability by prohibiting his emotional support dog from entering courthouse); *Baird v. 1600 Church Rd. Condo Ass'n*, No. 17-4792, 2017 WL 5570333, at \*4 (E.D. Pa. Nov. 17, 2017) ("[T]he ADA does not provide protection for emotional therapy dogs as accommodations for disabilities.").

It is undisputed that Plaintiff's cat is not a service animal.  Consequently, any ADA claim fails as a matter of law.  Defendants' motion to dismiss is granted as to this ground.  Because amendment would be futile, Count 3 is dismissed with prejudice.

### Count 5

The complaint contains a scrivener's error in that it does not include a Count 5, skipping from Count 4 to Count 6.  The Court notes this mistake for the purpose of clarity and completeness.

### Count 11

In Count 11, Plaintiff asserts an "intimidation" claim.  This is not a recognized cause of action that can be the basis of a lawsuit.  To the extent that Plaintiff's allegations pertaining to "intimidation" may support some sort of tortious conduct claim, because Florida has not waived immunity for this type of tort claim, the Eleventh Amendment applies.  *See* § 768.28(1), *F.S.* (waiving immunity for actions to

recover damages in tort for "injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee . . . while acting within the scope of the employee's office or employment . . ."); *Terrell v. United States*, 783 F.2d 1562, 1565 (11th Cir. 1986); *Wells*, 2021 WL 883333, at *4 (citing *Schopler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990)). Consequently, Count 11 is dismissed as an independent cause of action and for lack of subject matter jurisdiction to the extent it alleges any tort claim.

### Count 12

In Count 12, Plaintiff seeks "to enforce the law" and requests relief under 42 U.S.C. §§ 3613(b)(1), (b)(2), and (c)(1). Enforcement is not an independent cause of action, and this statutory section merely explains how and when to commence civil actions for discriminatory housing practices, along with the type of relief that may sought. Count 12 is therefore dismissed to the extent it asserts an independent cause of action.

### Counts 14, 15, 16, and 17

In Counts 14, 15, 16, and 17, Plaintiff asserts breach of contract and related claims.[3] However, Eleventh Amendment immunity bars Plaintiff's breach of contract claims in federal courts. *See Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1288 (11th Cir. 2003) (holding

---

[3] The Court categorizes Count 14 (fraudulent inducement), Count 15 (breach of implied terms of contract including covenant of good faith), and Count 16 (unconscionability) as contractual claims, although they do not fit perfectly into that category, because Plaintiff essentially asks the Court to find the housing agreement unenforceable against him. But even if these are not strictly "breach of contract" claims, the Court notes that the state of Florida continues "to enjoy sovereign immunity from quasi-contractual claims such as unjust enrichment" in its own courts. *Id.* (quoting *Veolia Water N. Am. - S, LLC v. City of Everglades City*, No. 2:18-cv-785-FTM-99UAM, 2019 WL 1921900, at *4 (M.D. Fla. Apr. 30, 2019)).

breach of contract claim in federal court was barred on Eleventh Amendment immunity grounds); *Doe*, 2023 WL 5834865, at *2. Consequently, Counts 14, 15, 16, and 17 are dismissed for lack of subject matter jurisdiction.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. Defendants' motion to dismiss (Doc. 16) is hereby **GRANTED**.

2. Counts 1, 2, 4, 6, 7, 8, 9, 10, 11 (in part), 13, 14, 15, 16, and 17 are **DISMISSED WITHOUT PREJUDICE**, without leave to amend, for lack of jurisdiction on the basis of Eleventh Amendment immunity. If Plaintiff wishes to pursue these claims, he may choose to do so in state court to the extent possible, but they may not be re-filed in this Court.

3. Count 3 is **DISMISSED WITH PREJUDICE** for failure to state a claim.

4. Count 5, 11 (in part), and 12 are **DISMISSED** as independent causes of action, without leave to amend.

5. The Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>11th</u> day of April, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**DANIEL A. FRISHBERG,**

        **Plaintiff,**

**vs.**                                     **Case No.: 8:24-cv-22-TPB-NHA**

**UNIVERSITY OF SOUTH**
**FLORIDA BOARD OF TRUSTEES, et al.**

        **Defendants.**

_____/

## DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR AN INJUNCTION AND DEFENDANTS' MOTION TO DISSOLVE[1]

Defendants hereby respond in opposition to "Plaintiff's Emergency Motion for [an] Injunction, or in the Alternative, a Temporary Injunction/Restraining Order" (Dkt. No. 4; Injunction Motion) and move to dissolve the temporary restraining order (Dkt. No. 9; Order).  Plaintiff's Motion must be denied and the Order dissolved for the following reasons:  (1) Plaintiff's claims under the FHA are barred by sovereign immunity and the Eleventh Amendment to the United States Constitution;[2] (2) the relief sought related to his registration is moot and was moot at the time of the Court's

---

[1] Defendants file this response pursuant to the Court's order dated January 9, 2024.  Plaintiff has not yet served process on either Defendant, and Defendants reserve the right to assert all arguments under Rule 12 once service is effectuated.

[2] Plaintiff's Injunction Motion appears to be based solely on the Fair Housing Act (FHA).  However, as addressed below, all of Plaintiff's claims fail as a matter of law.  All of the state claims are barred by sovereign immunity, and there is no cognizable claim under the ADA, which is the only other federal claim asserted.

Order;[3] (3) Plaintiff cannot establish subject-matter jurisdiction under Article III because he has made no showing imminent, future injury; and (4) Plaintiff cannot meet the burden to establish the elements of an injunction, including substantial likelihood of success, irreparable harm, or that the injunction serves the public's interest. Accordingly, Plaintiff's Injunction Motion must be denied, and the Court's Order entering a limited temporary restraining order must be dissolved. Defendants' arguments are further set forth in the accompanying memorandum of law.

## MEMORANDUM OF LAW

### I.    Statement of the Facts

#### A.    USF's Policy Regarding Assistance Animals and ESA Agreement

USF maintains a policy regarding animals on campus. (See Declaration of Andrew Johnson ("Johnson Decl."), Ex. 1 at 1). The policy states that "[a]ll animals brought on to any USF campus property must be under physical restraint. The animals must be under the complete control of and physically restrained by the owner/responsible party who is also responsible for ensuring the animal is safe and healthy." (Id. at 1). The policy states that "USF will follow all federal and state laws with regard to accommodations." (Id. at 1). To that end, the policy provides limited exceptions for certain animals, including Assistance Animals:

> Assistance Animals are permitted on campus with approval from the Office of Housing and Residential Education and must be contained within the private residential area (room, suite, and/or apartment) of at all times except when transported outside the private residential area in an animal carrier or

---

[3] Plaintiff previously registered for the Spring term on November 4, 2023, prior to the conduct decision, and the decision had no impact on his registration. (Johnson Decl., ¶ 3).

controlled by leash or harness. Assistance Animals are not permitted in public spaces, classrooms, or work places unless they also meet the definition of Service Animal as provided by law and as permitted as part of an accommodation as provided in this Policy.

(Id. at 4).  The policy further states that, when an animal is permitted, it must be "under the complete control of and physically restrained by the Responsible Party." (Id.). The animal is "not permitted to run at-large on any streets, unimproved lots, or premises within the boundaries of USF properties." (Id. at 3).  The policy explains that, "[i]f an animal disrupts the University educational process, administrates processes, or other campus function, the Responsible Party must remove the animal immediately." (Id. at 4).  Furthermore, the policy cautions that, "[s]tudents in violation of this policy may be referred to Student Conduct and Ethical Development [(SCED)] for disciplinary action." (Id. at 7).

On August 18, 2023, Frishberg signed and agreed to the terms of USF's Assistance Animal Housing Protocol & Agreement. (See Johnson Decl., Ex. 2 "ESA Agreement").  Specifically, the Agreement provided that the Assistance Animal must be controlled by him and must be contained within the residential area at all times, "except when transported outside the private residential area in an animal carrier or controlled by leash or harness." (Id. at 1, subsection b).  Further, "Assistance Animals cannot roam freely in common areas." (Id.).  In addition, Frishberg agreed that he "is responsible for assuring that the approved Assistance Animal does not unduly interfere with the routine activities of the residence or cause difficulties for students who reside there," and that "[s]ensitivity to residents with allergies and to those who fear animals

3

is important to ensure the peace of the residential community." (Id. at 2, subsection l).
Frishberg agreed that he must ensure that the Assistance Animal does not disrupt
others or their personal belongings, display any repeated behaviors or noises that are
disruptive to others, or "[l]eave the owner's room except when accompanied by the
owner." (Id. at 2, subsection m). The Agreement explained that "violation of the
above rules or University Policy may result in immediate removal of the Assistance
Animal from USF System premises and the owner being prohibited from continuing
to keep an Assistance Animal on University property." (Id. at 3, subsection t).

### B.    Frishberg Repeatedly Violates the ESA Agreement and Policy 6-033

On Thursday, October 5, 2023, SCED received a report detailing Frishberg's
open and repeated violations of the ESA Agreement and USF Policy. (See Johnson
Decl., Ex. 3). Specifically, the report explained that, despite reminders of the policy,
Frishberg had allowed his cat to be unrestrained and unaccompanied in the common
lounge area on the 5th floor of the dorm, the floor where Frishberg resided. (Id. at 1).
Prior to this report, a number of students complained to the resident advisor (RA)
about the cat entering the common area and climbing on the counters. (See Johnson
Decl., Exs. 4 and 5). The RA repeatedly warned Frishberg that he was violating the
Agreement and USF policy. (Id.).

