**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| Daniel A. Frishberg, | ) |
| Plaintiff, | ) |
| v. | ) Case Number: 8:24-cv-00022-TPB-NHA |
| | ) |
| University Of South Florida's Board Of Trustees, | ) |
| HRSE-Capstone Tampa, LLC, | ) |
| Defendants. | ) |

## PLAINTIFF'S AMENDED COMPLAINT

Daniel Frishberg, the Plaintiff ("Mr. Frishberg", the "Plaintiff") respectfully files this complaint (the "Complaint") against the University of South Florida's Board of Trustees ("USF"), and HRSE-Capstone Tampa, LLC, together, the "Defendants", seeking relief under Section 504 of the Rehabilitation Act (29 U.S. § 794), (the "RA").

## THE PARTIES

1. Plaintiff is an individual with a disability within the meaning of the Rehabilitation Act who requires an Emotional Support Animal ("ESA") to manage symptoms of his disability.

2. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the laws of the United

1

States. This Court has personal jurisdiction over the Defendants because the acts and omissions giving rise to this Complaint occurred within this District.

3. Defendant University of South Florida is a recipient of federal financial assistance and, by accepting such assistance, has waived its sovereign immunity under the Eleventh Amendment with respect to claims brought under Section 504 of the Rehabilitation Act.

4. Defendant HRSE-Capstone Tampa, LLC ("HRSE") is the owner of the on-campus housing facilities at which the events giving rise to this Complaint occurred. These facilities are used as part of the University of South Florida ("USF") housing program, a program or activity operated by a recipient of federal financial assistance.

5. As the owner of facilities used in connection with this federally funded program, HRSE had an ongoing duty under the Rehabilitation Act to ensure that its facilities were operated in a non-discriminatory manner. HRSE ceded operational control of the facilities to USF but failed to exercise appropriate oversight to ensure that policies affecting individuals with disabilities were applied in compliance with the Rehabilitation Act.

6. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(2), because a

substantial part of the events and omissions giving rise to the claims occurred in Tampa, Florida, within this judicial district.

## **BACKGROUND AND PROCEDURAL HISTORY**

7. The Plaintiff filed this action on January 2nd, 2024.

8. Following Defendants' placement of an academic hold on his account, Plaintiff filed his *Emergency Motion For An Injunction, Or In The Alternative, A Temporary Restraining Order*, on January 8th, 2024.

9. The District Court issued an emergency TRO on January 9th, 2024.

10. Prior to the hearing on the TRO, Defendants filed a motion to dissolve the Temporary Restraining Order. The District Court interpreted this motion as a Motion To Dismiss.

11. In response, Plaintiff, proceeding *pro se*, requested that the Court construe his pleading as including a claim under the Rehabilitation Act, 29 U.S.C. § 794, or, in the alternative, grant him leave to amend to add such a claim. Plaintiff asserted that Eleventh Amendment immunity would not bar a Rehabilitation Act claim.

12. The District Court granted the motion to dismiss, ruling that Defendants were immune from Plaintiff's Fair Housing Act and Florida law claims pursuant to the Eleventh Amendment.

13. The District Court's dismissal order did not address Plaintiff's request concerning the Rehabilitation Act claim.

14. Plaintiff appealed to the Eleventh Circuit Court Of Appeals (the "<u>Eleventh Circuit</u>").

15. On appeal, the Eleventh Circuit vacated the District Court's dismissal in part and remanded in part, directing the Court to permit Plaintiff to amend his complaint to assert a claim under the Rehabilitation Act.

## **STATEMENT OF FACTS**

16. Plaintiff was previously permitted to reside in on-campus housing before obtaining his ESA.

17. On June 9, 2023, Plaintiff received conditional approval for his Emotional Support Animal ("ESA") to reside in on-campus housing. (*See* **Exhibit A**)

18. On August 10, 2023, Plaintiff's ESA accommodation was fully approved.

19. The ESA approval process included separate contracts and meetings specific to ESA accommodations, as required by Defendants' policies. (*See* **Exhibit D**).

20. Following the approval of his ESA accommodation, and prior to the cancellation email, Defendants began stating that Plaintiff was violating university policy by having his ESA in the common areas of his dwelling, and threatened disciplinary action including writeups, being reported to

4

the supervisor of the RA's, and "disciplinary proceedings" before the University Conduct Board ("<u>UCB</u>").

21. Defendants' representatives repeatedly asserted that Plaintiff and his ESA were prohibited from the common areas of his dwelling (or anywhere inside of the building that was outside of his room) unless the ESA was <u>in a carrier for limited transport purposes</u>, such as veterinary visits. Plaintiff made repeated good-faith attempts to reach a reasonable compromise regarding his ESA's access to common areas, including proposing limited times and specific locations, such as the shared "living room" areas. Defendants refused to consider any modification or alternative accommodation. Plaintiff consistently maintained his right to have the ESA as a reasonable accommodation.

22. As a direct result of Defendants' threats, Plaintiff was deterred from using the common area of his dwelling with his ESA, and spent significantly less time using that common area, than he did before the threats of disciplinary action started.

23. Plaintiff complied with all applicable housing rules and requirements unrelated to his ESA.

24. In subsequent court filings, Defendants asserted that Plaintiff could have placed his ESA on a leash to access common areas; however, this option was never communicated or made available to Plaintiff.

25. On November 9, 2023, Defendants sent an email purporting to rescind Plaintiff's ESA accommodation. The email set a deadline of November 13, 2023, at noon for Plaintiff to remove the ESA from campus housing. (*See* **Exhibit B**).

26. That email attached three contemporaneous screenshots from the same dorm camera (RPN 5th Floor Elevator 39-3045) at 10:07:03 PM, 10:07:15 PM, and 10:07:30 PM (GMT-04). Defendants entered only[1] the first two screenshots into the record as Exhibits 17 and 18 of the Johnson Declaration. Plaintiff separately attempted to enter the third screenshot (taken at 10:07:30 PM), currently labeled **Exhibit K**, into the record by attaching it as an exhibit and referencing it in filings.