Despite the complaints and warnings, Frishberg continued to allow his cat to
enter the common area unrestrained and unaccompanied, which resulted in an
argument over text message between Frishberg and a number of other residents on the

floor on October 5, 2023.[4] (Johnson Decl., Ex. 6; Ex. C). Therein, in response to residents complaining that his cat is loose in the common area, Frishberg asserts that he has to let the cat out, not so that he can use the common area, but to keep the cat happy.[5] (Id.). Specifically, he asserted:

- "Taking a cat outside is basically torture for it." (000005)

- "He gets freaked out when one person walks quickly past him." (000005)

- "Imagine how much of a sensory overload it is for him to step outside into a ton of noise." (000005)

- "He's gotta come out sometimes, otherwise it leads to issues. I don't want to chase him down the hallway every time I open the door."[6] (000007)

- "Bruh if he wants to pop out once every two days so he stops trying to escape he will." (000002)

- "Shadow needs to be let out sometimes, or he isn't happy. It's that simple." (000012)

- "^ if I don't let him out every once in a while, he tries to escape." (Ex. C at 1).

- "He was screaming by the door today so I let him out." (Ex. C at 1).

- In response to a student's suggestion that Plaintiff take the cat outside, Plaintiff responded: "Not really possible. I've tried that and he freaks

---

[4] The text message chain spanned over 200 messages. Screenshots of a portion of the messages are attached as Exhibit 6 to the Declaration of Andrew Johnson and Exhibit C.

[5] For example, on September 14, 2023, when a complaint was brought to Frishberg about "shadow being out," Frishberg responded: "I won't be so 'touchy' with him trying to socialize him." (Johnson Decl., Ex. 4). Thus, Frishberg admits that the cat was out, not to allow Frishberg to use the common area, but to socialize the cat. (Id.). A week later, on September 20, 2023, the RA again reminded Plaintiff of the policy prohibiting him from letting his cat loose to which Plaintiff responded: "My ESA is never outside of my room." (Johnson Decl., Ex. 5). The RA warned him that, if he lets his cat loose, it can lead to documentation. (Id.).

[6] The ESA Agreement also required, "When an Assistance Animal is left in the owner's room without its owner, it must be crated or otherwise appropriately contained." (Johnson Decl., Ex. 2). Plaintiff's statement further admits that he was violating this provision of the agreement.

5

out." He also stated: "Yea not happening. He's gonna run away. Also, cats hate change. And new places." (Ex. C at 2).

(Id.). Although the residents also reminded him that he was violating USF's rules, Frishberg maintained that he did not care and would not abide by the policy:

- "Sorry if I'm being too upfront, but I have certain things I'm not compromising. He will come out some times." (000004)

- "Do you want me to lie and tell you I'll do whatever [RA] says? If so, I can." (000006)

- In commenting about USF policy, Frishberg stated: "Yea, I know. And it's a stupid one. He's going to come out – it's a matter of when. If you don't want him out, we can work out times where he will come out. Otherwise I'll switch back to what I used to do, and just let him out late in the evenings." (000007)

- "Yea being honest, I don't care. He's coming out." (000008)

- In response to comments that Plaintiff may be removed from housing for violating policy, Plaintiff responded: "Ehh not really a risk. They'd need to evict me to do that, and the school year will end before then" (000008)

- "Yea and? The school has a lot of rules. Most of them aren't followed or enforced." (000009)

- "And? They can't do anything without a court order. Including limiting my access to the room." (000010)

- I "will let him out in the evenings. It's that simple." (000011)

- In response to a student's statement that Frishberg is violating policy, Frishberg responded: "Yea idc. He's gonna be out there. I'm going to be polite and try to not do it while you're there." (000012)

(Id.). Frishberg refused to abide by the rules, stated that the cat will be let out, and admitted that he had been letting the cat out since last year and normally let the cat our late in the evenings:

- "He was out last year and no one had an issue with it" (000006)

6

- "He's going to come out— it's a matter of when. If you don't want him out, we can work out times where he will come out. Otherwise I'll switch back to what I used to do, and just let him out late in the evenings." (000007)

- "If they don't like it, it's a them problem." (000012)

(Id.).

Frishberg repeatedly asserted to USF and others that he would not follow the rules. (Id.; see also Johnson Decl., Ex. 4, 16). Given Frishberg's complete disregard for USF's policies, the RA informed Frishberg that she would be submitting an incident report. (See Johnson Decl., Ex. 7). Frishberg responded that he "will let [the cat] out no matter what" because the cat needs to be out. (Id.). He also asserted: "I don't back down, no matter what." (Id.). Later that night, a resident complained that the cat was again on the counter. (See Johnson Decl., Ex. 8). The same resident complained multiple times over the next week that Frishberg let his cat loose in the common area. (Id.).

## C.    SCED Formally Charges Frishberg with Conduct Violations

On October 13, 2023, SCED formally charged Frishberg with violations of the USF Student Code of Conduct[7] provisions on Failure to Comply and Residence Hall Policies. (See Johnson Decl., Exs. 9-10). An informational meeting was held on

---

[7] "The Student Code of Conduct describes standards of behaviors that are counteractive to the goals and mission of the University and the process for how the University will hold students and student organizations accountable to these standards of behavior." (Johnson Decl., Ex. 10). The policy identifies the standards of conduct; explains the student conduct process, including the right to appeal; and the range of sanctions that can be imposed with an educational workshop on the low end and including up to expulsion. (Id.). Failure to comply with USF's policies can also result in the cancellation of the housing agreement. (Johnson Decl., Ex. 16, 18).

October 20, 2023. (Id. at 1; Ex. 11). In this meeting, the charges and allegations were explained, and Frishberg was provided the opportunity to review the available information supporting the charges of violations. (Id. at 3). Additionally, he was informed of his rights and resolution options. (Id.).

Under the student conduct process, Frishberg could elect an administrative hearing before a hearing officer or a formal hearing before a UCB conduct board, which was compromised of two trained students and a faculty member. (Johnson Decl., Ex. 10 at 17-18). Frishberg elected a UCB hearing on October 20, 2023. (See Johnson Decl., Ex. 11 at 3). However, he also stated, "I DO NOT CONSENT to any decision by the conduct board, nor do I agree to be bound by it." (Johnson Decl., Ex. 12).

The following day, October 21, 2023, SCED received another report that Frishberg was once again allowing his cat to roam unrestrained in the common area. (See Johnson Decl., Ex. 13). When an RA instructed Frishberg to comply with USF policy, he said that "he did not care, that [RA] could not do anything, and/or that Resident Frishberg could not get punished." (Id.). During this interaction, "Frishberg shared that the main reason for letting Shadow out of his room was because Shadow constantly whines whenever Resident Frishberg opens the door or whines in the middle of the night." (Id. at 2). He said that it was necessary for him to let the cat loose to be able to keep the cat from whining. (Id.). He also said that the cat could not be taken outside because the cat does not like it. (Id.).

On November 2, 2023, SCED informed Frishberg that his formal hearing was

8

scheduled for November 21, 2023. (See Johnson Decl., Ex. 14).[8] On November 4, 2023, Frishberg registered for classes with USF for the 2024 spring semester. (See Johnson Decl., ¶ 3).

### D. USF Revokes Frishberg's Waiver Because of His Repeated Violations

On November 9, 2023, Johnson informed Frishberg that his waiver to have an animal on-campus was being rescinded because of his violations of the ESA Agreement, specifically, by allowing his cat to roam freely in the residence hall, including the common areas. (See Johnson Decl., Ex. 16). Johnson provided photos showing the cat loose and unaccompanied. (See Johnson Decl., Ex. 17). He informed Frishberg that he must remove the cat by 12:00 p.m. on November 13, 2023, which he extended to 8:00 p.m. (See Johnson Decl., Ex. 16, 18). Johnson warned that failure to comply with this directive would result in further action, including a referral to SCED and/or the cancellation of his Student Housing Agreement. (Id.).

On November 9 and 13, 2023, Frishberg exchanged emails with Johnson, claiming that he misunderstood the Agreement and did not violate it. (See Johnson Decl., Ex. 18). Johnson explained that the Agreement was reviewed with Frishberg when he signed it, and Frishberg acknowledged that he understood the terms and conditions. (Id.). Johnson further explained that the terms clearly state that

---

[8] Frishberg was informed of the procedure for the hearing and his rights, including that the right to review the evidence to be used at the hearing; his right to submit records, exhibits, and written statements for consideration; as well as his ability to present and inquire of the witnesses. (See Johnson Decl., Ex. 14). A few days later, SCED provided Frishberg with a link to access the relevant information that would be presented at the formal hearing. (See Johnson Decl., Ex. 15).

"Assistance Animals cannot roam freely in common areas, which leave no room for misinterpretation." (Id.). Frishberg argued that his cat never roamed freely within the common area, "He mostly was sitting around, and occasionally would peak around a corner/look down the hall with specific intent." (Id.). Johnson warned Frishberg that if the cat was not removed, then he would be forced to issue an administrative dismissal from USF Housing. (Id.). Frishberg asserted that USF's only remedy would be a breach of contract action. (Johnson Decl., Ex. 19). He also stated that "if you go looking for a [legal] fight, you will get a [legal] fight." (Id.).

On November 14, 2023, Frishberg informed Johnson that he unsuccessfully attempted to relocate the cat, and that "[the cat] will be staying here." (See Johnson Decl., Ex. 19). In response, Johnson extended the deadline (a second time) for Frishberg to remove the cat to November 17, 2023, by 2:00 PM. (Id.). Frishberg again failed to remove the cat, contending "he and I will remain here" and he has kept his cat contained even though the cat "has spent 3+ hours a day yelling loudly." (Id.).