27. **Exhibit K** clearly shows Plaintiff present at his doorway with his ESA coming toward him, directly contradicting Defendants' implication that the ESA was roaming unaccompanied. This selective omission by Defendants demonstrates bad faith and misrepresentation.

28. Plaintiff made good faith efforts to find an alternative arrangement for his ESA but was unable to secure any suitable options.

29. In response, Defendants extended the deadline to November 17, 2023, at 2:00 p.m.

---

[1] Defendants later entered selected screenshots of this incident into evidence (*see* Johnson Declaration, Exhibits 17–18) but omitted the screenshot labeled as **Exhibit K** in this complaint, despite having previously sent it to Plaintiff in the November 9, 2023 email.

30. On November 17, 2023, at approximately 2:00 p.m., numerous staff members appeared at Plaintiff's dorm room door and asked whether the ESA was still present. During this confrontation, staff threatened Plaintiff by stating, "the police will drag you out on Monday [November 21, 2023] if you don't leave," and, "if you're not out of here by 9:00 a.m. on Monday, the USF Police Department will remove you, and your stuff." Plaintiff responded that he would not remove the ESA and that he would remain in his housing regardless of their threats. These threats, made despite Plaintiff's valid ESA accommodation, were intimidating and interfered with his ability to exercise his rights under federal disability law.

31. The staff's actions and threats during the confrontation caused Plaintiff to feel intimidated.

32. Plaintiff informed Defendants that he would not remove the ESA and that he would remain in his housing, regardless of their threats.

33. At approximately 4:31 p.m. EST on November 17, 2023, after the extended deadline had passed, Defendants purported to issue an "administrative cancellation" of Plaintiff's housing agreement, which had the effect of evicting Plaintiff from his on-campus housing. (*See* **Exhibit C**)

34. On November 21, 2023, Defendants sent Plaintiff a letter from the SCED-University Conduct Board ("UCB"), stating that a formal hearing

had been held and that Plaintiff was found "responsible" for having his ESA in the common area of the dormitory. (*See* **Exhibit F**).

35. The formal UCB hearing mentioned in the November 21, 2023 letter was concluded approximately 30 minutes before the decision was issued.

36. As a result of this finding, Defendants imposed sanctions on Plaintiff, including mandatory attendance at a "Civility and Community Standards Workshop" and a $25 fee for the workshop.

37. Plaintiff initially refused to attend the workshop, believing the assignment to be unlawful and because he was told that completing it would not affect the termination of his housing agreement.

38. Plaintiff later paid the fee and completed the workshop; however, doing so did not restore his on-campus housing.

39. Plaintiff's refusal to complete the workshop led to an academic hold being placed on his account in early January 2024, which prevented him from registering for classes.

40. This academic hold prompted Plaintiff to file an emergency motion for a Temporary Restraining Order (TRO). Plaintiff filed his *Emergency Motion For An Injunction, Or In The Alternative, A Temporary Restraining Order*, on January 8th, 2024, after he noticed the academic hold was issued.

41. A TRO was issued by the court on January 9th, 2024.

42. On January 11th, 2024, to provide further support for his claim, Plaintiff voluntarily provided additional medical documentation (*See* **Exhibit L**) from his treating psychiatrist, following the eviction.

43. The TRO was later dissolved after the registration deadline for the Spring 2024 semester had passed, rendering the issue moot.

44. As a result of the academic hold, Plaintiff was denied the opportunity to register for classes on time.

45. As a result of the TRO, Plaintiff was able to sign up for an additional online class, for a total of two, and was two classes short of the minimum needed to not fall behind his graduation schedule.

46. **Defendants have <u>never, at any</u> point, stated that Plaintiff did not qualify for or need an ESA.**

47. Despite never disputing Plaintiff's qualification, Defendants unilaterally revoked the previously granted ESA accommodation. (*See* **Exhibit C**)

48. The termination of Plaintiff's housing agreement prevented him from residing on campus for the Spring 2024 semester. Because he could not secure alternative housing close enough to campus, Plaintiff was unable to attend classes in person and was limited to enrolling in only two out of the four classes he required, which were available online.

49. Defendant USF has, at all relevant times, including during the 2023–2024 academic year, been a program or activity receiving substantial federal financial assistance within the meaning of 29 U.S.C. § 794.

50. Through its history, USF has, at a minimum, received hundreds of millions of dollars in federal funding, including over $100 million in May 2021, more than $90 million in 2020–2021, and $17 million in September 2023.

## COUNT I – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT (29 U.S.C. § 794)

50. Plaintiff incorporates by reference the allegations contained in paragraphs 16 through 49 of the Statement of Facts.

51. Plaintiff is an "otherwise qualified individual" under the Rehabilitation Act, as described in Paragraphs 16-18 and 23 of the Statement of Facts, because he meets the essential eligibility requirements for participation in USF on-campus housing with reasonable accommodations, including the use of his ESA.

52. Defendants' policies imposed additional requirements and restrictions on students with ESAs that were not applied to students without ESAs, including mandatory *separate* ESA contracts, separate meetings, and individualized approvals, as described in Paragraphs 17-19, and 21-22 of the Statement of Facts.

53. Plaintiff, after being informed by Defendants that his ESA could not be in the common areas, attempted to reach a reasonable compromise on numerous occasions, including practical solutions such as limiting the ESA's presence to specific times or areas, while still ensuring he could utilize the accommodation necessary for his disability. (As described in Paragraphs 20-22, and 28 of the Statement of Facts).

54. Despite these repeated efforts, Defendants enforced the restrictions rigidly and ultimately resulted in the removal and revocation of Plaintiff's housing rights and ESA accommodation. (As described in Statement of Facts Paragraph 25, 30, 33)

55. This revocation denied Plaintiff access to on-campus housing and related programs, as described in Paragraph 48 of the Statement of Facts

56. Plaintiff alleges that this revocation occurred solely because of his disability, as he was otherwise fully qualified to participate in the housing program.

57. Defendants have not identified any reason unrelated to Plaintiff's ESA or disability for these actions, nor have they alleged that Plaintiff was not otherwise qualified to reside in the on-campus housing program.