On November 17, 2023, after confirming that Frishberg failed to comply with the directive to remove the cat, Johnson informed Frishberg that USF would be administratively cancelling Frishberg's Student Housing Agreement effective Monday, November 27, 2023, at 12:00 p.m. and he needed to checkout by that date. (See Johnson Decl., Ex. 20 at 3–4). Johnson explained to Frishberg that his rent charges would cease as of November 27, 2023, and "a credit would be issued for the balance of the fall term." (Id. at 4). Frishberg responded: "I, and my cat will remain in the dorms until the contract expires (so at the end of the spring term)." (Id. at 1).

10

### E.   USF Finds Frishberg Responsible for Violations of the Student Code

On November 21, 2023, SCED held Frishberg's formal hearing.  (See Johnson Decl., Ex. 21).  Based on the information provided at the hearing, the UCB determined that Frishberg was responsible for the violations of USF policy.  (Id.).  As a sanction, the UCB required that Frishberg complete a one-hour civility workshop and write a reflection assignment.  (Id.).   He was required to pay $25 for the workshop by December 15, 2023.  (Id.).   Frishberg was informed that failure to complete the sanction will result in an administrative hold, which may impact his future ability to register for courses.  (Id.).   However, the sanctions did not cancel any current registration already completed.   (Johnson Decl., ¶ 3).[9] Frishberg asserted that "regardless of what [the] board decided, I am not 'responsible' until a court says otherwise." (Johnson Decl., Ex. 22).   He also stated, "I will not be attending any of the irrelevant purportedly assigned classes without a court order."  (Id.).

### F.   Frishberg Declines USF's Offer of Emergency Housing

On November 27, 2023, after USF had administratively canceled Frishberg's housing agreement, Frishberg failed to check out of his room.  (See Johnson Decl., Ex. 23 at 3).  Johnson notified Frishberg that, because he failed to check out, USF removed ID card access to the residential hall, rekeyed his former room at his expense, and credited him for rent from November 27–December 8, 2023.  (Id.).   Johnson

---

[9] Frishberg also was informed that he had five business days to appeal the determination of responsibility and sanctions.  (See Johnson Decl., Ex. 21 at 2–3).  He did not submit an appeal.  (See Johnson Decl., ¶ 4).

11

informed Frishberg that he must contact USF Police to remove his personal property from the room and complete his check-out by November 29, 2023. (Id.).

Frishberg responded that he and the cat would be returning to campus on November 28 and that USF could not deny him access without a court order. (Id. at 2-3). Johnson explained that Frishberg would need to contact the USF Police to access his room to retrieve his belongings. (Id. at 1). Frishberg responded that he would not be removing his property. (Johnson Decl., Ex. 24 at 2).

On November 28, 2023, USF offered Frishberg emergency housing so he could complete the term. (Id. at 2-3). Frishberg declined USF's offer for emergency housing. (Id. at 2). Instead, he stated, "I want access to my legally rented room, and expect to obtain it via the courts." (Id.). After declining USF's housing offer, Frishberg filed a complaint and emergency motion for injunction in state court under Chapter 83, Florida's landlord-tenant law.[10] (See Exhibit B). On December 4, 2023, USF extended Frishberg's deadline to retrieve his personal belonging to January 8, 2024, to allow him time to secure housing for the Spring term. (See Johnson Decl., Ex. 25).

### G.    Frishberg Refuses to Complete Workshop Sanction

On December 12, 2023, SCED sent a reminder to Frishberg to complete payment for the one-hour workshop to satisfy the sanctions requirement. (See Johnson Decl., Ex. 26 at 2). Frishberg responded, "I will not be doing the workshop,

---

[10] Chapter 83 of the Florida Statutes governs issues related to the Landlord/Tenant relationship. Because Frishberg's residency was incidental to the provision of educational services, Chapter 83 is inapplicable to him. Fla. Stat. § 83.42(1).

or any other 'sanctions' that I was assigned due to letting my ESA out of my room."
(Id.).  USF reminded Frishberg that failure to complete sanctions would result in a
hold being placed on his account.  (Id. at 1).  On December 13, 2023, after the deadline
to file an appeal, Frishberg sent an email to SCED seeking reconsideration of the
conduct decision.  (See Johnson Decl., Ex. 27 at 2).  SCED explained that the window
to appeal the decision had passed, and again encouraged him to complete the assigned
sanction to prevent the hold from being placed on his account.  (Id. at 1).

Since December 13, 2023, Frishberg has pursued his claims against USF in state
court, and filed this duplicative action in federal court on January 2, 2024.  Because
Frishberg refused to complete the assigned sanctions, the conduct hold was entered on
January 2, 2024, as Frishberg was previously warned.  (See Johnson Decl., ¶ 3).
Plaintiff did not complain of this hold until January 8, 2024, at 11:12 a.m. (See Exhibit
A).  At that time, Frishberg sent the undersigned a copy of this Injunction Motion
whereby he represented that he was unable to register for classes due to the conduct
hold.  (Id.).  Plaintiff also requested that USF continue to hold his property until
January 31, 2024.  (Id.).  A little more than hour later, at 12:29 p.m., the undersigned
responded to Plaintiff granting him a third request to extend the time to hold his
property and confirming that the conduct hold on his ability to register for classes had
been lifted.  (Id.).  This email was provided *before* the emergency motion was docketed
by the clerk in this Court.  (Id.).  Yet, Plaintiff made no attempt to inform the Court
or correct the representations made in his Injunction Motion.

Moreover, upon review of Plaintiff's records with the USF Registrar, it was

13

discovered that Plaintiff actually registered for classes for the Spring 2024 term on *November 4, 2023*. (Johnson Decl., ¶ 3). Upon receipt of this information, the undersigned counsel brought this to Frishberg's attention and requested that he correct the representations made to the Court, which he refused to do.

## II.    Legal Argument

### A.    Defendants Are Entitled to Sovereign Immunity

The Eleventh Amendment prohibits federal courts from exercising subject matter jurisdiction in suits brought against a state by a citizen of that state. Pan–Am Tobacco Corp. v. Dep't of Corr., 471 So.2d 4, 5 (Fla.1984). The Eleventh Amendment extends to state agencies and other arms of the state. Univ. of S. Fla. Bd. of Trustees v. CoMentis, Inc., 861 F.3d 1234, 1235 (11th Cir. 2017). State agencies are immune from suit under the Eleventh Amendment unless their immunity is either waived by the state or abrogated by Congress. Gamble v. Fla. Dept. of Health and Rehabilitative Services, 779 F.2d 1509, 1511 (11th Cir.1986). The States or their agencies "retain their immunity against *all* suits in federal court." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). Actions for injunctive relief against a state or its instrumentality are also barred by the Eleventh Amendment. Alabama v. Pugh, 438 U.S. 781 (1978).

Florida defines USF to be a part of the state government. See Fla. Stat. § 1000.21(6)(j). Specifically, the state of Florida has declared that the "boards of trustees [of state universities] are a part of the executive branch of state government." Id. § 1001.71(3). The state therefore clearly defines the USF Board to be a part of its

government.  See CoMentis, Inc., 861 F.3d at 1235.  As it is part of the state, USF is entitled to Eleventh Amendment immunity.[11]

Here, Plaintiff seeks injunctive relief pursuant to the federal Fair Housing Act ("FHA").  (See Injunction Motion at 7–12).  Congress has not abrogated Eleventh Amendment immunity for claims brought under the FHA.  See McCardell v. United States HUD, 794 F.3d 510, 522 (5th Cir. 2015) ("We hold that Congress did not make clear an intent to abrogate States' Eleventh Amendment sovereign immunity from suits brought under the Fair Housing Act . . . ."); Rattner v. 1809 Brickell, LP, No. 1:21-cv-23426-KMM, 2022 U.S. Dist. LEXIS 240669, at *21 (S.D. Fla. Apr. 18, 2022) ("Nor does the Fair Housing Act, 42 U.S.C. §§ 3601-3631, contain a waiver of sovereign immunity."); Hunt v. Ga. Dep't of Cmty. Affairs, No. 1:09-CV-3137-RWS, 2010 U.S. Dist. LEXIS 136444, at *5-8 (N.D. Ga. Dec. 23, 2010).[12]  Because Florida has not waived its Eleventh Amendment immunity for Plaintiff's FHA claims, this Court lacks jurisdiction to issue an injunction.

### B.  The Temporary Restraining Order Must Be Dissolved Because Plaintiff Registered for Spring Term Classes on November 4, 2023

---

[11] Defendant HRSE also is entitled to Eleventh Amendment immunity as its sole role with respect to this matter is that it is the owner of the building.  Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 208 F.3d 1308, 1311 (11th Cir. 2000) ("It is well established that Eleventh Amendment immunity encompasses not only cases in which the State itself is named as a defendant, but also certain actions against state agents and state instrumentalities.").  Plaintiff also has not alleged or provided any evidence that HRSE had any role in or made any of the decisions at issue.  Thus, there is no basis for a claim against Defendant HRSE.
[12] Although Plaintiff does not pursue injunctive relief pursuant to his state law "contract" claims against Defendants, those are also barred by sovereign immunity.  See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1287–88 (11th Cir. 2003).  The only other claim arguably made in the Complaint is a claim under Title II of the ADA.  However, as set forth below, there is no cognizable claim under the ADA for refusal to accommodate an emotional support animal.  And thus, all of Plaintiff's claims fail as a matter of law.