58. Plaintiff alleges that Defendants' discriminatory policies, actions, and enforcement constituted disparate treatment on the basis of disability in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

59. The treatment, including denial of fair use of the common areas while Plaintiff resided in the dorms, and the eventual removal from housing, caused Plaintiff to suffer harm (including due to the costs associated with the eviction, as well as increased costs of living off campus).

60. While residing on-campus, Plaintiff was deprived of full access to the common areas and related amenities, as described in Paragraph 22, which, according to HUD guidance (HUD Notice FHEO-2020-01[2]), constitutes unlawful discrimination based on disability.

61. After eviction, Plaintiff was unable to participate in on-campus housing at all, as Defendants stated he was permanently barred from returning. This conduct resulted in constructive deprivation of access to campus facilities and benefits, social and academic disadvantages, monetary damages, and other harms.

---

[2] As it was during the relevant times in the Fall of 2023, and relevant timeperiods thereafter. https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf

62. Defendants approved Plaintiff's ESA, thereby acknowledging the validity of his accommodation request (*See* **Exhibit A**), but later revoked that approval without any legal basis, which demonstrates discriminatory treatment related to Plaintiff's disability and ESA.

63. Because of his disability and the need for an ESA, Plaintiff was denied the opportunity to reside in on-campus housing. Before being removed from housing, Plaintiff was denied access to common areas of the residence while accompanied by his ESA, as described in Paragraph 20-22, 24, of the Statement of Facts.

64. Defendants engaged in retaliatory actions following Plaintiff's assertion of his rights, including conducting a UCB hearing, imposing sanctions, and placing an academic hold on his account, as described in Paragraphs 20-22, 25, 30-39 of the Statement of Facts..

65. Defendants' required ESA questionnaire requested information prohibited by Florida Statutes § 760.27(3) and HUD guidance (*See* **Exhibits I, J and N**), illustrating their disregard for privacy and disability-related protections.

66. Defendants' enforcement of policies and agreements relating to the ESA, including the ESA Agreement, contains provisions that are void and

unenforceable under federal and state law, as described in Paragraphs 19 and 21,
further demonstrating a pattern of discrimination and retaliation against
Plaintiff.

67. Defendants' assertion in court filings that a leash was a permissible
accommodation for common area access—**an option never communicated or
made available to Plaintiff at the time**, as described in Paragraph
24—demonstrates the pretextual and discriminatory nature of their rigid
enforcement of the "carrier-only" rule. This inconsistency further shows
Defendants acted with deliberate indifference to Plaintiff's rights under federal
disability law.

68. Defendants' discriminatory policies, including the common-area policy,
effectively denied Plaintiff the core benefits of on-campus housing for which he
paid, amounting to a fundamental breach[3] of the housing program's intended
purpose and obligations toward students with disabilities. This deprivation of
the full value of the on-campus housing program—including access to common
areas, social and academic resources, and other benefits uniquely associated with

---

[3] Plaintiff does not assert a state-law breach of contract claim. References to "breach" or
"obligations" are made solely to illustrate the extent to which Defendants' conduct denied
Plaintiff the benefits and equal access guaranteed under Section 504 of the Rehabilitation Act,
29 U.S.C. § 794, as this action now proceeds on remand for adjudication of that federal claim.

on-campus residency—**constitutes a denial of meaningful access and resulting harm under the Rehabilitation Act.**

69. The discriminatory eviction and permanent ban from on-campus housing had severe and lasting consequences on Plaintiff's academic and social life, including:

**a. Academic Harm:**

Plaintiff was forced to withdraw from several required courses, delaying his anticipated graduation by at least one semester and causing both financial and educational harm.

**b. Social and Residential Harm:**

Plaintiff was compelled to leave campus and remain out-of-state for the entire Spring 2024 semester, preventing participation in campus social events. Upon returning for in-person classes, Plaintiff's off-campus residency significantly limited his ability to engage fully in campus activities and community life.

**c. Loss of Advertised "College Experience":**

Plaintiff was, and still is, deprived of the "full college experience" promised and marketed by the university to students residing on campus. During the Spring 2024 semester, Plaintiff was unable to attend any campus events or activities reserved for on-campus residents. Due to ongoing distance and time constraints,

many social events and club activities open to all students remain infeasible for Plaintiff to participate in.

70. As a result of Defendants' discriminatory and retaliatory actions, taken because of Plaintiff's disability and his need for an ESA, Plaintiff was deprived of the full value of the on-campus housing program and continues to be denied its benefits. Plaintiff is entitled to relief under the Rehabilitation Act for both discrimination and retaliation. Defendants' actions further demonstrate the arbitrary and discriminatory manner in which Plaintiff's ESA accommodation was handled, as detailed in Paragraphs 17–23 of the Statement of Facts and supported by **Exhibits C** and **K**.

71. Defendants, acting jointly under color of state law, treated Plaintiff differently than non-disabled students by prohibiting ESA use in common areas, and ultimately removing him from housing when they changed the locks on November 27, 2023 (*See* **Exhibit M**).

72. These discriminatory policies and actions were the result of a coordinated effort and shared operational responsibilities between USF and HRSE-Capstone.

73. The disparate treatment bore no rational relationship to any legitimate interest.

74. Defendants' shifting explanations and inconsistent enforcement of policies demonstrate that any asserted justification was pretextual and fabricated after the fact.

75. At all relevant times, Defendant HRSE-Capstone Tampa, LLC was the nominal owner of the on-campus housing facilities, while USF issued, directly managed, controlled, and enforced the housing policies at issue.

76. By permitting USF to exercise full operational control and by enabling the enforcement of discriminatory housing policies within its property, HRSE-Capstone knowingly facilitated and benefitted from the unlawful conduct.

77. HRSE-Capstone's participation in this arrangement made it a willful enabler of USF's discriminatory actions, and its joint involvement with a state actor renders its conduct fairly attributable to the State for purposes of liability under the Rehabilitation Act.