15

In accordance with Rule 65(b)(4) and the Court's Order (Dkt. No. 9), Defendants seek to dissolve the limited temporary restraining order entered in this case. For the same reasons that Plaintiff's claim for injunctive relief fails, the Court should dissolve the temporary restraining order, including the Court's lack of subject-matter jurisdiction over this action.

Moreover, as set forth above, Plaintiff failed to accurately represent the facts in this case. Notably, Plaintiff represented that he was unable to register for classes (see Order at 3-5), but he was, in fact, already registered for classes (Johnson Decl., ¶ 3). Prior to the docketing of his motion, and approximately 90 minutes after he first raised the issue, the undersigned counsel also informed Frishberg that the conduct hold had been lifted. (See Exhibit A). While Frishberg failed to inform the Court, it nonetheless establishes that the relief requested was moot and Plaintiff could not establish "the irreparable nature of the threatened injury"; "clearly show that immediate and irreparable injury, loss, or damage will result to the movant"; or establish the "harm that might result absent a restraining order," which are mandatory prerequisites for the order. Local Rule 6.01(b); Rule 65(b)(1). Therefore, the temporary restraining order must be dissolved.

## C.    This Court Lacks Subject Matter Jurisdiction to Enter Injunction

The irreducible constitutional minimum of Article III standing consists of three elements, as the plaintiff must have: (1) an "injury in fact" that is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) that

16

the injury "will be redressed by a favorable decision." <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561 (1992). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 338 (2016), <u>as revised</u> (May 24, 2016).

Thus, to establish standing, Frishberg must show: "(1) he is likely to suffer a future injury; (2) he is likely to suffer the injury at the hands of the defendant; and (3) the relief he seeks will likely prevent the injury from occurring." <u>Navellier v. Fla.</u>, 672 F. App'x 925, 928 (11th Cir. 2016). Indeed, "because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate – as opposed to a merely conjectural or hypothetical – threat of *future* injury." <u>Shotz v. Cates</u>, 256 F.3d 1077, 1081 (11th Cir. 2001) (recognizing that, in an ADA case, to seek injunctive relief, the plaintiff must show he will suffer future discrimination) (emphasis added); <u>see also</u> <u>United States v. Oregon State Med. Soc.</u>, 343 U.S. 326, 333 (1952); <u>Koziara</u>, 392 F.3d at 1305. "Injury in the past, however, does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment." <u>Shotz</u>, 256 F.3d at 1082; <u>see also</u> <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102-03, 105, 108, 111 (1982); <u>Alabama v. U.S. Army Corps of Eng'rs.</u>, 424 F.3d 1117, 1133 (11th Cir. 2005); <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1337 (11th Cir. 1994). Further, even when past injuries are irremediable, injunctive relief is not available. <u>Alabama</u>, 424 F.3d at 1133. Plaintiff also cannot seek an injunction that simply compels Defendants to obey the law. <u>See</u> <u>Elend v. Basham</u>, 471 F.3d 1199, 1209 (11th Cir. 2006).

17

Here, Plaintiff only complains about the actions taken by USF in the past. Even if Plaintiff could show that these past actions resulted in an irremediable injury, which he has not done, that is not a basis for an injunction. See Alabama, 424 F.3d at 1133. Plaintiff has not marshalled any evidence to show or even sufficiently alleged that Defendant will violate the law in the future—or that such action is imminent or real. Instead, he is merely seeking injunctive relief to purportedly remedy *past* acts. (Injunction Motion at 16–17), which the Eleventh Circuit clearly has held does not provide jurisdiction for this Court to act. Alabama, 424 F.3d at 1133.

### D. Plaintiff Cannot State a Claim for a Preliminary Injunction

To obtain a preliminary injunction, the movant must show that: (1) he has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000). A preliminary injunction is an extraordinary remedy not to be granted unless the movant clearly carries his burden as to the four prerequisites. United States v. Jefferson Cty., 720 F.2d 1511, 1519 (11th Cir. 1983).

### 1. Plaintiff Failed to Show a Substantial Likelihood of Irreparable Injury

Plaintiff has failed to demonstrate that he will be irreparably harmed absent an injunction. Because a showing of irreparable injury is "the sine qua non of injunctive relief," Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990), the absence of a substantial likelihood of

irreparable injury, standing alone, makes preliminary injunctive relief improper, <u>Siegel v. LePore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000). To qualify as irreparable, the injury or harm must be actual and imminent, not remote or speculative. <u>City of Jacksonville</u>, 896 F.2d at 1285. Further, an injury is "irreparable" only if it cannot be undone through monetary remedies. <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1974). Moreover, it is well settled that avoidable harm is not irreparable harm. <u>See</u> <u>Scroos LLC v. AG</u>, No. 6:20-cv-689-Orl-78LRH, 2020 U.S. Dist. LEXIS 171747, at *7 (M.D. Fla. Aug. 27, 2020) ("Self-inflicted wounds do not constitute irreparable harm."). If Plaintiff can mitigate the threatened "irreparable harm," he cannot refuse to do so and yet still claim that he would be irreparably injured absent an injunction. <u>See, e.g.</u> <u>Salt Lake Trib. Publ'g Co. v. AT & T Corp.</u>, 320 F.3d 1081, 1106 (10th Cir. 2003); <u>Air Transp. Int'l LLC v. Aerolease Fin. Group, Inc.</u>, 993 F. Supp. 118, 123 (D. Conn. 1998) ("Even if [the plaintiff] could demonstrate that it would be irreparably harmed, it must also show that it could not prevent such harm."); <u>see also</u> <u>Am. Brands, Inc. v. Playgirl, Inc.</u>, 498 F.2d 947, 950 (2d Cir. 1974) (affirming district court's denial of preliminary injunction to plaintiff seeking to compel defendant to publish plaintiff's ad in its magazine because plaintiff failed to show other, similar advertising space was unavailable).

Here, Plaintiff argues that USF has excluded him from on-campus housing, which he claims is causing him irreparable harm because he is unable to attend university classes in-person due to lack of any housing near campus. (Injunction Motion at 4, 6). He also argues that he will suffer irreparable harm in the form of "missed educational content and time" if USF is allowed to prevent him from enrolling

in and attending classes.  (Injunction Motion at 14).  As an initial matter, USF did not exclude Plaintiff from obtaining housing in the area and did not prevent him from registering for classes.  USF even offered Plaintiff emergency housing to complete the fall term and give him additional time to obtain alternative housing, but he declined the offer.  (See Johnson Decl., Ex. 24 at 4).  Additionally, Plaintiff registered for classes with USF for the 2024 spring semester on November 4, 2023, and remained registered for those classes on January 8, 2024.  (See Johnson Decl., ¶ 3).  The University did not take any action to cancel this registration.  (Id.).  The conduct hold, which was entered on January 2, 2024, and lifted on January 8, 2024, did not impact Plaintiff's registration for these classes.  (Id.).  Further, the conduct hold was entered only because Plaintiff refused to complete a one-hour workshop.  (See Johnson Decl., Ex. 21).  Plaintiff could have appealed the determination of responsibility and sanctions (see Johnson Decl., Ex. 21 at 2–3), but he failed to do so.  (See Johnson Decl., ¶ 4).  Plaintiff has not provided any evidence that housing is unavailable, or that he even searched for alternative housing.  A simple Google search reveals several available housing vacancies near the USF campus.  All of Plaintiff's alleged harms could have been avoided by him.

Additionally, Plaintiff cannot show that monetary damages are inadequate to remedy any alleged harm.  As Plaintiff was registered for classes with USF at the time he filed his Injunction Motion, at bottom, the only injury identified is a financial one— the difference in cost between his USF housing and alternative housing in Tampa. Plaintiff's voluntary decision not to search for alternative housing on his own, does

not establish irreparable harm. See, e.g., Bellin v. La Pensee Condo. Ass'n, No. 05-80071-CIV-MARRA/SELTZER, 2005 U.S. Dist. LEXIS 59287, at *23-24 (S.D. Fla. Oct. 12, 2005) (rejecting plaintiff's assertion "that she will be irreparably harmed if [the association] is permitted to foreclose on her condominium [because] Plaintiff can take a simple step to avoid such an outcome: she can pay the assessments levied by [the association]"). Plaintiff also claims he will suffer irreparable harm if forced to travel to USF "and pick up his stuff," as flights are expensive. (Injunction Motion at 16). Obviously, the fact that Plaintiff attaches a dollar amount to the harm (Injunction Motion at 17) proves that it is not irreparable as a matter of law, even if he cannot afford it. Sampson, 415 U.S. at 90. Plaintiff has not and cannot identify any future injury that could not be remedied by monetary relief, which is fatal to his claim.

### 2. An Injunction Does Not Serve the Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982). Here, Plaintiff's disregard and disdain for USF, its rules, and the effect his behavior had on his peers shows that the public interest would be disserved by an injunction.

Plaintiff repeatedly asserted that he would not follow the rules of the University, even though he expressly agreed to do so when seeking University housing. He taunted other students when they asked him to comply. And he repeatedly asserted that he could not be required to follow the University's rules without a court order. This behavior is directly contrary to fundamental requirements of community living at

21

any university, including USF.  Given Plaintiff's behavior, it certainly would not serve

the public's interest to re-house him when he expressly refuses to recognize the

authority of USF or to abide by the rules that all other members of the community

must honor.  Thus, an injunction, based on these circumstances, does not serve the

interests of the public, even if Plaintiff could establish a lawful basis for his claims or

irreparable harm.  This evidence also establishes that the balance of harm favors USF.