## **CONCLUSION**

78. Plaintiff is requesting equitable remedies to rescind the ban the Defendants implemented against him living in on-campus housing (or, alternatively, other relief restoring the pre-discrimination status quo—excluding any discriminatory policies—as the Court sees fit), injunctive relief to prevent the Defendants from taking further retaliatory actions against the Plaintiff, nominal damages, and monetary damages.

79. The Defendants' actions constitute discrimination under numerous statutes and laws, and the Plaintiff's claims under the Rehabilitation Act are to rehabilitate the damage inflicted upon the Plaintiff. The Defendants' discriminatory policies do not only affect the Plaintiff, but many others as well. The Plaintiff is just the most impacted, since he stood up to the Defendants.

80. At no time did the Plaintiff let his ESA go outside of his room to simply roam as the ESA pleased. The only time that the Plaintiff allowed the ESA out of his room was when he would take the ESA with him[4]. The Plaintiff's requested accommodation—use of the common area with his ESA—was reasonable and necessary to afford him equal use and enjoyment of his dwelling[5].

---

[4] The Plaintiff requested to be allowed in the common area with his ESA, **not to** let his ESA do whatever it wanted in the common area. The Plaintiff also vigorously disputes Defendants' assertions that he allowed his ESA to be outside of his room unattended.

[5] The Plaintiff's requested accommodation was for equal use of the shared residential common areas with his ESA—not to allow the ESA to roam freely or unaccompanied. This request was narrowly tailored and reasonable.

81. Exhibit 17 of the Johnson Declaration is intentionally misleading, as it omits
the third screenshot (as described in Paragraphs 26 and 27 of the Statement of
Facts) that was sent to Plaintiff **but not presented to the Court**. The omitted
screenshot shows Plaintiff entering his room with his ESA beside him, after the
ESA—initially heading away from Plaintiff toward the "Traditional Side" of the
dormitory—turned around and returned with Plaintiff to his room. (*See* **Exhibit
K).**

82. The Defendants incorrectly rely on the Plaintiff's signing of the ESA
Agreement to support their arguments and policies. The Defendants' arguments
and exhibits are attempting to obscure the fact that their policies and actions are
discriminatory, including under the Fair Housing Act, as well as other statutes.
**The actual issue at hand is not if the Plaintiff violated the Defendants' policies,
but whether those policies are discriminatory and therefore illegal.** The
Defendants have previously attempted to argue that the harm done to the
Plaintiff is all in the past, which is incorrect. The Plaintiff continues to suffer harm
from the Defendants' ongoing enforcement of the ban and the discriminatory
housing policy, which remain in effect[6]. The Plaintiff will be excluded from the
ability to participate in a program (defined as any of the operations of a college

---

[6] Plaintiff remains excluded from on-campus housing opportunities and is subject to continuing
injury from the Defendants' refusal to rescind the discriminatory ban.

or university, which includes housing) due to his disability (which requires an assistance animal).

83. The Defendants have also falsely claimed that the Plaintiff's requested accommodation was to allow his ESA to roam the halls unaccompanied. This is blatantly false, and unsupported by any evidence. Defendants' claim that their policy applied neutrally to all students is contradicted by their selective enforcement and post hoc justifications, further demonstrating pretext and discriminatory intent[7]. While they may have applied their alleged discriminatory policies equally, it does not make them any less discriminatory or illegal.

84. The Defendants do not have immunity to claims brought under the Rehabilitation Act.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Declare that Defendants' actions violated Section 504 of the Rehabilitation Act;

B. Issue injunctive relief rescinding the on-campus housing ban and prohibiting further retaliation;

---

[7] Defendants' later litigation claim that a leash would have been a permissible alternative accommodation **was never communicated to Plaintiff prior to eviction**, highlighting the pretextual and inconsistent nature of their enforcement.

C. Award nominal damages, compensatory damages, and such other monetary[8] relief as the Court deems just;

D. Award Plaintiff his costs of suit and any other expenses the Court deems just and proper, pursuant to Federal Rule of Civil Procedure 54(d); and

E. Grant such other and further relief as the Court deems equitable and proper.


/s/*Daniel A. Frishberg*

Daniel Frishberg, *Pro Se*

October 30, 2025,

Hillsborough County, Florida

---

[8] The Plaintiff believes it proper to calculate damages after this case is resolved. If this is not the proper way to do it, he respectfully requests that the Court inform him of that, so he can correct any mistakes.

EXHIBIT[9] A[10]:

Dear Daniel,

Thank you submitting all of your documentation to support your Emotional Support Animal (ESA). At this time, we have approved your request under the following conditions. **You will not be eligible to bring your animal on campus until the following conditions are met:**

- Schedule a Meeting with your Residence Life Coordinator (RLC) to go over and agree to the Animals On-Campus Agreement (attached). It is your responsibility to reach out to your RLC to schedule a meeting.
- Talk to your roommates (if applicable) to make them aware of the animal entering their community

**RLC Information:** Your RLC is copied on this email. Their information can also be found here.

Please print and fill out the attached form and have your emergency contacts sign and agree to the terms. You can e-mail a scanned copy to housing@usf.edu.

If you have any questions, you can contact us via email at housing@usf.edu or by phone at 813-974-0001 during normal business hours, Monday through Friday from 9:00am until 4:00pm. We are located in the Argos Building, 2nd Floor (Above Argos Exchange).

*Sincerely,*

*Housing & Residential Education*
**University of South Florida**
4202 E. Fowler Ave, RAR 229
Tampa, FL 33620
Office: 813-974-0001    Fax: 813-974-5152

EXHIBIT B:

---

[9] **Exhibit A** and **Exhibit B** that were filed with the original complaint filed in the state court (Case No. 23-CC-125805) are incorporated by reference as Exhibit 1 and 2.
[10] Email received from USF housing at 12:32pm EST on August 10th, 2023, approving my request for my Assistance Animal. For the avoidance of doubt, the "conditions" that USF stated must be met before my Assistance Animal was to be brought on campus *were met before* I brought my Assistance Animal. (For the avoidance of doubt, "ESA" was not highlighted in the email, but is highlighted due to me running a keyword search).