### 3.  Plaintiff Failed to Show a Substantial Likelihood of Success on the Merits

Although the Court need not consider the merits of Plaintiff's FHA claims

because his claim for a preliminary injunction fails for all of the above reasons, even if

considered, Plaintiff failed to show a substantial likelihood of success on the merits of

his FHA claims.[13]  His FHA claims appear to be attempting to state a claim for failure

to accommodate.  To prevail on a reasonable accommodation claim, a plaintiff must

---

[13] To the extent that Plaintiff's Complaint could be interpreted to include a claim under Title II of the ADA, it also fails to state a claim as a matter of law.  The regulations interpreting Title II of the ADA specifically provide protections for the use of service animals and "exclude emotional support animals from coverage under the ADA."  Maubach v. City of Fairfax, No. 1:17-cv-921, 2018 U.S. Dist. LEXIS 73815, at *17 n.6 (E.D. Va. Apr. 30, 2018); see also 28 C.F.R. § 36.104.  The regulations expressly exclude emotional support animals.  Id.  Further, in discussing the modification in policies, practices, or procedures that must be made by public entities under Title II of the ADA, the regulation excludes emotional support animals.  28 C.F.R. § 36.302.  Thus, several courts have recognized that there is no protection or claim under Title II of the ADA related to the denial of an emotional support animal.  See Sykes v. Cook Cty. Circuit Court Prob. Div., 837 F.3d 736, 740 (7th Cir. 2016) ("'Emotional support animals' are not considered service animals which fall under Title II's mandate."); Toma v. 38th Dist. Court, No. 18-CV-11066, 2019 U.S. Dist. LEXIS 72148, at *4 (E.D. Mich. Apr. 29, 2019) (holding that "plaintiff's claim that defendant failed to reasonably accommodate his disability by prohibiting him from bringing his emotional support dog into court shall be dismissed"); Cohen v. Howard, Civil Action No. 23-cv-02104-SBP, 2023 U.S. Dist. LEXIS 204750, at *4-5 (D. Colo. Nov. 9, 2023); Baird v. 1600 Church Rd. Condo. Ass'n, No. 17-4792, 2017 U.S. Dist. LEXIS 191533, at *7 (E.D. Pa. Nov. 17, 2017) (finding that "the ADA does not provide protection for emotional therapy dogs as accommodations for disabilities").  Here, it is undisputed that Plaintiff's cat is not a service animal.  See 28 C.F.R. § 35.104; (Complaint at 3).  As a result, any claim under the ADA fails as a matter of law and cannot support Plaintiff's Motion.

establish that: (1) he is disabled or handicapped within the meaning of the FHA; (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling; and (4) the defendants refused to make the requested accommodation. Schwarz v. City of Treasure Island, 544 F.3d 1201, 1218-19 (11th Cir. 2008).

"To succeed on a failure-to-accommodate claim, a plaintiff must demonstrate that its requested accommodation is 'necessary.'" Rood v. Town of Ft. Myers Beach, Fla., No. 2:20-CV-981-SPC-KCD, 2022 WL 3544398, at *9 (M.D. Fla. Aug. 18, 2022) (citations omitted). "[A] 'necessary' accommodation is one that alleviates the effects of a disability." Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F.3d 1277, 1288 (11th Cir. 2014). However, "[i]f accommodations go beyond addressing [the needs created by the disability] and start addressing problems not caused by a person's handicap, then the handicapped person would receive not an 'equal,' but rather a better opportunity to use and enjoy a dwelling." Schwarz, 544 F.3d at 1226. The law "cannot support" such preferential treatment. Id.; see also Schaw v. Habitat for Human. of Citrus Cnty., Inc., 938 F.3d 1259, 1272 (11th Cir. 2019); Philippeaux v. Apartment Inv. & Mgmt., 598 F. App'x 640, 644 (11th Cir. 2015); Terrell v. USAir, 132 F.3d 621, 627 (11th Cir. 1998). "The inquiry is whether the requested accommodation would provide a disabled person an opportunity . . . that would otherwise—due to his disability—elude him." Schaw, 938 F.3d at 1273. The accommodation must (1) actually alleviate the effects of the plaintiff's disability and (2) address the needs created by the plaintiff's disability. Sailboat Bend Sober Living

LLC v. City of Ft. Lauderdale, 46 F.4th 1268, 1280 (11th Cir. 2022).

Here, Plaintiff cannot show that Defendants failed to accommodate him or that his requested accommodation (allowing the cat to roam or be unrestrained) was necessary.  USF provided Plaintiff a waiver of its policy regarding animal on campus, and allowed Plaintiff's Assistance Animal according to the rules provided in the Agreement.  "[N]othing in the FHA precludes the imposition of appropriate rules and regulations designed to lessen the impact of housing a pet in a no pet building." Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua, 304 F. Supp. 2d 1245, 1259 n.29 (D. Haw. 2003); see also Stevens v. Hollywood Towers & Condo. Ass'n, 836 F. Supp. 2d 800, 809 (N.D. Ill. 2011).  Thus, Plaintiff would need to show not only that he has a handicap that requires him to have his cat, but that his handicap makes it necessary, as a reasonable accommodation, to allow the cat to roam the common area unaccompanied or unrestrained.  Id.  Plaintiff has provided no evidence that this was necessary for him due to an alleged disability.

Plaintiff repeatedly asserted to his fellow students and others that he needed to let the cat out of the room for the comfort of *the cat*, not so he could access a common area.  (See Johnson Decl., Ex. 6, 7, 13; Ex. C).  Indeed, he was not even present as he has admitted.  (Id.).  He did not assert that it was necessary for *his use* of the common areas, but to stop his cat from escaping or whining and because his cat refused to go outside for exercise.  (Id.; see also Johnson Decl., Ex. 13 at 2).  Indeed, the evidence shows that he repeatedly did not accompany the cat, as depicted in pictures, as well as the reports of students who found the cat in the lobby or on the counters.  (Id.).  There

24

51

is no right under the FHA for Plaintiff to allow his cat to roam the hallway, counters, or other common areas. Indeed, to allow Plaintiff to do so, and overtly flout the University's reasonable restrictions, would provide Plaintiff will preferential, not equal, treatment, which is not required under the FHA. Plaintiff was not precluded from having his cat in his private room, nor was he precluded from accessing all of the common areas of the building with a restrained animal. He simply did not want to follow the rules in USF's policy or his Agreement. As such, he has not shown and cannot show a substantial likelihood of success on the merits of his FHA claim.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned hereby certifies that counsel for Defendant has attempted to confer with Plaintiff, but Plaintiff has not responded. Thus, counsel for Defendant has been unable to determine Plaintiff's position regarding this motion. In accordance with the undersigned's obligation pursuant to Local Rule 3.01(g), counsel for Defendant will continue to attempt to confer with Plaintiff and will supplement this certificate when appropriate.

Dated this <u>15th</u> day of January, 2024.

Respectfully submitted,

*s/ Sacha Dyson*
SACHA DYSON
Florida Bar No.: 509191
sdyson@bgrplaw.com

BUSH GRAZIANO RICE & HEARING, P.A.
100 S. Ashley Drive, Suite 1400
Tampa, Florida 33602
TEL: (813) 228-7000
FAX: (813) 273-0091
Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| Daniel A. Frishberg, | ) |
| Plaintiff, | ) |
| v. | ) Case Number: 8:24-cv-00022-TPB-NHA |
|  | ) |
| University Of South Florida's Board Of Trustees, | ) |
| HRSE-Capstone Tampa, LLC, | ) |
| Defendants. | ) |

## PLAINTIFF'S RESPONSE TO THE DEFENDANTS' MEMORANDUM OF LAW/MOTION TO DISMISS

Daniel A. Frishberg, the Plaintiff ("Mr. Frishberg", the "Plaintiff") respectfully files this reply[1] (the "Reply") to the Defendants' Motion To Dismiss filed at ECF Docket No. 16.

## Preliminary Statement

The Defendants raise numerous arguments in their Motion To Dismiss[2] at ECF Docket No. 16, and include a substantial amount of exhibits in the declaration of Andrew Johnson at ECF Docket No. 17 (the "Declaration"). Most of their exhibits, and a large portion of their arguments, are irrelevant[3] to the facts

---

[1] As well as a declaration in support of this reply, which will be filed simultaneously alongside this reply.

[2] ECF Docket No. 16 is titled differently, but pursuant to the order of the Court at ECF Docket No. 20, it is to be treated as a Motion to Dismiss.

[3] The Defendants allege that Plaintiff would be in the common area with his ESA to "keep the cat from whining". That is false. The primary reason why Plaintiff was in the common area with his

of this case as they would be mooted if this Court finds that USF's policy against ESA's in common areas is discriminatory and unlawful. Out of an abundance of caution the Plaintiff will reply to all of their arguments at a later date. The key issue at hand, as the Court noted in the January 16th, 2024 hearing, is the Defendants' arguments regarding the 11th amendment.

The Defendants' actions constitute a violation of the 14th Amendment, as they are denying the Plaintiff equal protection of the law. Federal and State laws are clear that discrimination on the basis of disability is strictly prohibited. The Defendants' policies are in direct violation of numerous state and federal laws mentioned herein, and the violations are ongoing. The Defendants focused on alleged violations of their policies, thereby avoiding one of the key issues that the Plaintiff's complaint raised: whether the Defendants' policies are discriminatory. Even HUD is opening a formal[4] investigation into the Defendants based on the evidence at hand.

---

ESA is to help the Plaintiff with his anxiety, as prescribed by the Plaintiff's doctor. If you were to take the Defendants' actions and policies, and replace the word "ESA" with "crutch" or "wheelchair", nobody would dispute that it would be a textbook definition of discrimination. The Defendants never asked for any documentation about having the Plaintiff's ESA in the common areas, such as the note filed at docket number 15 (attachment 1), and instead they just denied it. The reason this is not mentioned in the various documentation the Defendants provided, is because the Plaintiff did not want to admit to his peers that he has disabilities so as not to be ostracized by the Plaintiff's peers.