To: ⊙ Daniel Frishberg                                                                                                                                                    Thu 11/9/2023 9:06 A

Cc: ⊙ Shemelle Findley; ⊙ Willie Garcia; ● Ana Hernandez; ⊙ Jimmy Surin; ○ Shanale Cordero; ⊙ Xiomara Talavera Mercedes; ⊙ Amy Chilcutt; ⊙ David Kloiber

❶ You replied on Thu 11/9/2023 3:46 PM

  

US0082127 Animal on Camp...
Saved to OneDrive

4 attachments (7 MB)   ↓ Download all

Dear Daniel Frishberg:

My name is Dr. Andy Johnson and I'm the Director for Operations & Outreach with Housing & Residential Education (HRE). I've received information regarding a continuous pattern of disregarding HRE's Emotional Support Agreement Terms (see attached) that you agreed to in August 2023. These reports include:

- September 14, 2023 – Resident complaint to the RA about Shadow being loose in the common area and on the countertops.
- September 20, 2023 – A text between you and the RA about the cat being outside of the room and reminding you of the policy. You stated that "Shadow [cat] is never outside of my room."
- October 5, 2023 – An extensive text thread from the floor that expressed concern about the cat being outside of the room and roaming in the common areas.
- October 5, 2023 – Resident complaint to the RA that the cat was on the countertop.
- October 10, 2023 – Resident complaint to the RA that the cat was loose in the common area.
- October 20, 2023 – You met with RLC Shanale to review the ESA policy again. You stated that "[you will] be doing whatever he wants" regarding having the cat loose in the common areas.
- October 21, 2023 – An incident report was filed regarding the cat being loose in the common areas on October 21, 2023. I've attached photos for your reference which include a date/time stamp in the file title.

Section B of the ESA Agreement states that "*Assistance Animals cannot roam freely in common areas.*"

Given your disregard for the ESA Agreement Terms that were reviewed with you several times, I'm rescinding your waiver to have an animal on-campus due to the violations section B of the attached agreement. You must remove your cat by 12:00 p.m. on Monday, November 13, 2023. You are prohibited from allowing the cat to roam freely in the residence hall, including the common areas. Failure to comply with this directive will result in further action, including but not limited to, a referral to the Office of Student Conduct & Ethical Development and/or the cancellation of your 2023-24 Student Housing Agreement. Please inform RLC Cordero when the cat has been removed. RLC Cordero can be reached via email at shanalec@usf.edu.

I appreciate your assistance in this matter.

Sincerely,

**Dr. Johnson**
**CRA-USF/Advanced**
Director for Operations & Outreach

Housing & Residential Education

EXHIBIT C[11]:

---

[11] Email received from Mr. Andrew Johnson (an employee of USF working in the housing department) at 4:31pm EST on November 17th, 2023.



**Andrew Johnson**
To: Daniel Frishberg                                                                                   Fri 11/17/2023 4:31 PM

Cc: Ana Hernandez;  David Kloiber;  Amy Chilcutt;  Megan Bucalos;  Xiomara Talavera Mercedes;  Jimmy Surin;  Jan Serpan;  Sherrelle Findley;  +3 others

Dear Mr. Frishberg,

Following my correspondence dated November 14, 2023, Residential Education staff members contacted you on or around 2:00 PM to confirm that you complied with USF's directive to remove your animal from the residence hall. I was informed by the USF Housing and Residential Education staff that you stated that the animal was still present in your residential room.  Given that you have not complied with USF Housing and Residential Education department's directives, USF is administratively cancelling your 2023-24 Student Housing Agreement effective Monday, November 27, 2023 at 12:00 PM under section IV.1.d as stated in the excerpt below.
*IV. CANCELLATION: Notwithstanding anything contained herein, and even when Student's Cancellation is permitted under the terms of the Agreement, the Agreement may not be cancelled without the prior written approval of the Department. The Department may, within its sole discretion, deny any Cancellation requests. Where Cancellation of the Agreement is subject to the Cancellation fees set forth in the Agreement, any fees will be added to the Student's financial account and will be due and owing immediately. Non-payment of the fees may result in a Student registration hold or restriction on graduation and ability to obtain a transcript. Late payments may also include collection fees. Students should refer to Section III of this Agreement for more information regarding the Payment Schedule.*

1. *Cancellation by Department: The Department may, in accordance with applicable rules of the University, initiate reassignment or cancel the Agreement if deemed necessary by the Department in the best interest of order, health, conduct, safety, security, disaster, failure to comply with any and all University regulations, policies, or directives.*

    d. *Cancellation Due to Administrative Dismissal: Students who are removed from the Residence Halls and/or dismissed from the University for administrative reasons will be responsible for a daily-prorated Hall Rate.*

Please schedule your check-out with RLC Cordero and return your keys to the HUB Service Desk by 12:00 PM on Monday, November 27, 2023.  Failure to complete these steps by the deadline may result in additional fees or referrals to the Office of Student Conduct and Ethical Development.  ID card access to any residential space will also end at that time.  Your rent charges will cease on Monday, November 27, 2023 and a credit will be issued for the balance of the fall term.  The credit will be issued to your OASIS account.

You are expected to comply with the rules, policies, regulations of the University of South Florida and all applicable laws until your check-out from housing.  Failure to comply with the previous statement will result in your immediately removal from housing and a referral to the Office of Student Conduct and Ethical Development.

Sincerely,

Dr. Johnson

## EXHIBIT D[12]:

Dear Daniel,

Thank you for contacting the University of South Florida Housing Services Team!

In order to review your request, please provide current documentation (within the past 90 days/ 3 months) showing diagnosis, date of diagnosis, and reasonable accommodations requested from your medical care professional.  This letter needs to be on your medical care professional's letterhead.  You will need to provide this documentation to the housing assignments office within **5 business** days of receipt of this email, in order for us to process your request. Failure to provide this documentation by the stated date will result in a denial of this request.  Please make sure that you reference your U# and ticket number on every sheet of documentation.  Please note that the deadline for all ADA/Medical Accommodation are as follows:

Fall-Spring Agreement deadline- June 1st
Spring Only Agreement deadline- November 1st
Summer A, AB, C Agreement deadline- April 15th
Summer B, SSS, ACE Agreement deadline- June 1st

If you are applying after the deadlines listed above for the upcoming term, we will still process your request and attempt to honor it.  We cannot guarantee placement after the deadline.