[4] HUD conducted a preliminary investigation and chose to file a complaint to open a formal one, and they would not do that unless they believe that discriminatory acts are likely to have occurred (and that they have jurisdiction).

The discrimination that occurred was not exclusive to failing to accommodate[5] the Plaintiff's ESA. The Defendants do not have immunity from liability for numerous reasons, including:

(1) The Defendants waived 11th Amendment immunity to certain claims by accepting federal funding;

(2)  Congress validly abridged States' 11th Amendment immunity;

(3) The doctrine of *Ex Parte Young* allows for suits in federal court against state officials[6] for ongoing violations of federal law, state law and constitutional rights;

(4) 42 U.S. Code § 3613, which allows an "aggrieved person", such as the Plaintiff to "commence a civil action in an appropriate United States district court *or* State court" (emphasis added) and;

(5) For state claims, Florida Statute 768.28 expressly partially waives immunity.

## ARGUMENT

### I.   Purported Immunity To Federal Claims

The Defendants purport that the "Plaintiff's Injunction Motion appears to be based solely on the Fair Housing Act (FHA)." This is not so. In addition to the *Federal* Fair Housing Act the Plaintiff's complaint and Injunction Motion are

---

[5] The Defendants allege that the Plaintiff requested "as a reasonable accommodation, to allow the cat to roam the common area unaccompanied or unrestrained". That is false. As laid out hereinafter in **Section II**, the Plaintiff did not allow his ESA to roam unaccompanied, nor did he request to be allowed to do so.
[6] The Plaintiff can add or remove Defendants to name them individually if necessary.

based on any and all laws that address discrimination against people with disabilities. The Defendants also argue that they have absolute immunity from both Federal and State Courts, which is also incorrect. The 11th amendment does not prevent a Plaintiff from seeking injunctive relief under the doctrine of *Ex Parte Young*. Nor does it bar claims brought under Section 504 of the Rehabilitation Act (29 U.S. § 794[7] (the "RA")[8]), or Title II of the ADA.

### 1. <u>Waiver Of Immunity/Rehabilitation Act</u>[9]

The Defendants' policies against ESA's in common areas[10] are discriminatory *and* ongoing (and will also prevent the Plaintiff from living on campus both this semester, and *in the future*, such as the next academic year). The Defendants' policies require people with ESA's (and by extension, all other people with disabilities) to sign a ***separate*** contract, and have a ***separate*** meeting with a USF staff member, and these actions are discriminatory and unlawful.

---

[7] As well as 42 U.S. Code § 2000d–4a. They are materially similar in their definition of "program" and "activity".

[8] The Plaintiff did not specifically name the RA as a cause of action, but it should fall under "other claims that may exist, but ones that I do not know how to correctly phrase due to my lack of legal training", and "Denial of Dwelling, Failure to Accommodate, Discrimination in the Terms and Conditions of Housing". The RA was also mentioned within Count 7 (a state claim).

[9] The Defendants are attempting to argue that there are no claims that can be brought against them by the Plaintiff. This is false. The RA is mentioned here as it can be brought against them.

[10] The Defendants claim that there were "reports [from] students who found the cat in the lobby or on the counters", are misleading, as initially the Plaintiff's ESA was on counters, but after being asked to not let him onto counters, the Plaintiff did not allow him on counters, and while he was in the lobby, the Plaintiff was there with him (or more accurately, the ESA was there with the Plaintiff).

The Rehabilitation Act ("<u>RA</u>") bans discrimination on the basis of disability from "any program or activity", which, as defined by the RA also includes the Defendant's housing: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, **be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under <u>any</u> program or activity receiving Federal financial assistance**" (emphasis added). Pursuant to 29 U.S.C. § 794, USF is a "program or activity"[11] which receives federal funding. Through the years, the Defendant as a whole has received tens of millions of dollars in direct federal funding.

Thus, the non-discrimination provisions in the RA apply to the Defendants, who fall squarely into the definition of a "program" and/or "activity" under 29 U.S. Code § 794(b)(1), 29 U.S. Code § 794(b)(2), as well as likely 29 U.S. Code § 794(b)(3) and 29 U.S. Code § 794(b)(4).

The Defendants have accepted **_significant_** federal funding for their program (as defined by 29 U.S.C § 794), and as such, their 11th amendment immunity was waived by 42 U.S.C § 12202 for the claims stemming from the ADA/RA/Chapter 126 of USC 42 (and equivalent laws). The Defendants choose

---

[11] Among other things, USF is a "_a college, university, or other postsecondary institution_, or a public system of higher education…. **_any_** part of which is extended Federal financial assistance". (Emphasis added).

to accept significant federal funding, knowing that it came with strings attached (i.e having to comply[12] with federal laws). In *Constantine* the 4th Circuit found that "'a State may waive its Eleventh Amendment immunity….by voluntarily participating in federal spending programs when Congress expresses a clear intent to condition participation in the programs. . . on a State's consent to waive its constitutional immunity." *Litman v. George Mason Univ.*, [](4th Cir. 1999)." This is what occurred in this instance, as by accepting federal funding, the Defendant has waived its 11th amendment immunity.

Defendant USF's newspaper[13] stated that Defendant USF accepted over $100 million in Federal Funding in a single transaction in May of 2021, as well as an additional more than $90 million in 2020, and early 2021. This academic school year (in September 2023), USF received $17 million dollars in Federal Funding[14]. The RA applies to any program or activity receiving "Federal financial assistance". The Defendants have not disputed the fact that they have received significant Federal funding.

---

[12] The Defendants' policies (policy number 6-033) also states that they will comply with "all federal and state laws with regard to accommodations".
[13] https://www.usforacle.com/2021/05/19/usf-receives-over-100-million-in-federal-aid/
[14] https://www.usf.edu/news/2023/usf-receives-17-m-federal-grant-to-help-boost-railroad-workforce.aspx#:~:text=The%20University%20of%20South%20Florida,Infrastructure%20and%20Safety%20Improvement%20program
As well as $3.7 million in February of 2023.
https://stpetecatalyst.com/usf-receives-5-2-million-to-bolster-cybersecurity-workforce/

## 2. **Ex Parte Young**

While Eleventh Amendment immunity is broad, it is not absolute. "To ensure the enforcement of federal law, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins,* [] (2004) (citing *Ex parte Young[15],*[]). Federal courts are thus allowed to order prospective relief, including ancillary measures, but cannot order retrospective relief, such as damages, **unless the state waives its immunity or Congress abrogates the state's immunity** in exercising its powers under the Fourteenth Amendment. *Id.; Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* [](1999)." *Mary's House, Inc. v. North Carolina, Dist. Court, MD North Carolina 2013* (emphasis added). The Defendants have waived[16] their 11th Amendment immunity

A Plaintiff may properly invoke the doctrine of *Ex parte Young[17]* when a "straightforward inquiry" reveals that the plaintiff has alleged an "ongoing

---

[15] *Ex Parte Young* also states "In Smyth v. Ames, 169 U.S. 466 (another rate case), it was again held that a suit against individuals, for the purpose of preventing them, as officers of the State, from enforcing, by the commencement of suits or by indictment, an unconstitutional enactment to the injury of the rights of the plaintiff, was not a suit against a State within the meaning of the Amendment. At page 518, in answer to the objection that the suit was really against the State, it was said: "It is the settled doctrine of this court that a suit against individuals for the purpose of preventing them as officers of a State from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the State within the meaning of that Amendment." The Plaintiff can add or remove Defendants to name them individually.

[16] To the extent that is relevant here. By accepting federal funding, USF has to follow federal law.

[17] In *Ex Parte Young,* (209 US 123) the Supreme Court held that: "The Fourteenth Amendment provides that no State shall…… deny to any person within its jurisdiction the equal protection of the laws." That is what occurred here. Defendant USF, which is "a part of the state government," denied the Plaintiff equal protection of the laws. The laws include both state, and federal laws. The protection of the laws that was denied to the Plaintiff include the Florida Fair Housing Act, Federal Fair Housing Act, as well as other federal and state anti-discrimination laws.

violation" of federal law. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* [] (2002) (citation omitted). The Plaintiff has alleged numerous ongoing violations of Federal law[18].

The Supreme Court in *Frew v. Hawkins*, (540 US 431, 2004) stated that "to ensure the enforcement of federal law….**the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law**. *Ex parte Young, supra*. This standard **allows courts to order prospective relief**, see *Edelman v. Jordan*, [](1974); *Milliken v. Bradley*, 433 U.S. 267 (1977), as well as measures ancillary to appropriate prospective relief, *Green v. Mansour*, [](1985)." (italics are originally there, bold is added emphasis).

### 3. <u>Abridgment of Immunity</u>

Congress' abridgment of States' 11th amendment immunities, while relevant, is likely redundant in this instance, as USF has waived its immunity by accepting federal funding. Out of an abundance of caution, the Plaintiff will address it anyways.

---

[18] The Defendants admitted to some violations (requiring the signing of a separate contract, a separate meeting for people with ESA's, the disclosure of the disability, and severity of the disability, and the usage of a "required questionnaire", etc). In short, the Defendants treated people with disabilities differently than everyone else (amounting to discrimination against people with disabilities).

Congress has validly[19] abrogated states' immunity for violations of the RA through 42 U.S.C. § 2000d-7[20]. Also, the Court in *Garrett*, while insulating States from damage claims under Title I of the ADA, **explicitly** noted that they would remain liable for prospective injunctive relief[21].