If you have any questions, you can contact us via email at housing@usf.edu or by phone at 813-974-0001 during normal business hours, Monday through Friday from 9:00am until 4:00pm. We are located in the Argos Building, 2nd Floor (Above Argos Exchange).

*Sincerely,*

*Housing & Residential Education*
**University of South Florida**
**4202 E. Fowler Ave. RAR 229**
**Tampa, FL 33620**

## EXHIBIT E[13]:

---

[12] Email received from USF Housing at 4:06pm EST on February 13th, 2023. This email is unmodified, and the emphasis was added by USF.
[13] Email sent by USF Housing at 1pm EST on 06/09/2023. (For the avoidance of doubt, "ESA" was not highlighted in the email, but is highlighted due to the Plaintiff running a keyword search).

Dear Daniel,

Thank you submitting all of your documentation to support your Emotional Support Animal (ESA). At this time, we have approved your request under the following conditions. You will not be eligible to bring your animal on campus until the following conditions are met:

- Schedule a Meeting with your Residence Life Coordinator (RLC) to go over and agree to the Animals On-Campus Agreement (attached). It is your responsibility to reach out to your RLC to schedule a meeting.
- Talk to your roommates (if applicable) to make them aware of the animal entering their community

RLC Information: Your RLC is copied on this email. Their information can also be found here.

Please print and fill out the attached form and have your emergency contacts sign and agree to the terms. You can e-mail a scanned copy to housing@usf.edu.

If you have any questions, you can contact us via email at housing@usf.edu or by phone at 813-974-0001 during normal business hours, Monday through Friday from 9:00am until 4:00pm. We are located in the Argos Building, 2nd Floor (Above Argos Exchange).

*Sincerely,*

*Housing & Residential Education*
**University of South Florida**
**4202 E. Fowler Ave, RAR 229**
**Tampa, FL 33620**
Office: 813-974-0001    Fax: 813-974-5152

## EXHIBIT F[14]:

"Dear Daniel,

This letter is to notify you of the outcome of the SCED-University Conduct Board Formal Hearing held on November 21, 2023.

### Allegations

Student Conduct and Ethical Development received a report regarding an alleged incident that occurred on Thursday, October 5, 2023 in Pinnacle Hall at 6:30 PM. Specifically, Resident Daniel Frishberg has openly and repeatedly violated the ESA agreement within Pinnacle Hall.

### Findings

Using the preponderance of the evidence standard and the information presented during the formal hearing, the findings for the violation(s) of the USF Student Code of Conduct in this case are as follows:

- Residence Hall Policies -- Responsible
  Failure to abide by any policy or regulation governing University Housing (e.g. rental agreement, Resident Handbook).

- Failure to Comply -- Responsible
  Failure to comply with an official request or directive of a University Official acting within the scope of their assigned duties. Failure to identify oneself or produce USF identification upon request by a University Official.

### Rationale

---

[14] The letter was sent via a link only accessible by being logged into the Plaintiff's student email account, so the Plaintiff copied and pasted it (in relevant part) as **Exhibit E**. The formatting of the letter may be a bit off, but the Plaintiff has done his best to restructure it as it was. The contents of it were not changed. All of the bolded lettering was not modified or added.

Based on the available information, it is more likely than not that the violation of the Student Code of Conduct occurred. The Housing and Residence Education policy says animals should not leave the area. While this can be interpreted differently, there were several instances where it was explained that the cat must remain inside the charged student's room. According to the relevant information and the charged student's narrative, it was confirmed that the cat was found on several occasions outside the charged student's living space, which caused unease among fellow community residents. The Resident Assistant verbally warned the student to keep the cat inside the charged student's room, to which the student disagreed. Based on the conversation with the Resident Assistant, the student was then invited to meet with the Residence Life Coordinator for an Informational Meeting due to not complying with the Resident Assistant's words. For the above reasons, the University Conduct Board finds the student responsible for the listed charges.

**Learning Outcomes**
The learning outcomes determined for this incident include:
1. The student will be able to acknowledge the housing policies while respecting the wishes of fellow housing community members.
2. The student will be able to improve conflict resolution skills.

**Sanctions**
The sanction(s) assigned to meet the determined learning outcomes include:

**Civility and Community Standards Workshop Part 1**
You must submit your $25 payment (cashier's check or money order) along with the completed section of the attached form to: University of South Florida, P.O. Box 864571, Orlando, FL 32886 or in one of the designated Cashier's Office Drop Boxes (see attached form). A money order can be obtained at Publix. If the form is not submitted, Student Conduct and Ethical Development will not receive credit for the payment and will not be able to consider the payment complete. After proof of payment is received, you will be contacted by Student Conduct and Ethical Development with information regarding available workshop dates and times. The payment must be submitted by December 15, 2023.

**Civility and Community Standards Workshop Part 2**
You must attend and complete the Civility and Community Standards Workshop facilitated by Student Conduct and Ethical Development by February 15, 2024. Once you have completed the Civility and Community Standards Workshop Part 1, you will be contacted by a Student Conduct and Ethical Development staff member to register for the first available workshop. You must attend the workshop on your assigned date, actively participate, and complete all workshop requirements successfully before this sanction will be considered complete.

**Civility and Community Standards Workshop Part 3**
You must submit one (1) of the reflection assignment options provided at the Civility and Community Standards Workshop seven (7) days after your assigned workshop date to Student Conduct and Ethical Development - studentconduct@usf.edu.

Failure to complete the sanction(s) by the date(s) indicated will result in an Administrative Hold
being placed on your student record. This hold may affect your ability to register for courses,
request academic transcripts, and receive a degree and diploma."

**EXHIBIT G**[15]:
"In the event you have not complied with the University directive and related

contractual obligations, the University will initiate the steps in the highlighted

section below [there was no highlighted section below] and appropriate referrals

with related sanctions may be imposed."