The Defendants actions, combined with the lack of availability for alternative housing cause what the Defendants argue would only be discrimination under the FHA, to be discrimination under the ADA as well as various other federal codes, as it excludes the Plaintiff from *any* activity which takes place in person. The Defendants' sovereign immunity does not unilaterally protect them from federal[22] suits brought for violations of federal law (seeking to enforce the law). Also, specifically for violations of Title II[23] of the ADA[24], Congress validly waived 11th Amendment immunity for states under 42[25] U.S.C.

---

[19] The Fourth Circuit has held section 2000d-7 to be "an unambiguous and unequivocal condition requiring waiver of Eleventh Amendment immunity" that "does not violate any other constitutional command." *Constantine v. Rectors & Visitors of George Mason Univ.* (4th Cir.2005).

[20]"A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the [RA.]"

[21] 531 U.S. at 374 n.9; *see also U.S. v. Georgia*, 546 U.S. at 160 (Stevens, J. concurring) ("the state defendants have correctly chosen not to challenge the Eleventh Circuit's holding that Title II is constitutional insofar as it authorizes prospective injunctive relief against the State").

[22] The Defendants' immunity partially protects them from state monetary claims, and protects them from some federal monetary claims.

[23] There is a lack of clarity on how to apply the congruence and proportionality tests in specific cases, but the Supreme Court ruled that Title II of the ADA validly abrogated the States' Eleventh Amendment immunity in T*ennessee v. Lane*, 541 U.S. 509 (2004). It is not like the Plaintiff is asking the Defendants to rebuild the building, but simply change a minor policy that was not even enforced last year.

[24] In the ADA, Congress found that people with disabilities have the "right to *fully* participate in *all* aspects of society" (emphasis added).

[25] *See* **42 US. Code Subchapter II Violations** (below).

§ 12202. Nor does the 11th Amendment protect them from claims under 42 U.S. Code Subchapter II as a whole.

The Defendants argue that simply because the Plaintiff's  assistance animal is not a service animal, meaning that: "any claim under the ADA fails as a matter of law". The Defendants are incorrect. Even if the Defendants are correct that the Plaintiff cannot bring *any* claims for relief (both monetary and injunctive), in *any* form under the FHA[26], that does not mean that the discrimination did not occur, nor does it make the discrimination magically vanish[27].

The ADA was intended by Congress[28] to be broad, and to cover *any* discrimination (on the basis of their disability) against people with disabilities[29]. The Discrimination that occurred was not exclusive to failing to accommodate the Plaintiff's ESA. While the Plaintiff likely cannot bring a claim <u>under the ADA</u> <u>solely</u> for a failure to accommodate his ESA, that does not mean he cannot bring

---

[26] The Defendants argue that the Plaintiff's accommodation (being in the common area with his ESA) was not necessary. The Plaintiff's Dr. disagrees. The Defendants' allegations of the Plaintiff purportedly requesting to have his ESA roam the halls unattended are baseless, as he has not requested anything remotely similar to that.

[27] By excluding the Plaintiff from university housing (a part of the federally funded program), the Defendants have de facto excluded him from attending school in person, which is illegal under the ADA, and RA. Just as a single criminal act can constitute multiple crimes, an act of discrimination can (and usually does) violate numerous anti discrimination statutes. 42 U.S. Code § 2000a–6 also grants district courts "jurisdiction of proceedings instituted pursuant to this subchapter".

[28] *See* 42 U.S. Code § 12101.

[29] Including in housing. Congress' findings that "discrimination against individuals with disabilities persists in such critical areas as… housing, public accommodations, education[], recreation, []and access to public services;" are just as accurate then, as they are now (at least at USF).

that claim under *other* laws, nor does it mean that he cannot bring claims[30] under

the ADA for other things, such as the de facto exclusion from any in person

classes. The Plaintiff's ESA is a treatment method/tool to help him with the

symptoms of his disability[31].

### 4. Future Harm

There is also a direct threat of **future** harm, as the Plaintiff has been, *and*

*will continue to be* denied the ability to live in on campus housing, because he

allegedly broke policies which are discriminatory, and unlawful. This is harmful

for numerous reasons, as *according to the Defendants' own website, there are*

*academic (as well as social) benefits to living on campus*. USF, on it's website[32],

---

[30] The Supreme Court in *United States v Georgia* (2006) addresses claims made by the Defendants about how they purportedly are immune from all non-ADA Title II claims. They held that: "no one doubts that § 5 grants Congress the power to "enforce . . . the provisions" of the [Fourteenth] Amendment by creating private remedies against the States for *actual* violations of those provisions. "Section 5 authorizes Congress to create a cause of action through which the citizen may vindicate his Fourteenth Amendment rights." []) (citing the Ku Klux Klan Act of April 20, 1871, 17 Stat. 13); see also *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) ("In [§ 5] Congress is expressly granted authority to enforce . . . the *substantive provisions* of the Fourteenth Amendment" by providing actions for money damages against the States (emphasis added)); *Ex parte Virginia*, 100 U.S. 339, 346 (1880) ("The prohibitions of the Fourteenth Amendment are directed to the States . . . . It is these which Congress is empowered to enforce . . .")" (emphasis in original). Congress validly abridged States' 11th Amendment immunity to allow for "aggrieved persons" (as 42 U.S. Code § 3613 puts it) to bring lawsuits against states which violated U.S.C. 42 Chapter 126. Congress' intent was to prevent discrimination against people with disabilities totally and completely.

[31] The argument the Defendants are trying to make is similar to someone arguing that they were not discriminating against a person with a wheelchair because of their disability, but discriminating against the wheelchair itself. In short, it is an argument that is not based in logic, law, or precedent.

[32] https://www.usf.edu/housing/resources/faq.aspx (Accessed January 21st, 2024). [Under "Campus Life"].

advertises multiple *unique* benefits[33] to living on campus, including academic

benefits for the student. USF clearly takes the position that living off campus

does not "get [you] the full college experience", and that off campus housing is

not comparable.

USF's website[34] also states that "[l]iving on campus will **contribute to your**

**learning and academic success**, provide many **opportunities for involvement**,

create lifelong friendships, and offer conveniences **only experienced when living**

**on campus**!" (emphasis added).

The Defendants have previously stated[35] that they would never allow the

Plaintiff to reside in on campus housing[36]. The Defendants are attempting to

argue that the harm done to the Plaintiff is all in the past, which is incorrect. The

Plaintiff will be excluded from the ability to participate in a program (defined as

*any* of the operations of a college or university, which includes housing), due to

his disability (which requires an assistance animal to help him). The Defendants

---

[33] A tab labeled "What are the benefits of living on campus?" states: "Everything is included when you live on campus, and everything is right outside your door. **National research shows that students who live on campus for at least a year graduate at higher rates, and sooner, than those who don't**. That's what it's all about! The campus experience connects you **in a way no other living option can**. When you live on campus, you get the full college experience. **When you live off campus, you don't.**" (emphasis added).

[34] https://www.usf.edu/housing/resources/policies.aspx (Accessed on January 21st, 2024).

[35] Email sent at 2pm on December 7th, 2023.

[36] "The University has issued a final university decision that permanently ended your current **and *any* future assignment in university housing**". (emphasis added). In the same email the Defendants also stated that "the university will not reconsider this final university decision".

are also incorrect in their assertion that the Plaintiff's requested accommodation was to allow his ESA to roam the halls unaccompanied[37].

By denying the Plaintiff  reasonable accommodation (under the FHA), the Defendants are both discriminating against the Plaintiff by preventing him from benefiting from a public program (while accepting federal funding), and are de facto excluding him from attending school in person[38].

The Plaintiff has been unable to find any housing near campus <u>for this semester</u>[39]. *Even if* the Plaintiff was to find housing off campus for next semester, it would not be comparable, as according to the Defendants "[t]he campus experience connects you **in a way no other living option can**" (emphasis added). According to the Defendants "[w]hen you live on campus, you get the full college experience. When you live off campus, **you don't.**" (emphasis added).

---

[37] The Plaintiff requested to be allowed in the common area with his ESA, **not** to let his ESA do whatever it wanted in the common area. The Plaintiff also disputes their assertions that he allowed his ESA to be outside of his room unattended.

[38] The Defendants make it appear that the Plaintiff is choosing to not attend classes in person, which is categorically false. There is no availability in off campus housing which is comparable to the on campus housing. The ADA does not have special protections for ESA's, but it does have protections against discrimination against people with disabilities, including in education, and public programs. The Defendants' eviction of the Plaintiff de facto excludes him from any in person activity, including classes.

[39] The Defendants state that a quick google search will show housing near campus, which while technically true, is *extremely* misleading, since once you actually go the the websites of the places purporting to having the availability, you will see that the *only* availability is for the 2024-2025 academic year, and most of it has already been reserved. The harm the Plaintiff will suffer is not the monetary difference between on campus, and off campus housing. It is non-monetary harm, since there is no availability in housing, which means that the Plaintiff will be unable to attend classes.

The Defendants also argue that any discrimination is in the past. **Not so**.
As stated throughout, the semester is ongoing, and the Plaintiff will also be
*forever* denied the opportunity to live on campus.

### 5. 42 U.S. Code Subchapter II Violations

The Defendants have committed numerous violations of 42 U.S.C.
Subchapter II[40]. The Defendants' actions may also constitute a violation of 42 U.S.
Code § 2000a[41], as <u>according to the Defendants</u>[42], USF housing is transient in
nature[43]. The Plaintiff was denied the benefits[44] of the services (living on campus,

---

[40] 42 U.S. Code § 12132 states that: "subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity".