(Email from USF General Counsel at 12:13pm EST on November 27th, 2023, font

size increased).


**EXHIBIT H:** (excerpts of relevant sections of USF Policy 6-033[16]):

---

[15] The size of the text increased. This is an excerpt from the email.
[16] I am not stating that their policy is legal or enforceable, but just that this is the policy. II(C) of the policy
is contradicted by numerous policies that require Assistance animals to stay within the individual's room.
HUD guidance FHEO-2020-01 is crystal clear about how Assistance animals are allowed within the
common area of a building, and are allowed in the entire dwelling.

 **UNIVERSITY OF SOUTH FLORIDA**

**POLICY**

| | |
|---|---|
| **Number:** | **6-033** |
| **Title:** | **Animals on Campus** |
| **Responsible Office:** | **Administrative Services** |

Date of Origin: 3-20-13          Date Last Amended: 11-30-18 (technical)          Date Last Reviewed: 12-12-19

## I.  PURPOSE & INTENT

This policy is designed to protect the health, safety, and welfare of the University of South Florida (USF) students, faculty, staff and the general public.

## II.  STATEMENT OF POLICY

A. All animals brought on to any USF campus property must be under physical restraint. The animals must be under the complete control of and physically restrained by the owner/responsible party who is also responsible for ensuring the animal is safe and healthy.

B. Pet animals are to remain only on public places and are not permitted in University patio areas adjacent to swim facilities, in or on the spectator areas or recreational fields or facilities, such as racquetball and tennis courts, in dining or residence halls, inside USF buildings, or at special events, except as provided in Section V, Exceptions.

C. USF will follow all federal and state laws with regard to accommodations.

## III.  DEFINITION OF TERMS

A. **Approved Animal:** The Office of Students with Disabilities Services (SDS) (to be known as Student Accessibility Services (SAS) effective July 1, 2020) or Human Resources has determined the person with a disability has established their eligibility for reasonable accommodation and the animal's qualifications as a "Service or Assistance" Animal. The animal is an *Approved Accommodation* for the Eligible Person under the applicable laws.

**B. Assistance Animals:** As defined by The Fair Housing Act, *Assistance Animals* are animals that work, provide assistance, or perform tasks for the benefit of a person with a disability, or animals that provide emotional support that alleviates one or more identified symptoms or effects of a person's disability. Assistance Animals perform many disability-related functions, including but not limited to guiding individuals who are blind or have low vision, alerting individuals who are deaf or hard of hearing to sounds, providing minimal protection or rescue assistance, pulling a wheelchair, fetching items, alerting persons to impending seizures, or providing emotional support to persons with disabilities who have a disability-related need for such support. Some, but not all, animals that assist persons with disabilities are professionally trained. Other assistance animals are trained by the owners themselves and, in some cases, no special training is required. The question is whether or not the animal performs the assistance or provides the benefit needed as a reasonable accommodation by the person with the disability. Assistance Animals are not considered Service Animals and are not permitted in public spaces, classroom or work places.

**C. Eligible Person:** A person with a disability who because of a functional limitation of his/her disabling condition requires a Service Animal to perform a task or function.

**D. Emotional Support Animal:** An animal whose sole function is to provide *emotional support. Emotional support animals* do not qualify as service animals under ADAAA and are not permitted on campus except to the extent the animals are considered Assistance Animals under the FHA as provided in Section (B) above.

V.  **EXCEPTIONS**

Types of Animals with Exceptions: The following animals and specific instances are an exception to [II. B.] above as they are permitted on USF properties so long as they are under the complete control of and physically restrained by the Responsible Party and/or maintained as provided below:

A.  **Assistance Animals** are permitted on campus with approval from the Office of Housing and Residential Education and must be contained within the private residential area (room, suite, and/or apartment) of at all times except when transported outside the private residential area in an animal carrier or controlled by leash or harness. Assistance Animals are not permitted in public spaces, classrooms, or work places unless they also meet the definition of Service Animal as provided by law and as permitted as part of an accommodation as provided in this Policy.

**EXHIBIT I**[17]:

---

[17] Email from USF Housing Department at 3:08pm EST on 02/14/2023.

Dear Daniel,

Thank you for submitting an ADA/Medical Accommodation Request for an Emotional Support Animal (ESA).

**In order to be approved for an ESA you must meet the following criteria:**

- Have an ongoing relationship with a medical professional- for at least 90-days- who is able to prescribe ESAs

- Have the same medical professional complete the attached questionnaire and attach their professional business card to page #2

- Turn in required veterinary records (current vaccinations)

- Submit your Emergency Contact Information

**If your ESA is approved there is a 14-day grace period where you must complete the following steps before your animal is allowed on-campus:**

- Meet with your RLC and Assignments Coordinator to go over and agree to the Animals On-Campus Policy

- Talk to your roommates (if applicable) to make them aware of the animal entering their community

Please have the questionnaire, emergency contact information form, and veterinary records submitted **within 2 weeks of the receipt of this email.**

If you do not yet have an ESA, please let us know. You will need to resubmit a request once you have the ESA.

**EXHIBIT J**: (the "required questionnaire" in its entirety. For the avoidance of doubt, it has not been modified in any way, and no emphasis was added):

**EMOTIONAL SUPPORT ANIMAL**
**FAIR HOUSING ACT INTERACTIVE PROCESS QUESTIONNAIRE**

From: _____
       Student Name and University ID #

To:    _____
       Healthcare Provider Name

> **The remainder of this form is to be filled out in its entirety by the health care professional responsible for the above patient. The patient is not to fill out the below section.**

Please answer and return the following questionnaire to your patient. The questionnaire format is a guide and we would appreciate a response to every question. We need your complete medical opinion, so please feel free to include a more detailed narrative response to any and all questions if needed to answer more fully. Thank you for your anticipated cooperation.

Name of Patient for whom you are completing this questionnaire: _____

Date Patient Started under your care: _____

1. Does this resident have a disability – i.e, a physical or mental impairment that substantially limits one or more major life activities?

                Yes         No

   a. If yes, please state the type of impairment and what major life activities are the subject of the disability (i.e., the current impact and functional limitations resulting from the disability).