[41] 42 U.S. Code § 2000a applies to "other establishment[s] which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence".

[42] The Defendants in *United States of American v UNIVERSITY OF NEBRASKA AT KEARNEY*, *et al.*, case number 4:11-CV-3209 also attempted to argue that university housing was transient in nature, the District court disagreed and stated that: "That result is simply unsupported by the statutory language, not to mention Congressional intent. See id. UNK's students obviously do not intend to live in university housing for the rest of their lives. But they do intend to live in university housing for extended periods of time that are roughly comparable to many other residential living situations. And that is all the FHA requires."

[43] While the Plaintiff disagrees with the characterization of USF housing as for transient guests, if their characterization is to be taken at face value, their actions would be a violation of 42 U.S. Code § 2000a.

[44] The Defendants may have also violated 42 U.S. Code § 2000a–2, which addresses retaliation/interfering with people exercising "any right or privilege secured by section 2000a or 2000a–1 of this title". In short, there are many, many potential claims that the Plaintiff can bring which are not affected by the Defendants' 11th Amendment immunity.

and being able to attend classes) of a public entity (USF) because of his

disability[45].

## 6.  State Claims

The Defendants claim that: "all of Plaintiff's claims fail as a matter of law.

All of the state claims are barred by sovereign immunity, and there is no

cognizable claim under the ADA, which is the only other federal claim asserted".

That is incorrect. The State Claims are not barred by sovereign immunity, and at a

minimum may be brought in state court (with some limitations such as no

punitive damages)[46].

## 7.  Defendant HRSE

The Defendants argue that claims[47] against HRSE Capstone should be

dismissed because there is no basis for claims against them. That has yet to be

seen as discovery has not yet occurred.

---

[45] To help treat the Plaintiff's disability, his doctor prescribed/assigned him an ESA (See ECF Docket No. 15, attachment 1). Much in the same way that people are prescribed medications to treat symptoms of various issues, the Plaintiff's ESA helps treat the symptoms of his disabilities.
[46] Some of the claims stem from the Housing Agreement, which is a contract. Florida Statutes Section 768.28 partially waives sovereign immunity on behalf of the state "and for its agencies or subdivisions", but only  "to the extent specified" within Section 768.28 (within State court).
[47] HRSE was likely involved in deciding the policies of what went on inside of the buildings which they own. HRSE certainly was complicit with the discriminatory policies, since presumably they would have to approve the enforcement of rules inside buildings which they owned.

# II. Response to Defendants Claims and Title II of the ADA Claims

The Plaintiff may have improperly plead numerous claims[48], including Title II of the ADA, but this Court should not dismiss his claims/case simply because he did not plead it well[49]. The Plaintiff believes that he has stated enough facts, information, and statutory support to adequately plead it. This Court will hopefully "liberally" construe his claims, as the law provides[50].

The Defendants have not met the burden required to establish that this Court does not have jurisdiction because of the 11th Amendment. Even if the Plaintiff is unable to bring a claim for any monetary damages, Federal Courts are able to grant injunctive relief when Federal law is being violated. The Defendants also have not met the high standard required to dismiss a case at the pretrial phase.

---

[48] Including not specifically naming several claims in the Plaintiff's original complaint. This Court may interpret this as a request to amend the complaint under FRCP Rule 15, but the Plaintiff is unsure if that is necessary.

[49] As the Supreme Court said in *Haines v. Kerner*, "a pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" 404 U.S. 519, 520-521 (1972), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[50] The Supreme Court has instructed the federal courts to apply the standard that a pleading filed pro se is "to be liberally construed." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Sause v. Bauer,* 138 S. Ct. 2561, 2563 (2018) (per curiam) (holding that "[i]n considering the defendants' motion to dismiss, the District Court was required to interpret the pro se complaint liberally"); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).

## 1. Defendants' Allegations Are Largely Misleading[51], Wrong, or Irrelevant

The Defendants heavily focused on alleged violations of their policies[52], and completely avoided one of the main issues that the Plaintiff's complaint raised, which is the question of whether the policies are discriminatory. Some of their allegations were completely wrong and misleading, while others were irrelevant. At no time did the Plaintiff let his ESA go outside of his room to simply roam as the ESA pleased[53]. The only time that the Plaintiff allowed the ESA out of his room was when he would take the ESA with him. Exhibit 17 of the Johnson Declaration is intentionally misleading[54], as it deliberately omits the third screenshot that was sent to the Plaintiff, but not shown to the court, which shows the Plaintiff accompanying his ESA in the corridor[55] (*See* **Exhibit A**). The Defendants incorrectly rely on the Plaintiff's signing of the ESA Agreement to support their arguments and policies[56].

---

[51] The Defendants argue that "[Plaintiff] repeatedly asserted that he could not be required to follow the University's rules without a court order", which is false. The Plaintiff simply believes that the Defendant's policy of banning ESA's in common areas is illegal, and therefore would not comply with this narrow policy. The Plaintiff never said that he would not follow non-ESA related policies/rules. To the contrary, he followed the rules much better than a lot of his peers (he did not play loud music at all hours of the day and night, etc).

[52] The Defendants have not alleged a single rule/policy violation that is not related to the ESA (i.e not following instructions to remove ESA from common area).

[53] The Defendants claim that the Plaintiff admitted to allowing his ESA to roam alone, which is **false**. The Plaintiff's email to the Defendants specifically says that "[m]y ESA did <u>slip</u> out a few times <u>**when I did not notice**</u>" (emphasis added).

[54] The Plaintiff was told that he cannot have his ESA outside of his room unless it was being transported in a carrier numerous times, including by USF's RA (an employee of USF, who lived on the same floor as the Plaintiff).

[55] The view of the common area is blocked by the wall with the bulletin board on it.

[56] The ESA Agreement is unenforceable, void and illegal (for numerous reasons, such as the ones laid out in the Complaint, which the Plaintiff incorporates by reference herein). To the

The Plaintiff incorporates by reference all previously made arguments, including about how discriminatory conduct banned under the FHA lead to the Plaintiff being excluded from numerous programs, activities, and the benefits of them.

The Defendants' arguments and exhibits are attempting to obscure the facts that their policies and actions are discriminatory under the Fair Housing Act[57], and numerous other statutes. The *actual* issue at hand is not if the Plaintiff violated the Defendants' policies, but whether those policies are discriminatory and therefore illegal.

## 2. "Misrepresentations" to the Court

The Defendants purport that the Plaintiff misrepresented facts to the court, which is categorically false. The Plaintiff told the court that the academic hold prevented him from registering for classes, and that he needed to register for online classes, all of which is (and was) true.

## 3. Appealing Disciplinary Board Decision

---

contrary, treating people with assistance animals differently than people without them is illegal and discriminatory.

[57] The Defendants falsely claim that the Plaintiff cannot provide any evidence that his requested accommodation was necessary. Contrary to what the Defendants argue, the Plaintiff did not request to be allowed to let his cat roam the halls, he requested to be able to be in the common area with his ESA. The option to have the ESA in the common area if it was on a leash was not offered to the Plaintiff.

The Johnson Declaration states that the Plaintiff did not appeal the decision of the disciplinary board, which while correct, is irrelevant. Any appeal of that decision would have led to the same outcome anyways, since the Defendants already made up their mind. Not appealing the board decision does not impact the Plaintiff's ability to bring claims in this (or any other) court[58].

The Defendants' claims that the Plaintiff cannot show any imminent future injury is also incorrect. (*See* Section I. **Future Harm** generally)

### 4.  Purported Rule Violations/Allegations by Defendants

The Defendants argue that an injunction (which would enjoin them from enforcing discriminatory policies, and harming the Plaintiff) is not in the public interest. To the contrary, it is in the public interest to prevent discriminatory action.

The Defendants further allege that the Plaintiff "expressly refuses to recognize the authority of USF", which is completely false. The Plaintiff recognizes that the Defendant has rules, which rules must be followed. However, the Plaintiff challenges the Defendant's purported authority to implement policies which are in direct violation of both state, and federal law (as well as HUD guidance). Rules and policies which are illegal are void and unenforceable.

---

[58] Pursuant to 42 U.S. Code § 2000a–6 "The district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this subchapter and **shall exercise the same without regard** to whether the aggrieved party shall have exhausted any administrative or other remedies that may be provided by law." (emphasis added).

### 5. Title II of the ADA and Similar Claims

The Defendants argue that "in discussing the modification in policies, practices, or procedures that must be made by public entities under Title II of the ADA, the regulation excludes emotional support animals."[59] While this is true, it is not the issue at hand. Discrimination against the Plaintiff's ESA (under the FHA) led to a situation where it is discrimination under other acts as well. All of the laws are applicable, and the Plaintiff has the right to bring claims under them separately. The spirit of the ADA is to prevent discrimination. By discriminating against the Plaintiff (under the FHA), it leads to a situation where it is discrimination under the ADA as well, since the Plaintiff is de facto excluded from in person classes this semester, and is *forever* barred from on campus housing.

/s/*Daniel A. Frishberg*

Daniel Frishberg, *Pro Se*

February 6, 2024,

Santa Clara County, California

---

[59] The Defendants also cite 28 C.F.R. § 36.104. 28 CFR § 36.103 (especially subsection b) should be considered, as the section "does not affect the obligations of a recipient of Federal financial assistance to comply with the requirements of section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) and regulations issued by Federal agencies implementing section 504." *See also* § 36.103(a) and § 36.103(c).

Response **Exhibit A**[60]:



---

[60] This is the image that was provided to the Plaintiff by the Defendants, which they specifically omitted from Exhibit 17 of the Johnson Declaration.