       _____
       _____
       _____

2. Has an Emotional Support Animal been prescribed by you to this resident for treatment purposes?

                Yes         No

   a. If yes, does the person have a *disability-related need* for this animal? (In other words, does the animal provide some type of disability-related assistance or emotional support that alleviates or mitigates one of more symptoms or effects associated with the person's existing disability, to help the person use and enjoy University housing?)

                Yes         No

Updated: February 11, 2020

   b. If yes to 2(a), please describe the relation between the requested accommodation (the animal) and the disability (i.e., how the animal will alleviate or mitigate a symptom(s) or effect(s) associated with the person's disability or otherwise assist the resident in using and enjoying University housing?

       _____
       _____
       _____

3. Any additional information of Statement that may assist the University to understand the basis for your

_____

_____

_____

By signing below, you as the Healthcare Provider are confirming that in prescribing this animal for the resident you have (1) considered the impact on the resident if the animal's behavior or reaction to university housing results in the removal or loss of the animal to the resident; (2) discussed the risk to the animal and/or resident in cases of emergency or adverse reaction to the setting  and (3) determined with the resident understands, accepts and can manage those risks  Please note that the University Policy (link to Policy) outlines that in the event of emergency the animal is not the responsibility of the university and the animal will be considered abandoned if the resident is not present or able to care for the animal.

| Please attach a professional business card or the medical professional completing this questionnaire |
|---|

_____
Signature

_____
Title

_____
Date

Printed Name and Address:

_____

_____

_____

Exhibit K[18]:



---

[18] This is the image that was provided to the Plaintiff by the Defendants, which they specifically omitted from Exhibit 17 of the Johnson Declaration.

35

**EXHIBIT L:**



EAST FLORIDA
BEHAVIORAL
HEALTH NETWORK
BEHAVIORAL HEALTH SPECIALISTS
OF SOUTH FLORIDA

January 10, 2024

Re: Frishberg, Daniel - Emotional Support Animal (ESA)

Date of Birth: ████ 2003

To whom it may concern,

Daniel Frishberg is my patient, and has been under my care since February 2023. I am familiar with this patient's history, and with the functional limitations imposed by their condition.

I am a Licensed Adult, Adolescent and Child Psychiatrist in the state of Florida, my license number is ME116041. In my professional opinion, this patient meets criteria for DSM 5 diagnostic disorder. My patient has had significant functional impairment due to the disorders that has significantly affected patient's quality of life. As result of these disorders, patient has had difficulty performing the usual activities of daily living. The functional "disability" corresponds to the description annotated in the American with Disabilities Act, Air Carrier Access Act and Fair Housing Act.

In order to help alleviate these difficulties and to enhance the patient's ability to live independently within the community, I have prescribed an ESA. Patient would benefit from the assistance and company of his ESA, a grey Russian Blue breed cat in coping with the above-stated conditions. It is my professional opinion that Mr. Frishberg has medical difficulties to function publicly without the assistance of his ESA, and will therefore require the ESA's company in all public locations, that would not cause an inconvenience to other patrons.

I am familiar with the professional literature concerning the assistive and/or therapeutic benefits of the ESAs for people with mental illness. I acknowledge that this letter may be relied upon in determining whether or not to grant reasonable accommodations by making an exception to rules, policies, practices, or services, when such accommodation may be necessary to afford the herein named individual an equal opportunity to use their emotional support/service animal in his daily endeavors. This letter has been issued with the patient's consent and, as per his/her request. Any questions please contact our office directly at (305) 692-3270.

Sincerely,

Samuel A. Neuhut, M.D.

HCA Florida Behavioral Health Specialists

SN/igb

21150 Biscayne Blvd, Suite 202  Aventura, FL 33180    (P) 305-692-3270    (F) 305-792-1425

**EXHIBIT M:**

**From:** Megan Bucalos <meganbucalos@usf.edu>
**Sent:** Tuesday, November 28, 2023 9:44 AM
**To:** Daniel Frishberg <danielfrishberg@usf.edu>; SA HRE SAP <sa-hre-sap@usf.edu>
**Cc:** Andrew Johnson <ajohnson15@usf.edu>; Sherrelle Findley <sfindley@usf.edu>; David Kloiber <dkloiber@usf.edu>; Amy Chilcutt
<achilcutt@usf.edu>; Willie Garcia <garciaw4@usf.edu>; Molli Keller <keller14@usf.edu>; Joanne Adamchak <JAdamcha@usf.edu>;
dannyfrishberg@gmail.com <dannyfrishberg@gmail.com>
**Subject:** RE: Key/Card Charge Confirmation

Daniel,

As of 12pm yesterday, your locks were changed and access revoked per the email sent by Dr. Andy Johnson on November 17. You may access your
room and belongings by contacting University Police.

Best,

**Megan Bucalos**
Assistant Director for Housing Services
Housing & Residential Education
University of South Florida
813-974-7271
usf.edu/housing

**EXHIBIT N (incorporated by reference in its entirety):**

https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf

## <u>Declaration of Daniel Frishberg in Support of Amended Complaint</u>

I, **Daniel Frishberg**, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Plaintiff in this action and make this declaration in support of my Complaint against the Defendants.
2. I have personal knowledge of the facts set forth in the Complaint and the attached Exhibits, and if called to testify, I could and would testify competently thereto[19].
3. The factual statements contained in the Complaint are true and correct to the best of my knowledge, information, and belief.
4. **Exhibits A** through **N** attached to the Complaint are true and correct copies of documents, communications, and records that I personally obtained or received, except where stated otherwise.
5. Each exhibit is incorporated by reference as though fully set forth in this declaration.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on October 30th, 2025, in Tampa, Florida.

/s/*Daniel A. Frishberg*
Daniel Frishberg, *Pro Se*

---

[19] I reserve all rights, including to invoke work product privilege.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 31st day of October, 2025, a copy of the

foregoing was served via electronic email upon the Defendants.

/s/*<u>Daniel A. Frishberg</u>*

Daniel Frishberg, *Pro Se*